**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIND MEDICINE (MINDMED) INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>SCOTT FREEMAN, JAKE FREEMAN, CHAD BOULANGER, FARZIN FARZANEH, VIVEK JAIN, ALEXANDER WODKA, and FCM MM HOLDINGS, LLC,<br><br>                    Defendants. | Case No. 1:23-cv-07875 (DLC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO TRANSFER OR, IN THE ALTERNATIVE, STAY THIS ACTION**

GLENN AGRE BERGMAN & FUENTES LLP

1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
T: 212-970-1600
rskibell@glennagre.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ............................................................................................................ 3

    A.   Dr. Freeman's Early Involvement with 18-MC ...................................... 3

    B.   MindMed Acquires 18-MC from Savant Resulting in Dr. Freeman Joining
the Company ............................................................................................. 4

    C.   FCM Undertakes Proxy Campaign to Change MindMed's Leadership ................. 5

    D.   MindMed Retaliates Against FCM and Dr. Freeman by Filing the Nevada
Action, Which is Presently Headed to an Anti-SLAPP Proceeding ........................ 6

    E.   MindMed Continues its Retaliation Against FCM and Dr. Freeman by Filing
the New York Action ................................................................................ 7

    F.   MindMed Admits in an Unrelated Action that it Has a Negligible Connection
to New York ............................................................................................. 8

ARGUMENT ................................................................................................................. 9

  I.   LEGAL STANDARD ................................................................................ 9

  II.  THE NEW YORK ACTION SHOULD BE TRANSFERRED TO THE
DISTRICT OF NEVADA ......................................................................... 9

    A.   Plaintiff Agreed to a Mandatory Forum Clause that Requires the New York
Action to be Transferred to the District of Nevada ................................. 10

    B.   The New York Action Could Have Been Brought in the District of Nevada ......... 12

    C.   The Section 1404(a) Factors Support Transfer to the District of Nevada .............. 13

  III. ALTERNATIVELY, THE COURT SHOULD STAY THE NEW YORK ACTION
PENDING THE RESOLUTION OF THE NEVADA ACTION .................................. 20

CONCLUSION .............................................................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Laborers Loc. 100 & 397 Pension Fund v. Bausch & Lomb Inc.*,
  No. 06 CIV. 1942, 2006 WL 1524590 (S.D.N.Y. June 5, 2006) ............................................. 16

*Ahrens v. Cti Biopharma Corp.*,
  No. 16 CIV. 1044, 2016 WL 2932170 (S.D.N.Y. May 19, 2016) ........................................... 12

*AIG Fin. Prod. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*,
  675 F. Supp. 2d 354 (S.D.N.Y. 2009) ....................................................................................... 13

*Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*,
  No. 16-CV-5171, 2017 WL 4712422 (S.D.N.Y. Sept. 25, 2017) ......................................... 10

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) ..................................................................................................................... 9, 10

*Azari v. B&H Photo Video*,
  No. 06 CIV.7825, 2007 WL 13101 (S.D.N.Y. Jan. 3, 2007) ................................................. 17

*Berman v. Informix Corp.*,
  30 F. Supp. 2d 653 (S.D.N.Y. 1998) .......................................................................................... 12

*Brown v. Dow Corning Corp.*,
  No. 93CIV.5510, 1996 WL 257614 (S.D.N.Y. May 15, 1996) ............................................. 16

*CoreCivic, Inc. v. Candide Grp., LLC*,
  46 F.4th 1136 (9th Cir. 2022) .................................................................................................... 17

*Delgado v. NJ Transit Rail Operations, Inc.*,
  329 F.R.D. 506 (S.D.N.Y. 2019) ............................................................................................... 18

*DirecTV Latin Am., LLC v. Park 610, LLC*,
  691 F. Supp. 2d 405 (S.D.N.Y. 2010) ....................................................................................... 12

*Dynamic Data Techs., LLC v. HTC Corp.*,
  No. 1:18-CV-10180, 2019 WL 2433549 (S.D.N.Y. June 11, 2019) ...................................... 18

*Erickson v. Corinthian Colleges, Inc.*,
  No. 13 CIV. 4308, 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ......................................... 15, 16

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
  No. 20-CV-9992, 2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) .......................................... 19

*In re Anadarko Petroleum Corp.*,
  No. 10 CIV. 05894, 2012 WL 12894796 (S.D.N.Y. Mar. 19, 2012) ....................................... 11

*In re Stillwater Min. Co. Sec. Litig.*,
  No. 02 CIV. 2806, 2003 WL 21087953 (S.D.N.Y. May 12, 2003) ........................................ 18

*Mastr Asset Backed Secs. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*,
  880 F. Supp. 2d 418 (S.D.N.Y. 2012) ................................................................................. 13

*Navaera Scis., LLC v. Acuity Forensic Inc.*,
  667 F. Supp. 2d 369 (S.D.N.Y. 2009) ................................................................................. 12

*Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins. Co.*,
  No. 06 CIV. 599, 2006 WL 3317030 (S.D.N.Y. Nov. 9, 2006) ........................................... 15

*Rindfleisch v. Gentiva Health Sys., Inc.*,
  752 F. Supp. 2d 246 (E.D.N.Y. 2010) ................................................................................. 17

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d Cir. 1993) ............................................................................................... 9

*Speedfit LLC v. Woodway USA, Inc.*,
  642 F. Supp. 3d 429 (S.D.N.Y. 2022) ................................................................................... 8

*Todorovic v. Liquid Labs, Inc.*,
  No. 18-CV-1643, 2018 WL 2209506 (S.D.N.Y. May 14, 2018) ....................................... 8, 9

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*,
  324 F. Supp. 3d 366 (W.D.N.Y. 2018) ................................................................................. 18

*Trikona Advisors Ltd. v. Kai-Lin Chuang*,
  No. 12-CV-3886, 2013 WL 1182960 (E.D.N.Y. Mar. 20, 2013) .................................... 18, 20

*Williams v. City of New York*,
  No. 03 CIV. 5342, 2006 WL 399456 (S.D.N.Y. Feb. 21, 2006) ........................................... 13

## Statutes

28 U.S.C. § 1404 ....................................................................................................... *passim*

NRS 41.637 ....................................................................................................................... 19

Defendants Scott Freeman ("Dr. Freeman"), Jake Freeman, Chad Boulanger, Farzin Farzaneh, Vivek Jain, Alexander Wodka, and FCM MM Holdings, LLC ("FCM," and collectively, "Defendants"), by and through their counsel, submit this memorandum of law in support of their Motion to Transfer or, in the Alternative, Stay This Action.[1]

## PRELIMINARY STATEMENT

Plaintiff MindMed brought this action against one of its largest shareholders in retaliation for daring to wage a proxy contest—following a *95% plunge* in the share price over existing management's tenure due to mismanagement and misconduct—to remove MindMed's board of directors and replace them with directors Defendants believed were best suited to lead the company going forward. After MindMed's board succeeded in its bid to maintain control of the company, it decided to employ MindMed's resources to punish this group of shareholders and to secure their future silence in order to bury management's flagrant misconduct. MindMed commenced a state court action in Nevada, which was subsequently removed to federal court, against Dr. Freeman and FCM for breach of a contractual non-disparagement clause (the "Nevada Action"). MindMed subsequently filed the instant case in this forum against Dr. Freeman, FCM, and FCM's directors on a securities fraud theory (the "New York Action").

These overlapping lawsuits were brought in separate jurisdictions for the purpose of inflicting maximum pain on Defendants by driving up their legal fees. In fact, MindMed barely bothers to obscure its purpose, as the complaint is replete with irrelevant personal attacks on Dr.

---

[1]     Citations to "Ex. _" refer to the exhibits annexed to the accompanying Declaration of L. Reid Skibell. The Declaration of Scott Freeman filed concurrently herewith is referred to herein as the "Freeman Decl." Citations to specific paragraphs of the amended complaint filed by plaintiff Mind Medicine (MindMed) Inc. ("Plaintiff" or "MindMed") on October 16, 2023 (ECF No. 27) are denoted herein as "Am. Compl. ¶ _." Internal citations and quotations are omitted throughout unless otherwise indicated.

Freeman, including allegations with respect to a book he wrote, a side business, and the reasons for his departure from MindMed.  Under these circumstances, Plaintiff's choice of forum should be accorded no deference.  The Court should grant transfer to the District of Nevada so the cases, and a related matter also involving many of the same witnesses, can be consolidated.

*First,* this action is subject to the mandatory forum selection clause in the Separation Agreement (defined *infra*), which requires that any dispute relating to Dr. Freeman's post-employment conduct be litigated in Nevada.  The claims in the New York Action fall squarely within the clause.  Because such clauses are to be afforded controlling weight, the Court, absent exceptional circumstances—which are not present here—should transfer this case to the District of Nevada.

*Second*, even if the forum selection clause does not apply, this action could have—and should have—been brought in the District of Nevada.  Plaintiff alleges that Defendants violated Section 14(a) of the Securities Exchange Act of 1934, which confers federal question jurisdiction on the District of Nevada.  The basis for MindMed's filing of the Nevada Action in Nevada is the aforementioned forum selection clause.  As for the other Defendants, they are willing to waive personal jurisdiction as a defense in exchange for transferring this action to the District of Nevada.

*Third*, every significant factor that courts consider under Section 1404(a) weighs in favor of transfer.  Courts routinely transfer cases to districts where, as here, there is a related action pending in the interest of justice and judicial economy.  The convenience of the witnesses and parties, another significant factor, also favors transfer because virtually none of the witnesses are located in New York, Dr. Freeman resides part of the year in Nevada, and the majority of the remaining defendants and certain third-party witnesses either reside in Nevada or in jurisdictions

that are adjacent to or are much closer to Nevada geographically than New York.  Indeed, Plaintiff, in an unrelated action pending in this district, recently admitted under oath in connection with a motion to transfer an action out of this district that its New York "location" was "not an operational office" but merely a mail drop "used for SEC registration purposes," and "no employees [were] regularly located at the New York office nor is work controlled or directed through the New York office."  On this thin reed Plaintiff bases its connection to New York. Plaintiff's choice of forum only raises the suspicion that it strategically filed this action here to avoid Defendants asserting an anti-SLAPP suit defense, which Dr. Freeman and FCM have already asserted in the Nevada Action.

Although MindMed has now amended its complaint to remove the erroneous allegation that its principal place of business is in New York, the fact remains that a mail drop is not a compelling reason for New York to serve as a second front in MindMed's retaliation campaign. The Court should recognize Plaintiff's decision to file its suit in this forum for what it is: a ploy to drive up Defendants' legal fees and to shop for the most advantageous forum.

For these reasons and those that follow, the Court should grant transfer or, in the alternative, stay this action pending the resolution of the Nevada Action.

## BACKGROUND

### A.    Dr. Freeman's Early Involvement with 18-MC

Dr. Freeman served as Chief Medical Officer ("CMO") of Savant HWP, Inc., a developer of pharmaceutical products, from 2009 to October 2019, where he was a co-founder of the company and responsible for leading its FDA strategy and developing and performing clinical studies, including on 18-methyloxycoronaridine ("18-MC").  *See* Am. Compl., Ex. C (May 2023 Proxy Statement) at 19.  18-MC is a psychedelic derived drug meant to treat addiction.  *Id.*

### B.     MindMed Acquires 18-MC from Savant Resulting in Dr. Freeman Joining the Company

In July 2019, "MindMed acquired all rights, title, interest, and assets in the 18-MC program from" Savant Addiction Medicine LLC ("Savant Addiction"). *Id*. ¶ 49.  In return, Savant Addiction received 55 million Class A shares of MindMed stock. *Id*., Ex. C (May 2023 Proxy Statement) at 6.  To date, Dr. Freeman and Defendant FCM "are among the largest investors in MindMed." *Id.* at 11.

In connection with MindMed's acquisition of the 18-MC program, Dr. Freeman became President and CMO of MindMed in September 2019. *Id*. ¶ 50.  In July 2020, however, Dr. Freeman and MindMed parted ways.  In August 2020, MindMed and Dr. Freeman executed an agreement setting forth the terms of his separation from MindMed (the "Separation Agreement").  *Id*. ¶ 56.  According to Plaintiff, the Separation Agreement established, among other things, the parties' mutual non-disparagement obligations.  *Id*. ¶ 57.  The Separation Agreement also contained a forum selection clause covering any post-employment dispute involving Dr. Freeman.  *See* Ex. A., ¶ 18 ("[a]ny suit involving this Agreement shall be brought in a federal or state court sitting in Nevada.").

In connection with the Separation Agreement, "Dr. Freeman executed an agreement that set forth the terms under which he could provide certain consulting services to MindMed, only if and as requested by MindMed, and be compensated for such services (the 'Consulting Agreement')."  Am. Compl. ¶ 58.  The Consulting Agreement was attached as exhibit B to the Separation Agreement and contained an identical forum selection clause designating the Nevada courts.  Ex. A, at 13.

### C.      FCM Undertakes Proxy Campaign to Change MindMed's Leadership

After uncovering misconduct by MindMed's management, FCM, which was formed by

Dr. Freeman and Defendant Jake Freeman (*see* Am. Compl. ¶ 5), launched a proxy campaign

whereby FCM sought to remove the majority of MindMed's directors and replace them with

directors FCM believed would best oversee MindMed's business affairs.  It is this misconduct,

which spans several years, that is at the heart of the proxy contest.  *See* Am. Compl., Ex. C (May

2023 Proxy Statement).  While MindMed alleges that Defendants' proxy campaign was

concocted to injure the company, the reality is that the market had already voiced its view of

MindMed's management before the proxy campaign began.  The following graphic from FCM's

proxy presentation, which MindMed encloses with its complaint, demonstrates how MindMed's

stock performed since its peak in June of 2021, when MindMed's current CEO, Rob Barrow,

became interim CEO:



According to MindMed's complaint, the company spent more than $6 million in legal

and advisory fees responding to the proxy campaign.  Am. Compl. ¶ 8.  Those resources had

their intended effect:  MindMed's current management was narrowly successful in maintaining

control of the company, which only guaranteed that its mismanagement and misconduct would continue to be obscured.  *Id.* ¶ 8.

### D.    MindMed Retaliates Against FCM and Dr. Freeman by Filing the Nevada Action, Which is Presently Headed to an Anti-SLAPP Proceeding

On July 10, 2023, MindMed sent Dr. Freeman and FCM a notice purporting to terminate the Consulting Agreement.  Ex. H (Notice of Termination).  In the letter, MindMed noted that the "Separation Agreement . . . incorporates the Consulting Agreement by reference."  *Id.* MindMed further stated that Dr. Freeman and FCM's purported misstatements in the proxy materials (*i.e.*, the same statements at issue in the New York Action) breached the non-disparagement clause in the Separation Agreement, and they also breached the Consulting Agreement because the statements violated Section 14(a) of the Securities Exchange Act of 1934.  *Id.*

A couple weeks later, on July 26, 2023, MindMed sued Dr. Freeman and FCM in Nevada state court.  *See* Ex. B (Nevada Complaint).  Shortly thereafter, the action was removed to the District of Nevada[2] (*i.e.*, the Nevada Action), where it is currently pending before the Honorable Miranda Du.  *See* Ex. C (Removal Notice).  The Nevada Action claims that Dr. Freeman and FCM allegedly "waged a smear campaign against MindMed and its directors and officers, which eventually escalated into a full-scale proxy contest, in clear violation of the Separation Agreement's non-disparagement provision."  Ex. B (Nevada Complaint) ¶ 91.

On October 31, 2023, Dr. Freeman filed an anti-SLAPP special motion[3] to dismiss the Nevada Action on the basis that FCM's proxy contest to lawfully remove MindMed's board was

---

[2]    *See Mind Medicine (MindMed) Inc. v. Scott Freeman and FCM MM Holdings, LLC*, No. 2:23-cv-01354 (D. Nev. 2023).
[3]    FCM filed an anti-SLAPP motion to dismiss on September 6, 2023, and filed a joinder to Dr. Freeman's October 31, 2023 anti-SLAPP motion to dismiss.

protected speech under Nevada law and the First Amendment. *See Mind Medicine (MindMed) Inc. v. Freeman*, No. 2:23-cv-01354 (D. Nev. 2023), ECF No 75. The anti-SLAPP motion is supported by abundant documentary evidence that also refutes the allegations here. *Id.*, ECF Nos. 76-79 (Exhibits 1-60).

Dr. Freeman also brought a related action against Stephen Hurst, the former CEO of MindMed, based on much of the same misconduct complained of in the proxy materials at issue in the Nevada Action. *See Freeman v. Hurst*, No. 2:22-cv-01433 (D. Nev. 2022) (the "Hurst Action"). The Hurst Action is currently pending before the Honorable Richard F. Boulware. On October 20, 2023, Dr. Freeman moved to consolidate the Nevada Action with the Hurst Action. *See Mind Medicine (MindMed) Inc. v. Freeman*, No. 2:23-cv-01354 (D. Nev. 2023), ECF No 68.

### E.   MindMed Continues its Retaliation Against FCM and Dr. Freeman by Filing the New York Action

Nearly a month after filing the Nevada Action, MindMed sued Dr. Freeman, FCM, and FCM's directors again in this district under the pretense of a different cause of action. Although styled as a violation of Section 14(a) of the Securities Exchange Act of 1934, the New York Action is premised on the same events underlying the Nevada Action. Specifically, Plaintiff alleges that, through FCM, Dr. Freeman initiated a proxy contest through social media, letters, and press releases designed to ultimately take control of MindMed's board. Am. Compl. ¶¶ 6-7, 71. To this end, Plaintiff alleges that Dr. Freeman and FCM disseminated proxy solicitation materials containing misrepresentations, including "denigrating statements meant to undermine MindMed and its Board and management to shareholders" (*id.* ¶ 75), all in an effort to "engage[] in a public smear campaign against MindMed and its management." *Id.* ¶ 99. This purported "smear campaign" is also at the heart of Plaintiff's claims in the Nevada Action and relates directly to the Separation Agreement. *See, e.g.*, Ex. B (Nevada Complaint) ¶ 18 (alleging that

Defendants "initiated an activist shareholder campaign through social media, press releases, shareholder letters, and other sources to smear MindMed's current Board of Directors, management, and business operations . . .").

**F.    MindMed Admits in an Unrelated Action that it Has a Negligible Connection to New York**

Plaintiff's wholly owned subsidiary, Mind Medicine, Inc., recently moved to transfer an unrelated action pending in this district to another jurisdiction[4] (the "Unrelated Action") on the basis of a sworn declaration by its chief legal officer, Mark R. Sullivan,[5] attesting that Mind Medicine, Inc.'s office in New York is "not an operational office" but merely "used for SEC registration purposes as a mailing address . . ."  Ex. D (Sullivan Declaration) ¶ 5.  Mr. Sullivan further attested that there "are no employees regularly located at the New York office nor is work controlled or directed through the New York office (or any one specific office or location)." *Id.* ¶ 6.

Yet, in MindMed's original complaint in this action, it alleged that "MindMed['s] . . . principal place of business [is] in New York, New York."  ECF No. 1, ¶ 14.  After Defendants confronted Plaintiff with this inconsistency, MindMed amended its complaint to state that it has "its principal executive office in New York, New York.  The principal executive office is used by the company's executives who reside in the New York City metropolitan area."  Am. Compl. ¶ 14.  However, no such executives are identified, and the amended complaint is silent with respect to the location of MindMed's principal place of business.  *Id.*  The only other allegation

---

[4]    *See Madeline Feldman v. Mind Medicine, Inc.,* No. 1:23-cv-06169 (S.D.N.Y. 2023).

[5]    https://mindmed.co/news/press-release/mindmed-appoints-mark-r-sullivan-as-chief-legal-officer-and-corporate-secretary/ .

in the amended complaint that concerns this jurisdiction is that Defendants hired a proxy solicitation service provider located in New York.  *Id.* ¶ 78.

## ARGUMENT

## I.    LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  "[W]hile the typical § 1404 analysis involves a holistic balancing of various interests, a forum-selection clause commands controlling weight in the § 1404 analysis." *Todorovic v. Liquid Labs, Inc.*, No. 18-CV-1643, 2018 WL 2209506, at *1 (S.D.N.Y. May 14, 2018)

Where no forum selection clause is involved, the transfer "inquiry involves two steps: first, the court must establish whether the case could have been filed in the proposed transferee district, and second, the court must determine whether the convenience of the parties and the interests of justice favor transfer."  *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp. 3d 429, 437 (S.D.N.Y. 2022).

## II.   THE NEW YORK ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF NEVADA

The Court should transfer the New York Action to the District of Nevada for two independent reasons: (1) Plaintiff agreed to a forum clause requiring it to litigate the claims in this action in the District of Nevada, and (2) transfer would serve "the interests of convenience and justice" under 28 U.S.C. § 1404(a).

A. **Plaintiff Agreed to a Mandatory Forum Clause that Requires the New York Action to be Transferred to the District of Nevada**

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013).  In addition "to putting a brick on the scale in favor of transferring the case, a forum-selection clause affects the § 1404 calculus in three other ways:"

> (1) the plaintiff's choice of forum merits no weight, and the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted; (2) a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests and may only consider the public-interest factors, which will rarely defeat a transfer motion; and (3) when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules.

*Todorovic*, 2018 WL 2209506, at *1 (citing *Atl. Marine Const. Co.*, 571 U.S. at 63-64).

The Separation Agreement includes the following forum selection clause: "[a]ny suit involving this Agreement shall be brought in a federal or state court sitting in Nevada."  Ex. A., ¶ 18.  There can be no dispute that this forum clause is valid and enforceable because, as Plaintiff notes, the Nevada Action was "filed in Nevada pursuant to an exclusive venue provision in the Separation Agreement."  Am. Compl. ¶ 63.

There is also no dispute that the forum clause covers Plaintiff's claim in the New York Action against Dr. Freeman.  The Separation Agreement governs Dr. Freeman's post-employment conduct, which necessarily includes the misrepresentations alleged in this action that were allegedly made following Dr. Freeman's separation from MindMed.  If there were any doubt that the claim here against Dr. Freeman is subject to the forum clause, Plaintiff brought the

10

Nevada Action against Dr. Freeman, which is based on the same alleged "smear campaign" and proxy dispute at issue in the New York Action, pursuant to the same forum clause.  Am. Compl. ¶ 63; *see also Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1361 (2d Cir. 1993) (finding that forum selection clause that applied to claims "arising out of" a contract also covered related claims including violations of securities and antitrust laws and was "not restricted to pure breaches of the contracts containing the clauses").  Moreover, MindMed's basis for terminating the Consulting Agreement was that Dr. Freeman and FCM's statements in proxy materials violated the securities laws.  Ex. H.  Because, as MindMed admits, the "Separation Agreement . . . incorporates the Consulting Agreement by reference" (Ex. A), violations of the Consulting Agreement (*i.e.*, the securities claim involved here) directly relate to the Separation Agreement and are covered by the forum clause.

Although the claims against the remaining Defendants are not subject to the forum selection clause,[6] the Court should nonetheless transfer the entire New York Action to the District of Nevada because "as numerous courts have held, the fact that the forum selection clause indisputably governs half of the claims in this case, and that the remaining claims are factually related to those four claims, weighs strongly in favor of transfer."  *Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*, 16-CV-5171, 2017 WL 4712422, at *9 (S.D.N.Y. Sept. 25, 2017) (granting transfer of entire action even though all claims were not covered by forum clause).

In determining whether the forum selection clause should be given controlling weight, as stated above, "a district court may consider arguments about public-interest factors only." *Atl.*

---

[6]    In the Nevada Action, MindMed alleges that FCM is Dr. Freeman's alter-ego.  Although FCM rejects this claim, if it were true (which it is not), MindMed would be bound to bring the claim against FCM in Nevada as well.  *See* Ex. B (Nevada Complaint) ¶ 7.

*Marine Const. Co.*, 571 U.S. at 64.  "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 62, n.6.  Further, "public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."  *Id.* at 51.

Moreover, where, as here, a plaintiff has defied the parties' forum-selection clause by filing in a non-chosen forum, the plaintiff "*bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer*." *Id*. at 67 (emphasis added).  Here, there are no "public interest" factors that overwhelmingly disfavor a transfer.  Moreover, if the Court were to consider the private interest factors under § 1404(a), transfer would still be warranted for the reasons stated *infra*.

## B.    The New York Action Could Have Been Brought in the District of Nevada

Even if the Court finds that Plaintiff's claim in the New York Action is not covered by the forum selection clause, a transfer "[f]or the convenience of parties and witnesses, [and] in the interest of justice" still would be warranted.  28 U.S.C. § 1404(a).

It cannot credibly be disputed that Plaintiff could—and should—have brought this action in the District of Nevada.  An "action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court."  *In re Anadarko Petroleum Corp.*, No. 10 CIV. 05894, 2012 WL 12894796, at *2 (S.D.N.Y. Mar. 19, 2012).  Defendants easily satisfy both requirements.

In this action, Plaintiff alleges that Defendants violated Section 14(a) of the Securities

Exchange Act of 1934, which would have conferred subject matter jurisdiction on the District of

Nevada over the federal securities claim asserted in this suit.  Further, the District of Nevada has

personal jurisdiction over Dr. Freeman because he consented to the jurisdiction of the Nevada

District Court pursuant to the forum selection clause in the Separation Agreement.  Am. Compl.

¶ 63 (noting that the Nevada Action was "filed in Nevada pursuant to an exclusive venue

provision in the Separation Agreement").  For the same reason, venue would be proper in the

District of Nevada.  As for the rest of the Defendants, on October 12, 2023, the Defendants

proposed waiving their right to contest personal jurisdiction and venue in the Nevada Action if

Plaintiff agreed to have this action transferred to the District of Nevada.  Ex. E.  Plaintiff

ultimately rejected Defendants' proposal.[7]

## C.      The Section 1404(a) Factors Support Transfer to the District of Nevada

Once the initial jurisdictional threshold is met, courts consider the following factors in

deciding whether transfer is appropriate: "(1) the convenience of witnesses; (2) the convenience

of the parties; (3) the location of relevant documents and the relative ease of access to sources of

proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of

---

[7]     Even if these Defendants had not agreed to waive their personal jurisdiction defense in exchange for agreeing to transfer, MindMed would have no better argument for personal jurisdiction in this jurisdiction as compared to Nevada.  None of the Defendants reside in New York, and the pleadings are devoid of any allegations of misconduct taking place in New York except for the location of the proxy solicitation service.  That thin sliver as a basis for jurisdiction would be insufficient as a matter of law.  *See, e.g.*, *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (no personal jurisdiction existed because defendant's negotiations were limited to calls, faxes, and correspondence with "a center of gravity well outside" of New York); *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 377 (S.D.N.Y. 2009) (finding that regular communication to New York by telephone, email and mail, single meeting in New York, and New York choice of law provision was not sufficient to subject foreign defendant to personal jurisdiction).

unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Ahrens v. Cti Biopharma Corp.*, No. 16 CIV. 1044, 2016 WL 2932170 (S.D.N.Y. May 19, 2016).  As set forth below, in the interests of convenience and justice, every significant factor weighs heavily in favor of transfer, and the remaining factors are neutral or do not weigh against such transfer.

  ***Interests of justice and trial efficiency***.  The interest of justice and trial efficiency goals of Section 1404(a) decisively weigh in favor of transfer because this action and the Nevada Action are based on the same underlying factual events.  "[O]ne of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998). Indeed, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Williams v. City of New York*, No. 03 CIV. 5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006).

  This action and the Nevada Action are both premised on Dr. Freeman's and FCM's purported false and disparaging statements made in connection with a proxy contest to "smear" MindMed and its officers. *See, e.g.*, *compare* Am. Compl. ¶ 6 (alleging "after having waged a smear campaign for months through more informal channels, Defendants commenced a proxy contest designed to gain control of MindMed's six-member board of directors") *with* Ex. B (Nevada Complaint) ¶ 24 (alleging Dr. Freeman and FCM were "involved in the proxy contest and smear campaign against MindMed").  Moreover, Dr. Freeman and FCM's Anti-SLAPP

defense in the Nevada Action will, as here, involve a determination of whether statements in the proxy statements were false.  *See infra* Section III.

Under these circumstances, in the interest of justice, courts in the Southern District routinely grant motions transferring cases to districts where related actions are pending.  *See, e.g.*, *Williams*, 2006 WL 399456, at *3 (granting transfer to district where the actions "encompass[ed] similar legal and factual issues, involve[d] the same plaintiff, are both suits against members of DOCS"); *Mastr Asset Backed Secs. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 424 (S.D.N.Y. 2012) (granting transfer where "[w]hile the Minnesota Action and this suit are not identical—they involve different trusts— nevertheless, the Trustee's decision to file a closely related suit against WMC in the District of Minnesota several months before filing this suit weighs in favor of transfer to Minnesota."); *AIG Fin. Prod. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 675 F. Supp. 2d 354, 372-73 (S.D.N.Y. 2009) (granting transfer to district with related case involving same parties, facts, and circumstances).

Therefore, because this action and the Nevada Action arise out of the same factual nucleus, which is a "strong factor to be weighed . . . [that] may be determinative," *Williams*, 2006 WL 399456, at *3, the court should transfer this action to the District of Nevada on this basis alone.

**Convenience of parties and witnesses.**  The convenience of the parties and witnesses also support transfer because the individuals central to the claims in this action either reside in Nevada or reside in states where traveling to Nevada would be much more convenient than New York.  For example, Dr. Freeman and former CEO of MindMed, Stephen Hurst, both of whom are key individuals in this action, resided in Nevada during the relevant period.  *See* Freeman

Decl. ¶ 3; Ex. D (Sullivan Declaration) ¶ 13.  Indeed, many of the proxy materials that Plaintiff

claims contained misrepresentations made by Dr. Freeman involved misconduct by Mr. Hurst.[8]

*See*, *e.g.*, Am. Compl., Ex. C (May 2022 Proxy Statement) at 7 ("Mr. Hurst [] while he was Co-

CEO of the Company [] and Ceruvia had engaged in a transaction involving MindMed's

intellectual property.  Dr. Freeman requested that the Company engage independent legal

counsel to investigate the Company's transactions with Ceruvia."); *id*. (noting the "Board's

awareness of potential conflicts of interests based on Mr. Hurst and Mr. Dellelce's business

dealing").  Another key player, MindMed's current CEO, Robert Barrow, who is also referenced

in the proxy materials at issue, and who appears over twenty times in the Amended Complaint,

resides in Wisconsin, not in New York.  *See* Ex. D (Sullivan Declaration) ¶ 13.

Moreover, none of the remaining defendants, including FCM, who Plaintiff claims was a

vessel for Dr. Freeman's purported misconduct, reside in New York.  Am. Compl. ¶¶ 16-21.  To

the contrary, the majority of the remaining defendants reside in jurisdictions that either are

adjacent to or are much closer to Nevada geographically than New York.  *See*, *e.g.*, Am. Compl.

¶¶ 18, 20-21 (alleging FCM is a Wyoming company, Alexander Wodka resides in Illinois, and

Vivek Jain resides in Saskatchewan, Canada, which abuts Montana).  Thus, it would be much

more convenient and less expensive for the bulk of the remaining defendants to travel to Nevada

than across the country to New York.  *See Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins.*

*Co.*, No. 06 CIV. 599, 2006 WL 3317030, at *4 (S.D.N.Y. Nov. 9, 2006) (finding convenience

factor weighed in favor of transfer to St. Louis, Missouri where although witnesses lived in

---

[8]        As previously stated, Dr. Freeman has sued Mr. Hurst directly regarding the same
misconduct in the Hurst Action.  *See Scott Freeman v. Stephen Hurst, et. al.*, No. 2:22-cv-01433
(D. Nev. 2022), ECF No. 40.

Mississippi and Louisiana, and "neither New York nor St. Louis would be ideal, it would seem more convenient for them to appear in St. Louis.").

Compounding Plaintiff's tenuous connection to New York is Plaintiff's admission under oath made in connection with a motion to transfer in the Unrelated Action just a month ago where its chief legal officer, Mark R. Sullivan, attested that Mind Medicine, Inc.'s office in New York is "not an operational office" but merely "used for SEC registration purposes as a mailing address . . ." Ex. D (Sullivan Declaration) ¶ 5.  Moreover, in arguing that New York would be an inconvenient forum, Plaintiff conceded that "[a]lthough most witnesses would have to travel regardless, it is more inconvenient to travel to New York as they would incur higher expenses in travel and lodging in New York City." Ex. F (Motion to Transfer).  By MindMed's own admission, it would not be any more convenient for Plaintiff or its witnesses to travel to New York than Nevada.

     ***Location of evidence and operative facts***.  These factors also favor transfer because the location of the evidence and operative facts relevant to this dispute bear a stronger connection to Nevada than New York.  "[T]he locus of operative events in a securities action," such as this action, is "where the alleged misrepresentations were made." *Erickson v. Corinthian Colleges, Inc.*, No. 13 CIV. 4308, 2013 WL 5493162, at *6 (S.D.N.Y. Oct. 1, 2013).  In this action, Plaintiff alleges that Dr. Freeman and FCM violated the securities laws by making misrepresentations relating to MindMed and its officers in proxy statements.  Am. Compl. ¶¶ 1, 157-167.  Because Dr. Freeman was either a resident or resided part-time in Nevada when these alleged misrepresentations were made (*see* Freeman Decl. ¶ 3), Nevada is the "the locus of operative events." *Erickson*, 2013 WL 5493162, at *6.  Moreover, any doubt that Nevada is the locus of operative events is dispelled by the forum selection clauses in the Separation Agreement

and Consulting Agreement, which both designate the courts of Nevada as the chosen forum to hear any dispute covering Dr. Freeman's post-employment conduct, including the alleged misrepresentations in this action.

Any decisions made by Plaintiff relating to the events in this action also occurred outside of New York.  Indeed, in the Unrelated Action, Mr. Sullivan attested that there "are no employees regularly located at the New York office nor is work controlled or directed through the New York office (or any one specific office or location)."  Ex. D (Sullivan Declaration) ¶ 6.  Therefore, the operative facts relevant to action took place in Nevada and not in New York.

**Weight accorded Plaintiff's choice of forum.**  The next factor, the weight accorded to Plaintiff's choice of forum, strongly favors transfer as well.  It is well settled that a plaintiff's choice of forum is accorded "little weight" where, as here, "a plaintiff brings suit outside his home forum."  *Brown v. Dow Corning Corp.*, No. 93CIV.5510, 1996 WL 257614, at *3 (S.D.N.Y. May 15, 1996).  Plaintiff is a Canadian corporation (*see* Am. Compl. ¶ 14) with its "principal executive office in New York," which, as Plaintiff has recently admitted in the Unrelated Action, is "not an operational office – it is used for SEC registration purposes as a mailing address . . ."  Ex. D (Sullivan Declaration) ¶ 5.  Nor would the fact that MindMed's stock trades on the New York Stock Exchange make venue in New York proper.  *See Laborers Loc. 100 & 397 Pension Fund v. Bausch & Lomb Inc.*, No. 06 CIV. 1942, 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006) (holding the fact that "Bausch & Lomb's stock is traded on the New York Stock Exchange" was insufficient to establish venue because if it was "the SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street").

Thus, because Plaintiff does "not reside in New York, most of the defendants are not located in New York, and the critical decisions that underlie the plaintiff['s] claims were made outside New York, the plaintiff['s] choice of forum is entitled to reduced deference." *Azari v. B&H Photo Video,* No. 06 CIV.7825, 2007 WL 13101, at *2 (S.D.N.Y. Jan. 3, 2007) (Hon. Cote) (granting transfer).

Plaintiff's choice of forum should be disregarded for an independent reason. Where, as here, "it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever[.]" *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010). Given MindMed's razor thin connection to New York, it only raises the suspicion that Plaintiff strategically filed this action here to avoid Defendants asserting an anti-SLAPP suit defense, which Dr. Freeman and FCM have already done in the Nevada Action. *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1142 (9th Cir. 2022) (applying Anti-SLAPP statute and noting that the Second Circuit is one of the federal circuits that have "refus[ed] to apply various states' anti-SLAPP statutes.").

***The remaining factors***. The remaining factors—the availability to compel the attendance of unwilling witnesses, the relative means of the parties, and the forum's familiarity with governing law—are all neutral. First, "given the lack of specific information regarding Plaintiff's proposed witnesses, and absent any indication that [] non-party witnesses would be unwilling to testify in this case, the availability of compulsory process factor does not weigh strongly for or against transfer," and as a result is neutral. *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 383 (W.D.N.Y. 2018). Second, the relative means of the parties is also a neutral factor here because there is no evidence regarding the

parties' finances.  *See Dynamic Data Techs., LLC v. HTC Corp.*, No. 1:18-CV-10180, 2019 WL

2433549, at *7 (S.D.N.Y. June 11, 2019).  Last, this action involves the application of the federal

securities laws, which both this Court and the District of Nevada are equally capable of applying.

*See In re Stillwater Min. Co. Sec. Litig.*, No. 02 CIV. 2806, 2003 WL 21087953, at *5 (S.D.N.Y.

May 12, 2003).  This factor is therefore neutral as well.

## III.   ALTERNATIVELY, THE COURT SHOULD STAY THE NEW YORK ACTION PENDING THE RESOLUTION OF THE NEVADA ACTION

"[T]he power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants."  *Delgado v. NJ Transit Rail Operations, Inc.*, 329 F.R.D. 506, 507

(S.D.N.Y. 2019).  "It is within the sound discretion of a district court to enter a stay pending the

outcome of independent proceedings that are likely to affect a case on its calendar."  *Trikona*

*Advisors Ltd. v. Kai-Lin Chuang*, No. 12-CV-3886, 2013 WL 1182960, at *2 (E.D.N.Y. Mar. 20,

2013) (granting stay in the alternative to transfer).  The court's decision in *Trikona Advisors Ltd.*

*v. Kai-Lin Chuang* is instructive.  In that case, the court stayed the action because the

"allegations [were] nearly identical" to the related action and plaintiff's "claims in the [related]

action . . . will likely heavily bear on the outcome of the instant case."  *Id.* at 3.  Moreover,

"[w]hile the [related] action may not settle every question of fact and law at issue in" the

instance case, "it will in all likelihood . . . settle many and simplify them all."  *Id.*

So too here.  The Nevada Action and the New York Action are premised on the same

purported "smear campaign" and proxy contest.  *See, e.g.*, *compare* Am. Compl. ¶ 6 (alleging

"after having waged a smear campaign for months through more informal channels, Defendants

commenced a proxy contest designed to gain control of MindMed's six-member board of

directors") *with* Ex. B (Nevada Complaint) ¶ 24 (alleging Dr. Freeman and FCM were "involved in the proxy contest and smear campaign against MindMed").

Moreover, both actions involve claims and defenses that implicate critical overlapping elements.  For example, in the Nevada Action, Dr. Freeman and FCM filed an Anti-SLAPP motion, arguing that the statements allegedly made in proxy statements could not have breached the non-disparagement clause in the Separation Agreement because those statements were made in good faith in furtherance of Dr. Freeman and FCM's free speech.  Ex. G (Anti-SLAPP Motion) at 20, 26-28.  Under Nevada law, a showing of "good faith" in this context requires a "[c]ommunication . . . which is *truthful or is made without knowledge of its falsehood.*"  NRS 41.637 (emphasis added).  In the New York Action, Plaintiff's Section 14(a) claim also requires a showing of falsity.  To state a Section 14(a) claim, a plaintiff must plead "that the proxy statement was false or misleading about its subject."  *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-CV-9992, 2021 WL 4443258, at *13 (S.D.N.Y. Sept. 27, 2021).

Thus, because both actions will require a court to determine whether statements in the proxy materials were false, if the Court declines to transfer this action, it should grant a stay pending resolution of the Nevada Action as "claims in the [Nevada] action . . . will likely heavily bear on the outcome of the instant case."  *Trikona Advisors Ltd.*, 2013 WL 1182960, at *3.

## CONCLUSION

The Court should grant Defendants' motion to transfer this action to the District of Nevada for the reasons stated herein or, in the alternative, stay this action pending the resolution of the Nevada Action.

Dated: New York, New York
      November 7, 2023

GLENN AGRE BERGMAN & FUENTES LLP

By: _/s/ L. Reid Skibell_
    L. Reid Skibell
    George L. Santiago

1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
T: 212-970-1600
rskibell@glennagre.com
gsantiago@glennagre.com

*Attorneys for Defendants*