# EXHIBIT F

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

MADELINE FELDMAN,

                  Plaintiff,

        -against-

MIND MEDICINE, INC.,

                  Defendant.

Civ. No.: 23-cv-6169-LGS

------------------------------------------------X


# DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO
## <u>THE WESTERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)</u>


JACKSON LEWIS P.C.

Adam G. Guttell, Esq.
Cliff LaFemina, Esq.
58 South Service Rd., Ste. 250
Melville, New York 11747
(631) 247-0404

*Attorneys for Defendant*

**<u>TABLE OF CONTENTS</u>**

<b>Page</b>

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ..................................................................................................... 2

   A.  Defendant's Relevant Operations Are Located Outside Of New York ......................... 2

   B.  During The Relevant Time Period, Plaintiff Worked For MindMed Outside Of
      New York ............................................................................................................. 2

   C.  Procedural History ................................................................................................ 3

ARGUMENT ........................................................................................................... 4

   POINT I

   STANDARD OF REVIEW .................................................................................. 4

   POINT II

   THE CASE SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF
   TEXAS AS IT IS THE MORE CONVENIENT FORUM AND WOULD BE IN THE
   INTEREST OF JUSTICE ..................................................................................... 5

      A.  This Case Could Have Been Filed In The Western District Of Texas .................. 5

      B.  The Main Set Of Operative Facts Underlying Plaintiff's Claims Occurred In
         Texas And Thus This Factor Weighs In Favor of Transfer .................................. 6

      C.  The Convenience Of The Parties and Witnesses Weighs In Favor Of Transfer .... 7

      D.  The Availability Of Process To Compel The Attendance Of Unwilling
         Witnesses Does Not Weigh Against Transfer ..................................................... 9

      E.  The Location Of Relevant Documents And The Relative Ease of Access To
         Sources Of Proof Weigh In favor Of Transfer .................................................... 10

      F.  The Relative Financial Means Of The Parties Weigh In Favor Of Transfer ......... 10

      G.  The Western District Of Texas's Familiarity With The Governing Law
         Does Not Weigh Against Transfer ...................................................................... 11

      H.  Plaintiff's Choice Of Forum Should Bear Little Weight In The Court's
         Transfer Analysis ............................................................................................... 12

i

I.   The Trial Efficiency And Interests Of Justice Both Weigh In Favor Of Transfer ........................................................................................................ 13

J.   Moreover, Plaintiff Cannot Maintain Any Claims Under The NYSHRL, NYCHRL, Or the NYSEPA And Such Claims Do Not Preclude Transfer Of This Action To The Western District of Texas .................................................. 14

    1. The NYSHRL and NYCHRL Require The Impact of the Employment Action To Be Felt In New York and New York City, Respectively ................. 14

    2. The NYSEPA Only Applies To People Who Work in new York State ........... 16

    3. Plaintiff Is Not Entitled To The Rights Provided Under The NYSHRL, NYCHRL, and NYSEPA.................................................................................. 16

CONCLUSION..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Abney v. Gen. Elec. Co.*,
   No. 08-7344, 2009 U.S. Dist. LEXIS 59738 (S.D.N.Y. May 4, 2009) ...................................12

*Andrews v. A.C. Roman & Assocs., Inc.*,
   914 F. Supp. 2d 230 (N.D.N.Y. 2012) ...........................................................................4, 7, 8

*Ayala-Branch v. Tad Telecom, Inc.*,
   197 F. Supp. 2d 13 (S.D.N.Y. 2002)..................................................................................9, 10

*Butcher v. Gerber Prod. Co.*,
   No. 98-1819, 1998 U.S. Dist. LEXIS 11869 (S.D.N.Y. Aug. 3, 1998)....................................9

*Chen v. Arts Nail Putnam Valley Inc.*,
   No. 14-03037 (ALC), 2017 U.S. Dist. LEXIS 109665 (S.D.N.Y. July 14,
   2017) ...................................................................................................................................4, 8

*Citibank, N.A. v. Affinity Processing Corp.*,
   248 F. Supp. 2d 172 (E.D.N.Y. 2003) ....................................................................................2

*D'Amato v. ECHL, Inc.*,
   No. 13-646S, 2015 U.S. Dist. LEXIS 59954 (W.D.N.Y. May 7, 2015).........................4, 5, 13

*E.E.O.C. v. Bloomberg L.P.*,
   967 F. Supp. 2d 816 (S.D.N.Y. 2013)...................................................................................15

*Eres N.V. v. CITGO Asphalt Ref. Co.*,
   605 F. Supp. 2d 473 (S.D.N.Y. 2009)...................................................................................10

*First City Fed. Sav. Bank v. Register*,
   677 F. Supp. 236 (S.D.N.Y. 1988) ...................................................................................3, 13

*Ford Motor Co. v. Ryan*,
   182 F.2d 329, 330 (2d Cir. 1950), *cert. denied*, 340 U.S. 851 (1950).......................................4

*Garcia v. Pearson Educ., Inc.*,
   No. 15-7289, 2016 U.S. Dist. LEXIS 140481 (S.D.N.Y. Oct. 7, 2016)..................................11

*Hammell v. Banque Paribas*,
   No. 90 Civ. 4799 (JSM), 1993 U.S. Dist. LEXIS 14755 (S.D.N.Y. Oct. 22,
   1993) ...................................................................................................................................16

*Hart v. Dresdner Kleinwort Wasserstein Sec., LLC.*,
   No. 06-CV-0134, 2006 U.S. Dist. LEXIS 56710 (S.D.N.Y. Aug. 9, 2006)..............................6

*Herbert v. Elec. Arts, Inc.*,
    325 F. Supp. 2d 282 (S.D.N.Y. 2004) ....................................................................5

*Hoffman v. Blaski*,
    363 U.S. 335 (1960) ..............................................................................................5

*Hoffman v. Parade Publ'ns*,
    15 N.Y.3d 285 (2010) ......................................................................................14, 15

*Kassman v. KPMG LLP*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013) ..................................................................16

*King v. Aramark Servs.*,
    No. 19-CV-77, 2019 U.S. Dist. LEXIS 129284 (W.D.N.Y. July 29, 2019) .........6, 7

*Maines v. Last Chance Funding, Inc.*,
    No. 17-CV-05453, 2018 U.S. Dist. LEXIS 162073 (E.D.N.Y. Sept. 21, 2018) ....15

*Mohsen v. Morgan Stanley & Co.*,
    No. 11-CV-6751, 2013 U.S. Dist. LEXIS 135682 (S.D.N.Y. Sept. 23, 2013) .........2

*Nicklin v. Taco Bell Corp.*,
    09 Civ. 9773 (CM), 2010 U.S. Dist LEXIS 152585 (S.D.N.Y. Mar. 31, 2010) ......9

*Ortiz v. Haier Am. Trading, LLC*,
    No. 101705/11, 2011 N.Y. Misc. LEXIS 2577 (Sup. Ct. N.Y. Cty. May 27,
    2011) ................................................................................................................14, 15

*Rindfleisch v. Gentiva Health Sys., Inc.*,
    752 F. Supp. 2d 246 (E.D.N.Y. 2010) ...........................................................5, 7, 12

*Sam v. Selip & Stylianou, LLP*,
    No. 152780, 2015 U.S. Dist. LEXIS 172077 (E.D.N.Y. Dec. 28, 2015) ................8

*Schauder v. Int'l Knife & Saw, Inc.*,
    No. 02-CV-8361, 2003 U.S. Dist. LEXIS 7033 (S.D.N.Y. Apr. 25, 2003) .............8

*SEC v. Hill Int'l, Inc.*,
    No. 20-CV-447, 2020 U.S. Dist. LEXIS 75514 (S.D.N.Y. Apr. 28, 2020) ............6

*Smith v. JetBlue Airways*,
    No. 06-CV-0011E(F), 2007 U.S. Dist. LEXIS 43282 (W.D.N.Y. June 14,
    2007) ......................................................................................................................4

*Syeed v. Bloomberg L.P.*,
    568 F. Supp. 3d 314 (S.D.N.Y. 2021) ............................................................16, 17

*Tawil v. Target Corp.*
    No. 10-CV-965, 2010 U.S. Dist. LEXIS 68035 (S.D.N.Y. July 8, 2010) ..............................10

*Tole v. Glenn Miller Prods., Inc.,*
    No. 12-6660, 2013 U.S. Dist. LEXIS 110610 (S.D.N.Y. Aug. 6, 2013).............................7, 11

*Travelers Prop. Cas. Co. of Am. v. DHL Danzas Air & Ocean,*
    No. 05-CV-6303, 2006 U.S. Dist. LEXIS 33366 ..................................................................12

*USA Interactive v. Savannah Air Ctr., LLC.,*
    No. 02-CV-3659, 2002 U.S. Dist. LEXIS 14476 (S.D.N.Y. Aug. 7, 2002) ..........................11

*Vangas v. Montefiore Med. Ctr.,*
    823 F.3d 173 (2d Cir. 2016).........................................................................................14, 15

*Wahlstrom v. Metro-North Commuter R.R. Co.,*
    89 F. Supp. 2d 506 (S.D.N.Y. 2000)...........................................................................15, 16

*Weiss v. Premier Techs.,*
    No. 21-CV-4648, 2022 U.S. Dist. LEXIS 144541 (S.D.N.Y. Aug. 12, 2022) .......................6

**Statutes**

28 U.S.C. § 1331 .................................................................................................................5

28 U.S.C. § 1337 .................................................................................................................5

28 U.S.C. § 1343 .................................................................................................................5

28 U.S.C. § 1367 .................................................................................................................6

28 U.S.C. § 1391 ..............................................................................................................5, 6

28 U.S.C. § 1404(a) .....................................................................................................*passim*

N.Y. Exec. Law § 298-a(1) ...............................................................................................14

**Other Authorities**

Fed R. Civ. P. 45(c)(1)(A) ..................................................................................................9

United States District Courts – National Judicial Caseload Profile,
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile06
    30.2023.pdf .................................................................................................................13, 14

Defendant Mind Medicine, Inc. ("MindMed" or "Defendant"), by its attorneys, Jackson Lewis P.C., respectfully submits this Memorandum of Law in Support of its Motion to Transfer Venue to the U.S. District Court for the Western District of Texas (the "Western District of Texas") pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, this Court should grant Defendant's motion and transfer this Action to the Western District of Texas for further proceedings.

## PRELIMINARY STATEMENT

This lawsuit involves gender-based unequal pay, gender discrimination, disability discrimination, retaliation, defamation, breach of contract, and unjust enrichment claims brought by a former Director of Operations & Administration at MindMed who worked and lived in Reno, Nevada from April 2020 to July 2021 and then in Austin, Texas from July 2021 to December 2022. The vast majority of the alleged conduct at issue in this Action took place in Texas, where Plaintiff worked remotely and was a Texas employee. Plaintiff did not initiate this Action in the Western District of Texas, her current residence and the more convenient choice of forum, but rather identified a State with a favorable civil rights law (i.e., New York) and initiated suit in the United States District Court for the Southern District of New York. None of the alleged incidents occurred within the Southern District of New York. Plaintiff also cannot maintain any claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), nor New York Labor Law § 194 ("NYSEPA") because she was never a New York resident or employee, none of the alleged discriminatory and retaliatory acts occurred in New York, and the impact of any alleged conduct was not felt in New York.

1

As demonstrated below, the totality of facts and 28 U.S.C. § 1404(a) dictate that this Action be transferred to the Western District of Texas for the convenience of the parties and because the interests of justice so require it.[1]

## BACKGROUND[2]

### A.   Defendant's Relevant Operations Are Located Outside Of New York.

MindMed is a clinical stage biopharmaceutical company developing novel product candidates to treat brain health disorders. (Sullivan Decl., ¶ 3). MindMed is a wholly-owned subsidiary of "Mind Medicine (Mind Med) Inc.," a corporation organized under the laws of British Columbia. (Sullivan Decl., ¶ 4). MindMed is incorporated in the State of Delaware and maintains its principal executive office in New York, New York. *Id.* The New York office is solely used as a mailing address for SEC registration (i.e., the company needs to register with a physical address), and may be used as an office by an executive, which happens infrequently. (Sullivan Decl., ¶ 5). There are no employees located regularly in New York nor is work controlled or directed through the New York office. *Id.* All employees work remotely and may report to individuals located outside of their state of residence. (Sullivan Decl., ¶ 6).

### B.   During The Relevant Time Period, Plaintiff Worked For MindMed Outside Of New York.

From April 15, 2020 (her date of hire) through to December 2, 2022 (her date of termination), Plaintiff worked for MindMed as Director of Operations & Administration. (Complaint, ¶¶ 9, 66; Sullivan Decl., ¶ 9) According to MindMed's records, Plaintiff lived in

---

[1]      "In deciding a motion to transfer, a court may consider material outside of the pleadings." *Mohsen v. Morgan Stanley & Co.*, No. 11-CV-6751, 2013 U.S. Dist. LEXIS 135682, at *10 (S.D.N.Y. Sept. 23, 2013). *See also Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003) ("The defendant must support [a Section 1404(a)] motion with affidavits and other materials outside the pleadings.") (collecting cases).

[2]      The Declaration of Mark R. Sullivan is attached to the Declaration of Adam G. Guttell, Esq, as Exhibit 1. It is hereinafter referred to as "Sullivan Decl."

Reno, Nevada, from April 15, 2020 to July 2021, and in Austin, Texas, from July 2021 to December 2, 2022. (Sullivan Decl., ¶ 7). Plaintiff's job was a generalist position – she was responsible for coordinating conferences, paying vendors, scheduling travel, and providing business management. (Sullivan Decl., ¶ 9)

Plaintiff reported to the former Executive Chair and Co-CEO, Stephen Hurst (from April 15, 2020 to February 18, 2021), the former Chief Technology Officer, Bradford Cross (from February 18, 2021 to December 17, 2021), and the Vice President of Global Operations, Jakub Klimes (from December 17, 2021 to December 2, 2022). (Sullivan Decl., ¶¶ 10-12). While Plaintiff claims that during her employment with MindMed, the company asked her to "relocate to New York City … to open and staff MindMed's U.S. Headquarters," her Complaint acknowledges that such relocation never came to fruition as MindMed changed her job responsibilities. (Complaint, ¶¶ 12-13). In any event, MindMed never requested Plaintiff relocate to New York City or anywhere in New York, as the company does not conduct operations in New York – its only connection to New York is its registration with the SEC for mailing purposes and a small office space that may be used by an executive from time to time. (Sullivan Decl., ¶¶ 4, 8). MindMed's operations do not flow through New York or any one location for that matter. (Sullivan Decl., ¶ 5).

### C.   <u>Procedural History</u>

On May 30, 2023, Plaintiff filed a Summons with Notice in the Supreme Court of the State of New York, New York County (Index No. 154852/2023, captioned <u>Feldman v. Mind Medicine Inc.</u>). (Dkt. No. 1-1). On July 18, 2023, Defendant removed the state action to this Court. (Dkt. No. 1.). On August 25, 2023, Plaintiff filed her Complaint in this Action. (Dkt. No. 11). Defendant filed its Answer to Plaintiff's Complaint on September 13, 2023. (Dkt. No. 12).

3

# ARGUMENT

## POINT I

## STANDARD OF REVIEW

A motion to transfer venue under 28 U.S.C. § 1404(a) requires the Court to engage in a two-part inquiry: *first*, the Court must determine whether the case could have been brought in the transferee district; and *second*, if the venue in the transferee district is appropriate, the Court must determine whether the transfer would promote the convenience of the parties and witnesses, and would otherwise be in the "interest of justice." *See Chen v. Arts Nail Putnam Valley Inc.*, No. 14-CV-03037, 2017 U.S. Dist. LEXIS 109665, at *6 (S.D.N.Y. July 14, 2017). The "undisputed goal of Section 1404(a) is to prevent waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Andrews v. A.C. Roman & Assocs., Inc.*, 914 F. Supp. 2d 230, 237 (N.D.N.Y. 2012) (internal quotations and citations omitted).

The moving party bears the burden of establishing that transfer is appropriate by a "clear and convincing showing." *Smith v. JetBlue Airways*, No. 06-CV-0011E(F), 2007 U.S. Dist. LEXIS 43282, at *2 (W.D.N.Y. June 14, 2007) (citing *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950), *cert. denied*, 340 U.S. 851 (1950)). In determining whether to transfer venue, courts within the Second Circuit weigh several factors, including:

> (1) the convenience of witnesses and parties; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the locus of the operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the relative financial means of the parties; (6) the comparative familiarity of each district with the governing law; (7) the weight afforded plaintiff's choice of forum, and (8) judicial economy and the interests of justice.

*D'Amato v. ECHL, Inc.*, No. 13-CV-646S, 2015 U.S. Dist. LEXIS 59954, at *15-16 (W.D.N.Y. May 7, 2015); *see also Herbert v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 285-86 (S.D.N.Y. 2004). No single factor is determinative, nor is there a "strict formula for the application of these factors." *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 250 (E.D.N.Y. 2010). Rather, the factors should be applied and weighed in the "context of the individualized circumstances of the particular case." *Id* at 251.

## POINT II

### THE CASE SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF TEXAS AS IT IS THE MORE CONVENIENT FORUM AND WOULD BE IN THE INTEREST OF JUSTICE.

**A.      This Case Could Have Been Filed In The Western District Of Texas.**

A threshold requirement for transferring venue to another district is that the Plaintiff must have been capable of bringing the action in the transferee court. *See* 28 U.S.C. § 1404(a). A proper district court is one where: (1) it has subject matter jurisdiction; (2) defendant would have been subject to personal jurisdiction; and (3) venue would have been proper. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Each of these factors is met such that venue is proper in the Western District of Texas.

First, the Western District of Texas has subject matter jurisdiction over Plaintiff's federal equal pay claim arising under the Equal Pay Act of 1963. *See* 28 U.S.C. §§ 1331, 1337, 1343. Second, MindMed, by virtue of its employment of Plaintiff in Texas is subject to personal jurisdiction in Texas. Lastly, the vast majority of the alleged conduct at issue took place in Austin, Texas (where Plaintiff resided and worked remotely from July 2021 through her termination in December 2022), and venue is proper under 28 U.S.C. § 1391. *See* 28 U.S.C. § 1391 (providing that a civil action may be brought in "a judicial district in which a substantial part of the events or

omissions giving rise to the claim"). Lastly, even if Plaintiff could maintain any of her NYSHRL, NYCHRL, or NYSEPA claims, which she cannot, the Western District of Texas could have supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367.

Thus, Plaintiff could have initiated this Action in the Western District of Texas.

## B. The Main Set Of Operative Facts Underlying Plaintiff's Claims Occurred In Texas And Thus This Factor Weighs In Favor Of Transfer.

The second part of the Court's Section 1404(a) inquiry (i.e., whether the transfer would promote the convenience of the parties and witnesses, and would otherwise be in the "interest of justice") strongly supports transfer to the Western District of Texas.

The locus of operative events underlying the dispute is the "primary factor in determining a § 1404(a) motion." *Weiss v. Premier Techs.*, No. 21-CV-4648, 2022 U.S. Dist. LEXIS 144541, at *5-6 (S.D.N.Y. Aug. 12, 2022) (internal citations omitted). To determine where the locus of operative facts lie, courts consider the "site of event from which the claims arises." *Id.* at 6. This factor "substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York." *SEC v. Hill Int'l, Inc.*, No. 20-CV-447, 2020 U.S. Dist. LEXIS 75514, at *10 (S.D.N.Y. Apr. 28, 2020).

Plaintiff's Complaint alleges conduct that occurred in two locations (i.e., her residences in Nevada and Texas), but the primary locus of operative facts is in Austin, Texas (i.e., the Western District of Texas). *See King v. Aramark Servs.*, No. 19-CV-77, 2019 U.S. Dist. LEXIS 129284, at *30 (W.D.N.Y. July 29, 2019) ("It is true that in some cases there can be more than one locus or the locus can be split between multiple districts."). Plaintiff was a Texas employee from July 2021 to December 2022 (the time period that includes the vast majority of the allegations in her

Complaint) and she reported to managers in California and Slovakia during this time period.[3]
(Sullivan Decl., ¶¶ 11-12). Plaintiff also references Jamon Rahn, Robert Barrow, Carol Nast, and
Dan Karlin in the Complaint. Mr. Rahn, Mr. Barrow, and Ms. Nast do not reside in New York, but
Mr. Karlin does. (Sullivan Decl., ¶¶ 13-16). While MindMed wholly contests Plaintiff's allegations
regarding Mr. Karlin (and all other individuals), these allegations comprise only a sliver of
Plaintiff's Complaint and would not place the locus of operative facts in New York. (Complaint,
¶¶ 40, 41, 47, 53, 55).

Accordingly, the locus of operative facts underlying Plaintiff's claims lie squarely in the
Western District of Texas, where Plaintiff resided and worked for the majority of the time period
covering her Complaint. *See King*, 2019 U.S. Dist. LEXIS 129284, at *31 ("But just because
operative facts might be located in multiple districts does not mean that the locus factor is
invariably neutral…. In this case, the court perceives the main set of operative facts to be located
in [District], where [the plaintiff] lived and worked. Events in other districts … do not alter this
conclusion.")

### C. The Convenience Of The Parties and Witnesses Weighs In Favor Of Transfer.

Transfer of venue may be appropriate where the "inconvenience of the party moving for
transfer could be completely eliminated without substantially adding to the non-moving party's
inconvenience." *Rindfleisch*, 752 F. Supp. 2d at 258 (internal citations omitted). "The convenience
of party and non-party witnesses is the most important consideration in a Section 1404(a) motion."
*Tole v. Glenn Miller Prods., Inc.*, No. 12-6660, 2013 U.S. Dist. LEXIS 110610, at *3 (S.D.N.Y.
Aug. 6, 2013). Indeed, the "core determination" under Section 1404(a) is the "center of gravity of
the litigation, a key test of which is the convenience of the witnesses." *Andrews*, 914 F. Supp. 2d

---

[3]      Plaintiff resided in Nevada from April 2020 to July 2021 and reported to a manager who also resided in
Nevada. However, the vast majority of the alleged conduct occurred while Plaintiff lived and worked in Texas.

at 238. Moreover, "the convenience of non-party witnesses is accorded more weight than that of party witnesses." *Chen*, 2017 U.S. Dist. LEXIS 109665, at *8.

Here, the alleged witnesses identified in Plaintiff's Complaint, none of whom are parties to this litigation, live in Nevada (Mr. Hurst), California (Mr. Cross and Ms. Nast), Slovakia (Mr. Klimes), Florida (Mr. Rahn), Wisconsin (Mr. Barrow), and New York (Mr. Karlin). (Sullivan Decl., ¶¶ 10-16).[4] Therefore, if this litigation were to proceed in the Southern District of New York, it would cause not only Plaintiff but the alleged witnesses (other than Mr. Karlin) to incur substantial expense in travelling to and from New York, New York (*e.g.*, for attendance at depositions and court conferences). Although most witnesses would have to travel regardless, it is more inconvenient to travel to New York as they would incur higher expenses in travel and lodging in New York City. Further, other than Mr. Klimes (who would be traveling internationally), the witnesses would be required to travel further than if they had to travel to the Western District of Texas which is located near the geographic center of the United States. In short, the Southern District of New York is only convenient for Mr. Karlin, whereas it is substantially less convenient for the other as described above. *See Schauder v. Int'l Knife & Saw, Inc*., No. 02-CV-8361, 2003 U.S. Dist. LEXIS 7033, at *8 (S.D.N.Y. Apr. 25, 2003) ("Given the significant number of witnesses who could give important testimony about the main issue in this suit … and for whom the Southern District of New York is substantially less convenient, and given that only one witness … would find this district more convenient, the convenience of the witnesses weighs in favor of transfer.").

By contrast, the only convenience factor Plaintiff appears to rely on is that she has retained counsel in New York, New York. However, Plaintiff cannot avoid transfer by pointing to the fact

---

[4]     This Court may take judicial notice of the relative distances of the witnesses' work locations and residences from this District. *See e.g.*, *Sam v. Selip & Stylianou, LLP*, No. 152780, 2015 U.S. Dist. LEXIS 172077, at *4 (E.D.N.Y. Dec. 28, 2015) (granting motion to transfer and taking judicial notice of the distances from different forums in the State).

that she has attorneys in New York. In fact, Plaintiff previously had Texas counsel and likely could find Texas counsel again if she wishes to do so. (Sullivan Decl., ¶ 17). Plaintiff's counsel's residence in New York has no bearing on whether this case should be transferred under 28 U.S.C. § 1404(a), for the simple reason that the "word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *Nicklin v. Taco Bell Corp.*, No. 09-CV-9773, 2010 U.S. Dist. LEXIS 152585, at *6 (S.D.N.Y. Mar. 31, 2010) (granting transfer motion finding, "[s]ince plaintiffs have no relationship to the Southern District of New York, it would not conserve their means . . . were they to have to try this case here. *Counsel's location is of no relevance whatever*.") (emphasis added); *see also Butcher v. Gerber Prod. Co.*, No. 98-1819, 1998 U.S. Dist. LEXIS 11869, at *11 (S.D.N.Y. Aug. 3, 1998) (granting motion to transfer, and noting that "[i]ndeed, the only significant connection to New York in this case is that all of Plaintiffs' attorneys are located here. Yet this fact has little consequence to the transfer decision"). Moreover, assuming Plaintiff still maintains her residence in Austin, Texas (Complaint, ¶ 2; Sullivan Decl., ¶ 7), she would be within reasonable commuting distance to the Western District of Texas for court conferences and related matters.

For these reasons, the convenience of the parties weighs in favor of transferring this Action to the Western District of Texas.

### D. The Availability Of Process To Compel The Attendance Of Unwilling Witnesses Does Not Weigh Against Transfer.

All of the witnesses, except for Mr. Karlin, work and live far enough outside of the Southern District of New York that they would not be subject to this Court's subpoena power. *See* F.R.C.P. 45(c)(1)(A) (providing that individuals residing 100 or more miles outside the Court are

9

not subject to its subpoena power); *Ayala-Branch v. Tad Telecom, Inc.*, 197 F. Supp. 2d 13, 15 (S.D.N.Y. 2002) (granting motion to transfer, and noting that some of the potential witnesses were "non-party witnesses who may be unwilling to travel to the Southern District of New York and who are clearly beyond the subpoena power of this Court."). Although Mr. Karlin would be subject to the subpoena power of the Southern District of New York, he is a minor witness who never managed or supervised Plaintiff. Accordingly, this factor does not weigh against transferring this Action to the Western District of Texas.

### E.    The Location Of Relevant Documents And The Relative Ease Of Access To Sources Of Proof Weigh In Favor Of Transfer.

While this factor may have less relevance in the era of electronic documents, the materials relevant to Plaintiff's claims likely remain housed in Texas, where Plaintiff lived and worked. This factor too weighs in favor of transfer to the Western District of Texas.

### F.    The Relative Financial Means Of The Parties Weigh in Favor of Transfer.

Plaintiff has brought suit against a corporate entity with arguably greater financial means than an individual, and, as such, this factor weighs in favor of transfer. *See Eres N.V. v. CITGO Asphalt Ref. Co.*, 605 F. Supp. 2d 473, 482 (S.D.N.Y. 2009) ("The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties.") (internal citations omitted); *see also Tawil v. Target Corp.*, No. 10-CV-965, 2010 U.S. Dist. LEXIS 68035, at *7 (S.D.N.Y. July 8, 2010) ("Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining whether to transfer.") (internal citations omitted). MindMed moves to transfer this Action to the District in which Plaintiff resides – this supports transfer of venue as Plaintiff would avoid the cost of traveling to New York for

deposition, court conferences, etc., whereas MindMed can afford the costs associated with litigating a case in the Western District of Texas. *See USA Interactive v. Savannah Air Ctr., LLC.*, No. 02-CV-3659, 2002 U.S. Dist. LEXIS 14476, at *4 (S.D.N.Y. Aug. 6, 2002) (noting that relative means of the parties is a more significant factor when one party is an individual). As such, this factor weighs in favor of transfer.

### G. The Western District Of Texas's Familiarity With The Governing Law Does Not Weigh Against Transfer.

Federal courts generally give little weight to this factor because "federal courts are deemed capable of applying the substantive law of other states." *Tole*, 2013 U.S. Dist. LEXIS 110610, at *16. Here, the Western District of Texas is capable of adjudicating Plaintiff's Equal Pay Act claim well as Plaintiff's NYSHRL, NYCHRL, and NYSEPA claims (to the extent she can proceed under the NYSHRL, NYCHRL, or NYSEPA in the first instance). Moreover, none of Plaintiff's claims involve novel issues of state or local law for which it would be beneficial to have a "home" forum adjudicate. *Garcia v. Pearson Educ., Inc.*, No. 15-CV-7289, 2016 U.S. Dist. LEXIS 140481, at *20 (S.D.N.Y. Oct. 7, 2016) (granting motion to transfer and noting that "although Plaintiff's action involves NYSHRL claims, the parties have not indicated that any complex or novel issues of New York law are implicated here") (internal citations omitted).[5] Thus, this factor does not weigh against transfer to the Western District of Texas.

---

[5]    As discussed in more detail, *infra* Part II.J, Plaintiff's claims under New York law have no bearing on the transfer decision because Plaintiff cannot maintain any claims under such statutes since she is neither a New York resident nor employee. In fact, Plaintiff was simply forum shopping in New York to utilize New York's favorable civil rights and employment laws. Plaintiff's forum shopping is further illustrated by the fact that she initially sent a demand letter to MindMed in January 2023 where she only raised claims under federal and Texas laws. (Sullivan Decl., ¶ 17).

## H. Plaintiff's Choice Of Forum Should Bear Little Weight In The Court's Transfer Analysis.

While a plaintiff's choice of forum typically receives "great weight" and should remain undisturbed "unless other factors weigh strongly in favor of transfer," the importance of this factor substantially diminishes where, like here, the "operative facts have 'little or no connection' with the forum chosen by the plaintiff" and the "plaintiff chooses a forum that is not [her] residence." *See Rindfleisch*, 752 F. Supp. 2d at 251 (internal citations omitted); *see also Travelers Prop. Cas. Co. of Am. v. DHL Danzas Air & Ocean*, No. 05-CV-6303, 2006 U.S. Dist. LEXIS 33366, at *10 (S.D.N.Y. May 23, 2006) (holding that a plaintiff's choice of forum is entitled to little weight where the "litigation has only tangential ties to New York, and New York is not the plaintiff's home state"). Additionally, "[w]here it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever, and the transfer of venue is appropriate." *See Rindfleisch*, 752 F. Supp. 2d at 251 (internal quotations and citations omitted).

As discussed above, the locus of operative facts underlying Plaintiff's claims reside squarely within Texas—where Plaintiff lived and worked during the majority of the time period relevant to her claims. Thus, there is "little or no connection" to the Southern District of New York. While Plaintiff alleges MindMed conducts business within the Southern District of New York, only one of the witnesses lived there during Plaintiff's employment with MindMed and none of the relevant events occurred there. *See e.g.*, *Abney v. Gen. Elec. Co.*, No. 08-CV-7344, 2009 U.S. Dist. LEXIS 59738, at *10-11 (S.D.N.Y. May 4, 2009) (granting motion to transfer and noting that although the defendant was located in the Southern District of New York, "the cause of action is minimally connected with the forum" as none of the events occurred in New York).

Accordingly, Plaintiff's choice of forum in the Southern District of New York should be afforded little weight in the Court's analysis of whether to transfer this Action to the Western District of Texas.

### I. The Trial Efficiency And Interests Of Justice Both Weigh In Favor Of Transfer.

In assessing whether the "trial efficiency and interests of justice" are better served by transferring venue, courts have considered factors such as docket congestion and the relative caseload of the two districts, as well as whether transfer would prejudice one party over the other. *D'Amato*, 2015 U.S. Dist. LEXIS 59954, at *24.

First, as to trial efficiency, the Administrative Office of the U.S. Courts, on behalf of the Federal Judiciary, publishes an annual report regarding the Civil Federal Judicial Caseload Statistics, of which this Court may take judicial notice. *See e.g.*, *First City Fed. Sav. Bank v. Register*, 677 F. Supp. 236, 237 n. 5 (S.D.N.Y. 1988) (granting motion to transfer and taking judicial notice of weighted caseload per judge per Administrative Office of U.S. Courts, Federal Court Management Statistics).

This report provides detailed information about the numbers of civil cases filed, terminated, and pending, in each Judicial District, over a 12-month period. The most recently updated information available regarding Civil Federal Judicial Caseload Statistics was published as of June 30, 2023. According to this report, the Southern District of New York had 13,113 overall filings *with 11,420 civil filings*, 17,541 pending cases, and 17 trials completed per judgeship from July 1, 2022 through June 30, 2023. *See* United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf. In comparison, the Western District of Texas had 13,163 overall filings but *only 4,761 civil filings*,

and 10,738 pending cases from July 1, 2022 through June 30, 2023. *Id.* While admittedly a form of "rough science," these numbers suggest that the Western District of Texas has much higher capacity for *civil cases* than the Southern District of New York.

Second, transferring this litigation to the Western District of Texas would not prejudice Plaintiff in a material way – in fact, it would make litigating this case more convenient for her as she resides in the Western District of Texas. Thus, to further promote the interests of judicial economy, this factor weighs in favor of transfer to the Western District of Texas.

**J.     Moreover, Plaintiff Cannot Maintain Any Claims Under The NYSHRL, NYCHRL, Or the NYSEPA And Such Claims Do Not Preclude Transfer Of This Action To The Western District Of Texas.**

Plaintiff's Complaint includes claims under the NYSHRL, NYCHRL, and NYSEPA, but she cannot maintain these claims as she is not entitled to the rights provided by these laws. Her assertion of these claims does not preclude transfer to the Western District of Texas.

**1.   The NYSHRL and NYCHRL Require The Impact of the Employment Action To Be Felt In New York and New York City, Respectively.**

The NYSHRL has an explicit provision regarding its extraterritorial application, stating that it only applies to "an act committed outside this state against a resident of this state or against a corporation organized under the laws of this state or authorized to do business in this state, if such act would constitute an unlawful discriminatory practice if committed within this state." N.Y. Exec. Law § 298-a(1). Construing this provision, the New York Court of Appeals excluded from the reach of the NYSHRL non-residents "who are unable to demonstrate that the impact of the discriminatory act was felt inside the state." *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 292 (2010). The New York Court of Appeals has also adopted the *Hoffman* "impact" test for claims under the NYCHRL and that the "impact" must be felt in New York City. *See Vangas v. Montefiore Med. Ctr.*, 823 F.3d 173, 182 (2d Cir. 2016); *see also Ortiz v. Haier Am. Trading, LLC*, No. 101705/11, 2011 N.Y.

Misc. LEXIS 2577, at *6 (Sup. Ct. N.Y. Cty. May 24, 2011) (noting that it is the location of the "impact of the discriminatory conduct or decision," not the plaintiff's residence, nor the defendant's principal place of business, that determines whether the NYCHRL applies).

Mere "tangential connections" to New York do not suffice for out-of-state plaintiffs to bring claims under the NYSHRL or NYCHRL - the "impact of the employment action must be felt by the plaintiff in New York State (for NYSHRL claims) and New York City (for NYCHRL Claims)." *Vangas*, 823 F.3d at 183; *see Maines v. Last Chance Funding, Inc.*, No. 17-CV-05453, 2018 U.S. Dist. LEXIS 162073, at *21-23 (E.D.N.Y. Sept. 21, 2018) (granting motion to dismiss NYSHRL claims where plaintiff was resident of Georgia, but alleged that he worked daily with New York-based employees and clients and that his termination "deeply impacted" his New York-based coworkers, and reasoning that "[t]hese are the exact kinds of 'tangential connections' to New York that courts have consistently rejected as a jurisdictional basis for out-of-state plaintiffs to bring claims under the NYSHRL"); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013) ("[P]ointing to a few occasions in which a claimant performed some work in New York and evidence that certain adverse actions were executed from New York is insufficient to show that the alleged discriminatory events had an impact in New York."); *Hoffman*, 15 N.Y.3d at 292 (affirming dismissal of NYSHRL claims for lack of subject matter jurisdiction, and reasoning that allegations by plaintiff, who was non-New York resident, that he attended quarterly meetings in New York, that he was managed from New York, that decision to terminate him was made in New York, and that decisionmaker called him from New York to inform him of termination decision, did not satisfy impact requirement); *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 527-28 (S.D.N.Y. 2000) (dismissing a discrimination claim under the NYCHRL without reference to the

plaintiff's residence because "the alleged incidents took place in White Plains, New York, well outside the borders of New York City").

### 2. The NYSEPA Only Applies To People Who Work In New York State.

The NYSEPA is "silent as to its application abroad." *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC.*, No. 06-CV-0134, 2006 U.S. Dist. LEXIS 56710, at *20 (S.D.N.Y. Aug. 8, 2006). But, given the presumption against extraterritoriality, "it follows that the [NYSEPA] does not apply to people who live and work outside of New York State." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 469 (S.D.N.Y. 2013); *see also Hammell v. Banque Paribas*, No. 90-CV-4799, 1993 U.S. Dist. LEXIS 14755, at *5 (S.D.N.Y. Oct. 19, 1993) (stating, with respect to a provision of the New York Labor Law in the same Article as the NYSEPA, that "[t]he purpose of this area of the labor law is clearly to protect workers laboring in New York").

### 3. Plaintiff Is Not Entitled To The Rights Provided Under The NYSHRL, NYCHRL, and NYSEPA.

Here, as it relates to New York, Plaintiff only alleges that (1) MindMed asked her to relocate to New York City, and (2) she planned and attended a meeting in New York City. (Complaint, ¶¶ 12-13, 47). As a starting matter, MindMed never asked Plaintiff to relocate to New York – the company does not operate out of New York nor is New York its "nerve center" (as discussed, the space is only used for SEC purposes and may be used as an office which happens infrequently). (Sullivan Decl., ¶ 5). Plaintiff's connections to New York, which are contested by MindMed, do not rise to a sufficient level which would allow this Court to find that the "impact" of the alleged actions were felt in New York or that Plaintiff "labored in New York." In fact, Plaintiff's actions in New York City and New York are even more minimal than the cases cited above where the courts held that the plaintiffs could not maintain actions under the New York statutes. *See Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 330 (S.D.N.Y. 2021) ("Courts routinely hold that a

plaintiff who lives and works outside of New York, but whose employment is terminated by a New York employer, does not feel the impact of that termination in New York.") (internal citations omitted).

For all of these reasons, the fact that Plaintiff purports to bring NYSHRL, NYCHRL, and NYSEPA claims should not preclude transfer of this Action to the Western District of Texas. To the contrary, her attempt to avail herself of New York laws (that she lacks standing to assert claims under) exposes her choice of venue as pure forum shopping.

<u>**CONCLUSION**</u>

For all of the above reasons, the totality of facts demonstrate that the Western District of Texas is the more convenient and thus more appropriate forum for adjudicating Plaintiff's claims. Accordingly, Defendant Mind Medicine, Inc. respectfully requests this Court transfer venue of this case to the Western District of Texas for further proceedings.

Dated: Melville, New York
September 13, 2023

Respectfully submitted,

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
58 South Service Rd., Ste. 250
Melville, New York 11747
(631) 247-0404

By:   */s/ Adam G. Guttell*
Adam G. Guttell, Esq.
Cliff LaFemina, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of September, 2023, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

MEGAN S. GODDARD
FRANCES CODD SLUSARZ
GODDARD LAW PLLC
*Attorneys for Plaintiff*
39 Broadway, Suite 1540
New York, New York 10006
(646) 964-1178
megan@goddardlawnyc.com
frances@goddardlawnyc.com

*/s/ Adam G. Guttell*
ADAM GUTTELL, ESQ.