**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MIND MEDICINE (MINDMED) INC.,

                Plaintiff,

    v.

SCOTT FREEMAN, JAKE FREEMAN, CHAD
BOULANGER, FARZIN FARZANEH, VIVEK
JAIN, ALEXANDER WODKA, and FCM MM
HOLDINGS, LLC,

                Defendants.

---

Case No. 1:23-cv-07875 (DLC)

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

GLENN AGRE BERGMAN & FUENTES LLP

1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
T: 212-970-1600

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

    A.   The Parties ....................................................................................................... 3

    B.   MindMed Acquires 18-MC from Savant Resulting in Dr. Freeman Joining
         the Company ..................................................................................................... 4

    C.   FCM Undertakes a Proxy Campaign to Change MindMed's Leadership ....................... 5

    D.   MindMed Sues Dr. Freeman and FCM in Nevada .......................................... 6

    E.   MindMed Sues FCM and the Nominees in the New York Action .................................. 7

    F.   MindMed's Patently Irrelevant and Prejudicial Allegations ........................... 8

ARGUMENT .................................................................................................................. 9

    I.   LEGAL STANDARD ...................................................................................... 9

    II.   MINDMED FAILS TO STATE A CLAIM UNDER § 14(a) AND
         RULE 14A-9 BECAUSE IT CANNOT PLEAD TRANSACTION CAUSATION ........ 9

    III.   MINDMED LACKS STANDING TO SUE FOR DAMAGES UNDER § 14(a)
         AND RULE 14A-9 ............................................................................................ 12

    IV.   MINDMED FAILS TO PLEAD ITS FRAUD BASED § 14(a) AND RULE 14A-9
         CLAIM WITH PARTICULARITY UNDER FED. R. CIV. 9(B) ................................ 14

    V.   MINDMED IS NOT ENTITLED TO EQUITABLE RELIEF ...................................... 16

CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Amoco Prod. Co. v. Vill. of Gambell, AK*,
    480 U.S. 531 (1987) ................................................................................ 16

*Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC*,
    No. 21CV382, 2022 WL 956119 (S.D.N.Y. Mar. 30, 2022) .................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 9

*Ashford Hosp. Prime Inc.* v. *Sessa Cap. (Master) LP*,
    No. 3:16-CV-00527-N, 2017 WL 2955366 (N.D. Tex. Feb. 17, 2017) ................... 13

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004) ...................................................................... 3

*Bobrowsky v. Curran*,
    333 F. Supp. 2d 159 (S.D.N.Y. 2004) ...................................................... 17

*Cohen v. LyondellBasell Indus. N.V.*,
    No. 19-CV-2622, 2020 WL 5097773 (E.D.N.Y. June 23, 2020) .............. 13

*DCML LLC v. Danka Bus. Sys. PLC*, No. 08 CIV.,
    2008 WL 5069528 (S.D.N.Y. Nov. 26, 2008) ................................... 11, 12

*Diceon Elecs., Inc. v. Calvary Partners, L.P.*,
    772 F. Supp. 859 (D. Del. 1991) .............................................................. 13

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
    No. 20-CV-9992, 2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) ............... 11, 13, 14

*Frei v. Taro Pharm. U.S.A., Inc.*,
    844 F. App'x 444 (2d Cir. 2021) .............................................................. 16

*Gen. Elec. Co. by Levit v. Cathcart*,
    980 F.2d 927 (3d Cir. 1992) ...................................................................... 11

*Heil v. Lebow*,
    No. 91 CIV. 8656, 1993 WL 15032 (S.D.N.Y. Jan. 13, 1993) ................. 11

*In re Banco Bradesco S.A. Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017) ...................................................... 15

*In re Columbia Pipeline, Inc.*,
    405 F. Supp. 3d 494 (S.D.N.Y. 2019) ...................................................... 10

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ........................................................................................*passim*

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970) ...................................................................................... 10

*Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*,
    544 F. Supp. 3d 405 (S.D.N.Y. 2021) ......................................................... 9

*Ognibene v. Parkes*,
    671 F.3d 174 (2d Cir. 2011) ......................................................................... 16

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971) ...................................................................................... 17

*Pell v. Kill*,
    135 A.3d 764 (Del. Ch. 2016) ...................................................................... 14

*Plant Indus., Inc. v. Bregman*,
    490 F. Supp. 265 (S.D.N.Y. 1980) .............................................................. 17

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    645 F. Supp. 2d 210 (S.D.N.Y. 2009) ..................................................... 9, 11

*Ramos v. New York City Dep't of Educ.*,
    447 F. Supp. 3d 153 (S.D.N.Y. 2020) ......................................................... 17

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ......................................................................... 15

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015) ......................................................... 9

*Rubenstein on Behalf of Jefferies Fin. Grp. Inc. v. Adamany*,
    No. 22-2794, 2023 WL 6119810 (2d Cir. Sept. 19, 2023)......................... 10

*Salomon Bros. Mun. Partners Fund, Inc. v. Thornton*,
    410 F. Supp. 2d 330 (S.D.N.Y. 2006) ......................................................... 17

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*,
    No. 97 CIV. 3802, 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998) ............... 15

*Thomas v. City of New York*,
    143 F.3d 31 (2d Cir. 1998) ........................................................................... 17

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
    801 F. Supp. 1134 (S.D.N.Y. 1992) ............................................................ 10

*Vaughn v. Consumer Home Mortg., Inc.*,
   293 F. Supp. 2d 206 (E.D.N.Y. 2003) ................................................................... 17

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ............................................................................................. 12

*Weisberg v. Coastal States Gas Corp.*,
   609 F.2d 650 (2d Cir. 1979) .................................................................................. 10

**Statutes**

15 U.S.C. § 78n(a) ........................................................................................ *passim*

**Rules and Regulations**

Federal Rules of Civil Procedure Rule 9(b) .................................................. 9, 14, 15

Federal Rules of Civil Procedure Rule 12(b)(1) ................................................... 9, 12

Federal Rules of Civil Procedure Rule 12(b)(6) ......................................................... 8

17 C.F.R. § 240.14a-9 ................................................................................... *passim*

Defendants Scott Freeman ("Dr. Freeman"), Jake Freeman, Chad Boulanger, Farzin Farzaneh, Vivek Jain, Alexander Wodka, and FCM MM Holdings, LLC (collectively, "Defendants"), by and through their counsel, submit this memorandum of law in support of their Motion to Dismiss Plaintiff's First Amended Complaint (the "FAC").[1]

## PRELIMINARY STATEMENT

This action represents a novel attempt by management of a publicly traded company (MindMed) to employ the federal securities laws to silence dissenting shareholders (like Dr. Freeman and FCM) that exercised their fundamental right to challenge management's conduct, such as the indisputable and catastrophic collapse in MindMed's stock price during current management's tenure.  But the securities laws do not function in that manner.  Section 14(a) of the Securities Exchange Act of 1934 ("§ 14(a)") was promulgated to protect *shareholders* in proxy campaigns, *not management*.  As the Supreme Court made clear more than fifty years ago in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), § 14(a)'s purpose is to protect shareholders from "deceptive or inadequate disclosure in the proxy solicitation" process.  Through this action, MindMed attempts to take a shield that was intended to protect shareholders and, instead, use it as a sword against them.  Allowing MindMed or any other public company to use the securities laws against its own shareholders threatens to turn the statute on its head by dissuading shareholders from exercising their fundamental rights to engage in proxy campaigns and exercise free speech.  Merely the threat of management's ability to bring these suits would have a chilling

---

[1]  Citations to specific paragraphs of the amended complaint filed by plaintiff Mind Medicine (MindMed) Inc. ("MindMed" or the "Company") on October 16, 2023 (ECF No. 27) are denoted herein as "FAC ¶ _."  Internal citations and quotations are omitted throughout unless otherwise indicated.

effect on prospective dissidents.  For the reasons that follow, the Court should dismiss the FAC with prejudice.

The FAC does not—because it cannot—plead transaction causation under § 14(a).  To do so, a plaintiff must show that statements in proxy materials were essential to the *accomplishment of a wrongful transaction*.  While FCM waged a proxy campaign to have its slate of directors elected as MindMed's future Board of Directors, MindMed's current management was successful in maintaining control of the Company.  In other words, as the FAC concedes, "FCM Nominees *lost* their proxy contest."  Therefore, because the challenged proxy materials that sought approval of FCM's slate of directors were rejected by MindMed's shareholders, MindMed cannot, as a matter of law, plead transaction causation.

Likewise, MindMed lacks standing to sue for damages under § 14(a).  Congress's purpose in enacting § 14(a), which lacks an express private right of action, was to protect shareholders with voting rights.  Therefore, to have standing to sue for damages under § 14(a), there must be an injury to a shareholder.  Because FCM's slate of directors were rejected by MindMed's shareholders, the transaction that was the subject of the proxy materials could not have caused MindMed's shareholders an injury as a matter of law.  MindMed brings this action therefore not to recover harm caused to any of its shareholders (because it cannot), but instead to recover its *own* discretionary expenditures on proxy activities.  To our knowledge, no court in this Circuit has found that an issuer has *standalone* standing (*i.e.*, harm solely to the issuer without an injury to a voter-shareholder) to pursue a § 14(a) claim for damages.  This Court should not be the first.

Finally, the FAC, which sounds in fraud, fails to satisfy Rule 9(b)'s heightened pleading requirements because it engages in impermissible group pleading.  The FAC groups together all

the Defendants without specifying the speaker of each statement or the speakers' authority over such statements.  Under these circumstances, Defendants cannot be apprised of the circumstances surrounding their purportedly fraudulent conduct.

For these reasons and those that follow, MindMed has no viable claim for a violation of § 14(a), and the FAC must be dismissed with prejudice.

## FACTUAL BACKGROUND[2]

### A.    The Parties

MindMed is a publicly traded biopharmaceutical company organized under the laws of British Columbia.  FAC ¶¶ 1,14.  MindMed develops psychedelic products to treat brain health disorders.  *Id.* ¶¶ 2, 22.

Defendant Dr. Freeman previously served as MindMed's Chief Medical Officer ("CMO") and President.  *Id.* ¶ 15.  FCM MM Holdings, LLC ("FCM") is a Wyoming limited liability company formed by Dr. Freeman and defendants Jake Freeman and Chad Boulanger in August 2022.  *Id.* ¶¶ 5, 18; Anti-SLAPP Mot. at 15.

Together with Dr. Freeman, defendants Farzin Farzaneh, Vivek Jain, and Alexander Wodka were nominated by FCM (the "Nominees") in a proxy contest to replace the then MindMed Board of Directors at MindMed's 2023 annual general meeting.  *Id.* ¶ 6.

---

[2]    Unless otherwise indicated, the facts described below are as alleged in the FAC and are accepted as true for purposes of this motion only.  For context, certain facts have been drawn from Dr. Freeman's Anti-SLAPP motion filed in the action captioned *Mind Medicine (MindMed) Inc. v. Scott Freeman and FCM MM Holdings, LLC,* No. 2:23-cv-01354 (D. Nev. 2023), ECF No. 75 (the "Anti-SLAPP Mot.")  This Court may take judicial notice of the document.  *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

**B.      MindMed Acquires 18-MC from Savant Resulting in Dr. Freeman Joining the Company**

Dr. Freeman served as CMO of Savant HWP, Inc., a developer of pharmaceutical products, from 2009 to 2019, where he was a co-founder of the company and responsible for leading its FDA strategy and developing and performing clinical studies, including on 18-methyloxycoronaridine ("18-MC").  FAC, Ex. C (May 2023 Proxy Statement) at 19.  18-MC is a psychedelic derived drug meant to treat addiction.  *Id.*

In July 2019, "MindMed acquired all rights, title, interest, and assets in the 18-MC program from" Savant Addiction Medicine LLC ("Savant Addiction").  *Id.* ¶ 49.  In return, Savant Addiction received 55 million Class A shares of MindMed stock.  *Id.*, Ex. C (May 2023 Proxy Statement) at 6.  To date, Dr. Freeman and FCM "are among the largest investors in MindMed."  *Id.* at 11.

In connection with MindMed's acquisition of the 18-MC program, Dr. Freeman became President and CMO of MindMed.  *Id.* ¶ 50.  During Dr. Freeman's tenure, MindMed began developing the drugs BOL-148 and LSD.  Anti-SLAPP Mot. at 7.  In June 2020, however, Dr. Freeman was falsely accused of a workplace violation because Dr. Freeman was standing in the way of MindMed's directors' misappropriation of trade secrets and intellectual property for Ceruvia Lifesciences, Inc. ("Ceruvia"), a company MindMed's directors secretly formed to hide their equity interest.  *Id.* at 7-8.  Further, Dr. Freeman discovered that MindMed's directors were dosing healthy people with 18-MC at doses the FDA deemed unsafe.  *Id.* at 20.  As a result, Dr. Freeman and MindMed parted ways.  FAC ¶ 53.

In August 2020, MindMed and Dr. Freeman executed an agreement setting forth the terms of Dr. Freeman's separation from MindMed (the "Separation Agreement").  *Id.* ¶ 56.  According to MindMed, the Separation Agreement established, among other things, the parties'

mutual non-disparagement obligations.  *Id*. ¶ 57.  The Separation Agreement also contained a forum selection clause designating the courts of Nevada.  ECF No. 31-3, (Separation Agreement) ¶ 18.

In connection with the Separation Agreement, "Dr. Freeman executed an agreement that set forth the terms under which he could provide certain consulting services to MindMed, only if and as requested by MindMed, and be compensated for such services (the 'Consulting Agreement')."  FAC ¶ 58.  The Consulting Agreement was attached as Exhibit B to the Separation Agreement and contained an identical forum selection clause designating the Nevada courts.  ECF No. 31-3, (Consulting Agreement) ¶ 19.

### C.    FCM Undertakes a Proxy Campaign to Change MindMed's Leadership

After uncovering misconduct by MindMed's management—including its directors' misappropriation of BOL-148 and LSD trade secrets for Ceruvia and dosing healthy patients at 35 times the dose the FDA deemed safe (Anti-SLAPP Mot. at 7-8, 20)—FCM launched a proxy campaign whereby FCM sought to remove the majority of MindMed's directors and replace them with directors FCM believed would best oversee MindMed's business affairs.  It is this misconduct, spanning several years, that was at the heart of the proxy contest.  FAC, Ex. C (May 2023 Proxy Statement).

While MindMed alleges that the proxy campaign was concocted to injure the Company, the reality is that the market had voiced its view of MindMed's management long before the proxy campaign began.  The following graphic from FCM's proxy presentation, which MindMed encloses with its FAC and does not claim is false, demonstrates how MindMed's stock performed since its peak in June of 2021, when MindMed's current CEO, Rob Barrow, became interim CEO:



As MindMed alleges, the "FCM Nominees lost their proxy contest, as reflected in the final certified results of the shareholder vote at MindMed's 2023 annual general meeting of shareholders." FAC ¶ 8.  In other words, MindMed's then-Board of Directors were re-elected. Despite retaining its board composition, MindMed nonetheless alleges that it spent more than $6 million in legal and advisory fees responding to the proxy campaign.  *Id.* ¶ 8.  Those resources had their intended effect:  MindMed's current management was successful in maintaining control of the Company in spite of the collapse in the company's share price, which only guaranteed that its mismanagement and misconduct would continue unabated.

### D.     MindMed Sues Dr. Freeman and FCM in Nevada

Following FCM's proxy contest, MindMed turned to the courts to silence those shareholders who had dared to speak out against its misconduct and mismanagement.  Indeed, on July 26, 2023, MindMed sued Dr. Freeman and FCM in Nevada state court.  ECF No. 31-4, Exhibit B (the "Nevada Compl.").  Shortly thereafter, the action was removed to the District of Nevada (the "Nevada Action"), where it is currently pending before the Honorable Richard F.

Boulware II.[3]  In the Nevada Action, MindMed claims that Dr. Freeman and FCM allegedly "waged a smear campaign against MindMed and its directors and officers, which eventually escalated into a full-scale proxy contest, in clear violation of the Separation Agreement's non-disparagement provision."  Nevada Compl. ¶ 91.

In 2022, Dr. Freeman also brought a related action against Stephen Hurst, the former CEO of MindMed, based on much of the same misconduct complained of in the proxy materials at issue in the Nevada Action.  *See Freeman v. Hurst*, No. 2:22-cv-01433 (D. Nev. 2022) (the "Hurst Action").  The Hurst Action is currently pending before the Honorable Richard F. Boulware II as well.  Given the significant overlap between the actions, on October 20, 2023, Dr. Freeman moved to consolidate the Nevada Action with the Hurst Action.  *See* Nevada Action, ECF No. 68.  On November 15, 2023, the Nevada Action was reassigned from the Honorable Miranda Du to Judge Boulware (*i.e.*, effectively consolidated with the Hurst Action).  *See Mind Medicine (MindMed) Inc. v. Freeman*, No. 2:23-cv-01354 (D. Nev. 2023), ECF No. 97.  In the reassignment order, the court stated that the "presiding district judges have determined that these two cases are related and that there is good cause to reassign these cases to one district judge and one magistrate judge . . . . Reassignment will promote judicial efficiency, avoid duplicative filings by the parties, and will not result in prejudice to the parties."  *Id.*

E.     **MindMed Sues FCM and the Nominees in the New York Action**

Over a month after filing the Nevada Action, MindMed sued Dr. Freeman, FCM, and the Nominees in this district under the pretense of a different cause of action (the "New York Action").  Although styled as a violation of § 14(a) of the Securities Exchange Act of 1934 (the

---

[3]     *See Mind Medicine (MindMed) Inc. v. Scott Freeman and FCM MM Holdings, LLC*, No. 2:23-cv-01354 (D. Nev. 2023).

"Exchange Act") and SEC Rule 14a-9 ("Rule 14a-9"), the New York Action is premised on the same events underlying the Nevada Action.  Specifically, MindMed alleges that Defendants initiated a proxy contest through social media, letters, and press releases designed to ultimately take control of MindMed's board.  FAC ¶¶ 6-7, 71.  To this end, MindMed alleges that Defendants disseminated proxy solicitation materials containing misrepresentations, including "denigrating statements meant to undermine MindMed and its Board and management to shareholders" (*id.* ¶ 75), all in an effort to "engage[] in a public smear campaign against MindMed and its management." *Id.* ¶ 99.  This purported "smear campaign" is also at the heart of MindMed's claims in the Nevada Action.  *See*, *e.g.*, Nevada Compl. ¶ 18 (alleging that Defendants "initiated an activist shareholder campaign through social media, press releases, shareholder letters, and other sources to smear MindMed's current Board of Directors, management, and business operations . . .").

MindMed also alleges that Defendants made false or misleading misstatements relating to "Dr. Freeman's employment and experience prior to MindMed, brief tenure at and termination from MindMed, and subsequent professional activities"; "MindMed's research and development pipeline, including 18-MC/MM-110 and MM-120"; and "MindMed's executive compensation practices."  FAC ¶ 77.

### F.    MindMed's Patently Irrelevant and Prejudicial Allegations

MindMed barely bothers to obscure its purpose for bringing this action, as the FAC is replete with irrelevant personal attacks on Dr. Freeman, including allegations with respect to a book he wrote, a side business, and a business transaction involving a separate company that MindMed's former CEO, Stephen Hurst, discussed with a notorious fraudster.  *See*, *e.g.*, FAC ¶¶ 44, 61.  MindMed includes these impertinent allegations for no other reason than to attempt to

embarrass Dr. Freeman and improperly prejudice Defendants.  In reality, MindMed is employing

the courts to silence Freeman and FCM so MindMed's misconduct continues to be obscured.

<div align="center">**ARGUMENT**</div>

## I.   LEGAL STANDARD

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of

the Federal Rules of Civil Procedure when a court lacks the statutory or constitutional power to

adjudicate it.  *See* Fed. R. Civ. P. 12(b)(1).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, "a complaint must contain sufficient factual matter . . . to state a claim [] that is

plausible on its face."  *Off. Sol. Grp.*, *LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d

405, 412 (S.D.N.Y. 2021).  While the Court "must accept as true all of the allegations contained

in a complaint," this "tenet . . . is inapplicable to legal conclusions," and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court may consider documents that are integral

to the allegations.  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 596

(S.D.N.Y. 2015).

Moreover, where, as here, a § 14(a) claim sounds in fraud, the heightened pleading

requirements of Rule 9(b) of the Federal Rules of Civil Procedure also apply.  *Police & Fire Ret.*

*Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 226, 238 (S.D.N.Y. 2009).

## II.   MINDMED FAILS TO STATE A CLAIM UNDER § 14(a) AND RULE 14A-9 BECAUSE IT CANNOT PLEAD TRANSACTION CAUSATION

The FAC must be dismissed because it fails to surmount the first (and most basic) hurdle

for a claim under § 14(a) and Rule 14a-9:  causation.  Causation has a specific meaning in this

context under § 14(a) and Rule 14a-9.  To state a claim under § 14(a), MindMed must allege

<div align="center">9</div>

that: "(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *In re Columbia Pipeline*, *Inc.*, 405 F. Supp. 3d 494, 506 (S.D.N.Y. 2019). "The causation requirement under federal securities laws is two-pronged:  a plaintiff must allege both transaction causation, *i.e.*, that *but for* the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss causation, *i.e.*, that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Rubenstein on Behalf of Jefferies Fin. Grp. Inc. v. Adamany*, No. 22-2794, 2023 WL 6119810, at *2 (2d Cir. Sept. 19, 2023) (affirming dismissal of § 14(a) claim) (emphasis in original).

Relying on the Supreme Court's decision in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), courts interpreting the causation requirement under § 14(a) and Rule 14a-9 have held that the "'transaction causation' requirement is satisfied if the plaintiff demonstrates that 'the proxy solicitation itself . . . **was an essential link in the accomplishment of the transaction**.'" *United Paperworkers Int'l Union v. Int'l Paper Co.*, 801 F. Supp. 1134, 1144 (S.D.N.Y. 1992) (quoting *Mills*, 396 U.S. at 385) (emphasis added); *see also Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650, 654 (2d Cir. 1979) (concluding "transaction causation requirement" satisfied where "the challenged transaction is the election of the directors[ ] and [there is] no doubt that the proxy solicitation itself . . . was an essential link in the accomplishment of that transaction . . ."); *Police & Fire Ret. Sys. Of City of Detroit*, 645 F. Supp. 2d at 238 (explaining that actions under § 14(a) relate to successful transactions, "such as approval of a merger agreement or the election of corporate directors").

10

Here, MindMed fails to plead transaction causation because it cannot show that the proxy solicitations at issue were essential to the *accomplishment of a challenged transaction* since, as MindMed's pleadings make clear, the Nominees *lost* the proxy contest.  FAC ⁋ 8 ("The FCM Nominees lost their proxy contest, as reflected in the final certified results of the shareholder vote at MindMed's 2023 annual general meeting of shareholders"); *id.* ⁋ 145.  To put it another way, having won the proxy contest, MindMed has no viable claim for a violation of § 14(a) and Rule 14a-9 as a matter of law, and the FAC must be dismissed.  *See Enzo Biochem*, *Inc. v. Harbert Discovery Fund*, *LP*, No. 20-CV-9992, 2021 WL 4443258, at *9-*10 (S.D.N.Y. Sept. 27, 2021) (transaction causation sufficiently pled where, *unlike here*, plaintiff alleged that the proxy solicitations at issue were an essential link in the accomplishment of a wrongful transaction, *i.e.*, the election of a new slate of board directors); *DCML LLC v. Danka Bus. Sys. PLC*, No. 08 CIV. 5829, 2008 WL 5069528, at *3 (S.D.N.Y. Nov. 26, 2008) (holding that "defendants [were] correct in asserting that DCML failed to allege transaction causation with regard to the liquidation transaction" where defendants argued that "DCML could not have been injured by the liquidation because it was not approved by Danka shareholders"); *Heil v. Lebow*, No. 91 CIV. 8656, 1993 WL 15032, at *3 (S.D.N.Y. Jan. 13, 1993) (holding that "[b]ecause the Proposed 1990 Restructuring was not consummated" and the "the necessary approval was not obtained," plaintiff "cannot show the fundamental requirement that the proxy solicitation caused him injury"); *cf. Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) ("[T]he appellees' re-election as directors did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses.").

### III.    MINDMED LACKS STANDING TO SUE FOR DAMAGES UNDER § 14(a) AND RULE 14A-9

Even if the Court finds that MindMed adequately pleaded transaction causation, the FAC should nonetheless be dismissed under Rule 12(b)(1) because MindMed lacks Article III standing to sue for damages under § 14(a) and Rule 14a-9.  MindMed alleges that it has a claim under § 14(a) because it purportedly expended excess funds in waging a proxy battle against Defendants due to Defendants' alleged violation of the proxy rules.  FAC ¶¶ 153-154, 163.  But MindMed lacks standing to assert its claim because it fails to point to any shareholder injury; and no ***standalone management or issuer*** injury exists under § 14(a) and Rule 14a-9.

Congress enacted § 14(a) to protect shareholders and their voting rights, not for management's benefit.  *See Borak*, 377 U.S. at 431-32 (recognizing the "broad remedial purposes" of § 14(a) and stating that "among its chief purposes is the protection of investors"); *DCML LLC*, 2008 WL 5069528, at *2 n.24 ("Section 14(a)'s emphasis on the proxy solicitation process indicates that the statute was designed to protect only those shareholders with voting rights.").  While this provision of the securities law has no private right of action, *Borak*, relying on the congressional purpose underlying the statute, recognized an implied private right action for damages under § 14(a) to protect shareholder-voters from "deceptive or inadequate disclosure in the proxy solicitation" process.  377 U.S. at 431.  Decades later, however, the Supreme Court's decision in *Virginia Bankshares*, *Inc. v. Sandberg* narrowed implied rights under § 14(a), holding that minority shareholders, whose votes were not necessary for the authorization of the corporate action under the proxy solicitation in question, lacked standing to bring a lawsuit under § 14(a).  501 U.S. 1083 (1991).

For these reasons, certain courts have found that issuers lack standing *altogether* to assert a private claim.  *See*, *e.g.*, *Diceon Elecs.*, *Inc. v. Calvary Partners*, *L.P.*, 772 F. Supp. 859, 867-

69 (D. Del. 1991) (noting "that the Supreme Court has warned lower courts not to interpret *Borak* too broadly" and holding that issuers do not have standing under § 14(a) because these suits are "limited to suits brought by shareholders"); *Ashford Hosp. Prime Inc.* v. *Sessa Cap. (Master) LP*, No. 3:16-CV-00527-N, 2017 WL 2955366, at *9 (N.D. Tex. Feb. 17, 2017) (holding that issuer did not have standing to seek injunctive relief or damages because "the [c]ourt views section 14(a) as protecting those with voting rights"). Under this line of cases, of course, MindMed would lack standing.

While courts in the Second Circuit have held that an issuer has standing to assert a § 14(a) claim for damages, they have only done so where, unlike here, there has *been an injury to a shareholder* through the accomplishment of a wrongful transaction. *See*, *e.g.*, *Enzo Biochem, Inc.*, 2021 WL 4443258, at *9-*10 (issuer standing found where unlawful corporation transaction was the election of a new slate of directors based on alleged misleading proxy materials). No court in this Circuit has found that an issuer has *standalone* standing (*i.e.*, harm solely to the issuer without an injury to a shareholder) to pursue a § 14(a) claim for damages.

Nevertheless, MindMed brings this action not to recover harm caused to any of its shareholders. Rather, it is suing to recover its *own* discretionary expenditures on proxy activities. FAC ¶¶ 10, 153-154, 163. In so doing, MindMed asks this Court to make new law by finding that an issuer or management has standing under § 14(a) to bring a claim to redress an injury *solely* to the issuer. The Court should decline this invitation because "Section 14(a) of the Securities Exchange Act of 1934 aims to protect shareholders," not management. *Cohen v. LyondellBasell Indus. N.V.*, No. 19-CV-2622, 2020 WL 5097773, at *2 (E.D.N.Y. June 23, 2020); *Borak*, 377 U.S. at 431-32. Permitting MindMed to attack its own shareholders for questioning, for example, the compensation earned by its Board of Directors, would turn the

13

statute on its head and dissuade shareholders from exercising their fundamental rights to engage in proxy campaigns.[4]

As stated above, under § 14(a) there is no redressable financial injury unless there is an injury to a shareholder via a completed, unlawful transaction—and here there is none because the Nominees lost their proxy battle. FAC ¶¶ 8, 145. Thus, the remedies sought in the FAC—money damages associated with management's proxy related expenditures—would not redress any shareholder injury because there was no financially detrimental transaction. As such, MindMed lacks standing to assert its § 14(a) claim for damages.

## IV. MINDMED FAILS TO PLEAD ITS FRAUD BASED § 14(a) AND RULE 14A-9 CLAIM WITH PARTICULARITY UNDER FED. R. CIV. P. 9(B)

The FAC should be dismissed for yet another reason: it fails to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standard because the FAC is based on group pleading. A § 14(a) claim alleging that false proxy solicitations were promulgated to seize control of the board, as the FAC does here, sounds in fraud and is subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard. FAC ¶ 7; *Enzo Biochem, Inc.*, 2021 WL 4443258, at *8-*9. To plead fraud under Fed. R. Civ. P. 9(b), MindMed must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Courts "are especially vigilant in applying Rule 9(b) where a complaint is made against multiple defendants." *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, No. 97 CIV. 3802, 1998 WL

---

[4]     Participating in a proxy campaign is perhaps one of the most fundamental rights of equity ownership. *See*, *e.g.*, *Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC*, No. 21CV382, 2022 WL 956119, at *15 (S.D.N.Y. Mar. 30, 2022) ("Of course, the ownership of Company shares would have afforded Defendants the right to take a position in the proxy contest."); *Pell v. Kill*, 135 A.3d 764, 794 (Del. Ch. 2016) ("Shareholder voting rights are sacrosanct.").

205338, at *4 (S.D.N.Y. Apr. 28, 1998).  To this end, "[e]ach defendant is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which it individually stands charged."  *Id.*  Thus, "a complaint may not rely upon blanket references to the acts of all of the defendants without identifying the nature of each defendant's participation in the fraud."  *Id.*

MindMed impermissibly lumps together all the Defendants without separately setting forth which Defendant made each statement.  *See*, *e.g.*, FAC ⁋ 77 (alleging that "Defendants' proxy solicitations materials were replete with materially false and/or misleading statements"); *see also id.* 79-144, 158-166.  However, "the particularity requirements imposed on securities fraud pleadings by Rule 9(b)" cannot be satisfied by the "group-pleading/group-published documents doctrine."  *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 640-41 (S.D.N.Y. 2017).  Instead, "a securities fraud plaintiff must allege facts showing, either directly or circumstantially, that the individual defendants named in the complaint possessed ultimate authority over the statements at issue."  *Id.* at 641.  That "burden may be satisfied most easily by allegations that a given statement was attributed to a particular defendant."  *Id.*  Nowhere in the FAC does it attribute specific statements to the individual Defendants (or explain their authority to make such statements), nor does it explain how the individual Defendants contributed to the alleged misstatements.

Compounding the FAC's group pleading deficiency is the FAC's confusing claim that apparently only FCM made the statements at issue.  FAC ⁋ 75 (alleging the "Complaint specifically *addresses only the statements in FCM's proxy solicitation materials* that plainly violated Section 14(a).") (emphasis added).  The FAC also refers to public statements made by non-party Freeman Capital Management LLC.  *Id.* ⁋ 101.  Yet, it seeks to hold all individual Defendants liable for statements in "FCM's proxy solicitation" materials.  The individual

Defendants, FCM, and non-party Freeman Capital Management LLC are not the same.  The

FAC does not explain which statements should be attributed to FCM or the individual

Defendants.  The fraud allegations are thus ambiguous as to the identity of the speaker.  *Frei v.*

*Taro Pharm. U.S.A., Inc.*, 844 F. App'x 444, 447 (2d Cir. 2021) (affirming dismissal of fraud

allegations where the complaint was not specific as to individual misconduct or contribution but

refers to defendants generally).  Because MindMed's allegations, which sound in fraud, are

ambiguous and not pleaded with particularity, the FAC must be dismissed.

## V.    MINDMED IS NOT ENTITLED TO EQUITABLE RELIEF

As established *supra* Section II, MindMed is incapable of pleading transaction causation

as a matter of law, which dooms its entire claim.  But even putting that issue to the side,

MindMed still cannot establish that it is entitled to the extraordinary relief that it seeks.

MindMed asks for three forms of equitable relief:  (i) a permanent injunction "enjoining

Defendants from any future violations of" § 14(a); (ii) an order requiring Defendants to "issue

public disclosures correcting their materially false and misleading proxy solicitations and other

statements made in violation of" § 14(a) (*i.e.*, a mandatory injunction dictating speech); and (iii)

a declaration that Defendants violated § 14(a).

The party "requesting permanent injunctive relief must demonstrate (1) irreparable harm

[] and (2) actual success on the merits." *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2011);

*see also Amoco Prod. Co. v. Vill. of Gambell, AK,* 480 U.S. 531, 546 n.12 (1987) ("The standard

for a preliminary injunction is essentially the same as for a permanent injunction with the

exception that the plaintiff must show a likelihood of success on the merits rather than actual

success.").  "[I]n order for an injunction to be 'permanent' an even greater showing is

necessary." *Bobrowsky v. Curran*, 333 F. Supp. 2d 159, 162 (S.D.N.Y. 2004).  Moreover, "[a]ny

prior restraint on expression comes to [the] Court with a heavy presumption against its constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (vacating injunction as prior restraint on free speech).

MindMed's request for a permanent injunction and an order for corrective disclosures fail because MindMed has not and cannot show that extreme or irreparable damage will result to *shareholders* (not MindMed) in the absence of an injunction, especially in an action under the Exchange Act. *See Salomon Bros. Mun. Partners Fund, Inc. v. Thornton*, 410 F. Supp. 2d 330, 332 (S.D.N.Y. 2006). Indeed, "[i]t is well-settled that a violation of the Exchange Act, standing alone, does not constitute irreparable harm." *Id.*; *Plant Indus., Inc. v. Bregman*, 490 F. Supp. 265, 271 (S.D.N.Y. 1980) (denying injunction and holding that "[t]o allow an election to proceed in the face of allegations of improper solicitations and misleading proxy materials does not in and of itself work an irreparable injury on the party challenging the materials."); *cf. Vaughn v. Consumer Home Mortg., Inc.*, 293 F. Supp. 2d 206, 214 (E.D.N.Y. 2003) (granting motion to dismiss on permanent injunction where "[a]t most, the harm [was] speculative."). Nor can MindMed show what harm an order for corrective disclosures (or a declaration that Defendants violated § 14(a), for that matter) would redress given that the proxy campaign has concluded and is *final*. In other words, the requested relief is moot as "the relief sought is no longer needed." *Ramos v. New York City Dep 't of Educ.*, 447 F. Supp. 3d 153, 158 (S.D.N.Y. 2020).

MindMed's request for a permanent injunction should independently be dismissed because its claims about what the individual Defendants might do following the loss of the proxy contest are purely speculative and unripe. *See Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) ("[W]hen resolution of an issue turns on whether there are nebulous future events so

contingent in nature that there is no certainty they will ever occur, the case is not ripe for adjudication.").

MindMed also cannot show "actual success on the merits" because, as already established *supra* Section III, there has *been no injury to a shareholder* through the accomplishment of a wrongful transaction (and there is no imminent challenged transaction). *See Bobrowsky*, 333 F. Supp. 2d at 162 (holding that "even if this Court takes all of the Plaintiffs' allegations as true, and draws all reasonable inference in their favor, the Plaintiffs cannot meet the standard for a mandatory permanent injunction because they have not shown 'actual success on the merits.'").  For the same reason, MindMed is not entitled to a declaration that Defendants violated § 14(a) for this additional ground.[5]

Therefore, as MindMed does not have Article III standing to pursue monetary damages (*supra* Section III) or standing to pursue equitable relief against the Defendants, the FAC should be dismissed with prejudice.

---

[5]    To the extent that MindMed would claim that its request for an award of attorneys' fees is sufficient to confer standing, such an argument would fail as a matter of law.

## <u>CONCLUSION</u>

The Court should grant Defendants' Motion to Dismiss the FAC in its entirety with

prejudice for the reasons stated herein.

<div style="display:flex; justify-content:space-between;">

Dated: New York, New York
      December 1, 2023

</div>

GLENN AGRE BERGMAN & FUENTES LLP

By:   */s/ L. Reid Skibell*
    L. Reid Skibell
    George L. Santiago
    Jason Rotstein

1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
T: 212-970-1600
rskibell@glennagre.com
gsantiago@glennagre.com
jrotstein@glennagre.com
*Attorneys for Defendants*