**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
                                 :

MIND MEDICINE (MINDMED) INC.,       :
                                 :

              Plaintiff,        :
                                 :

              v.            :     Case No. 1:23-CV-07875 (DLC)
                                 :

SCOTT FREEMAN, JAKE FREEMAN,     :
CHAD BOULANGER, FARZIN           :
FARZANEH, VIVEK JAIN, ALEXANDER :
WODKA, and FCM MM HOLDINGS, LLC, :
                                 :

             Defendants.     :
                                 :
-------------------------------------------------------- X

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## <u>MOTION TO TRANSFER OR, IN THE ALTERNATIVE, STAY THIS ACTION</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................1

I.      BACKGROUND ..........................................................................................2

      A.     The Parties ..............................................................................................2

      B.     The Instant Action......................................................................................4

      C.     The Nevada Action ...................................................................................7

II.     ARGUMENT ..............................................................................................9

      A.     THIS CASE SHOULD REMAIN IN THIS DISTRICT. ......................................9

             1.     The Separation Agreement Does Not Require Transfer to the District of Nevada. ..........................................................................................10

                  a.     Defendants' effort to invoke the Separation Agreement is improper because Dr. Freeman is simultaneously pursuing an argument that the entire Separation Agreement is void........................................10

                  b.     This Action falls outside the scope of the Separation Agreement's narrow forum selection clause. ....................................................11

             2.     MindMed's Choice of Forum Should Not Be Disturbed..........................18

                    a.     Venue is proper in this District. ....................................................18

                    b.     MindMed's choice of forum was reasonable and legitimate. .........19

                    c.     Defendants have failed to show by clear and convincing evidence that the convenience of parties and witnesses warrants transfer....20

                  d.     Defendants have failed to show by clear and convincing evidence that the interest of justice warrants transfer. ..................................23

      B.     THIS CASE SHOULD NOT BE STAYED PENDING THE RESOLUTION OF THE NEVADA ACTION ..................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*,
  572 F.3d 86 (2d Cir. 2009)....................................................................................................15

*AMA Multimedia, LLC v. Sagan Ltd.*,
  807 F. App'x 677 (9th Cir. 2020) .........................................................................................17

*Apollo Theater Found., Inc. v. W. Int'l Syndication*,
  No. 1:02-CV-10037 (DLC), 2004 WL 1375557 (S.D.N.Y. June 21, 2004)
  (Cote, J.)...............................................................................................................................11

*Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*,
  No. 1:14-CV-07134 (VM), 2015 WL 4940126 (S.D.N.Y. Aug. 10, 2015)............................15

*Avalon Holdings Corp. v. Gentile*,
  No. 1:18-CV-07291 (VSB), 2019 WL 4640206 (S.D.N.Y. Sept. 24, 2019) ..........................19

*In re Bloom Bus. Jets, LLC*,
  522 S.W.3d 764 (Tex. App. 2017) .........................................................................................13

*Brown v. Kinross Gold U.S.A., Inc.*,
  531 F. Supp. 2d 1234 (D. Nev. 2008) ....................................................................................17

*Capstone Asset Mgmt. Co. v. Dearborn Cap. Grp. LLC*,
  No. 1:21-CV-00977 (DLC), 2021 WL 4250087 (S.D.N.Y. Sept. 17, 2021)..........................16

*Car-Freshner Corp. v. Meta Platforms, Inc.*,
  No. 5:22-CV-01305 (MAD/ML), 2023 WL 7325109 (N.D.N.Y. Nov. 7, 2023)....................10

*Chanel, Inc. v. Shiver & Duke LLC*,
  No. 1:21-CV-01277 (MKV), 2022 WL 3868113 (S.D.N.Y. Aug. 30, 2022)....................22, 23

*Chen v. Centro Elec. Grp. Ltd.*,
  No. 1:22-CV-07760, 2023 WL 2752200 (S.D.N.Y. Mar. 31, 2023).......................................11

*Creative Surfaces, Inc. v. Swonger*,
  No. 2:17-CV-02494, 2018 WL 4279225 (D. Nev. June 19, 2018).........................................13

*Crede CG III, Ltd. v. 22nd Century Grp., Inc.*,
  No. 1:16-CV-03103 (KPF), 2017 WL 280818 (S.D.N.Y. Jan. 20, 2017) ..............................18

*D.H. Blair & Co., Inc. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006)......................................................................................................9

*Diamond Resorts Int'l, Inc. v. Reed Hein & Assocs., LLC*,
  No. 2:2017-CV-03007, 2021 WL 2017294 (D. Nev. Mar. 1, 2021) ......................................20

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
  No. 1:20-CV-09992 (PAC), 2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) ..........................24

*ESC-Toy Ltd. v. Sony Interactive Ent. LLC*,
  No. 2:20-CV-00726, 2021 WL 308826 (D. Nev. Jan. 28, 2021)...........................................12

*Follmer v. Mutaguchi*,
  No. 5:19-CV-01824 (FLA), 2023 WL 4317187 (C.D. Cal. May 12, 2023)...........................11

*Gen. Elec. Co. v. Lighting Sci. Grp. Corp.*,
  No. 1:2019-CV-5365 (DLC), 2019 WL 3451128 (S.D.N.Y. July 31, 2019)
  (Cote, J.).................................................................................................................12, 14

*GOJO Indus., Inc. v. Innovative Biodefense, Inc.*,
  407 F. Supp. 3d 356 (S.D.N.Y. 2019).................................................................................25

*Harper v. Nev. Prop. 1, LLC*,
  552 F. Supp. 3d 1033 (D. Nev. 2021) .................................................................................23

*Hubbell-Petang v. Hotel Rsrv. Serv., Inc.*,
  No. 1:20-CV-10988 (GBD), 2022 WL 602900 (S.D.N.Y. Mar. 1, 2022).......................21, 23

*ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*,
  565 B.R. 241 (S.D.N.Y. 2017).............................................................................................10

*In re J.D. Edwards World Sols. Co.*,
  87 S.W.3d 546 (Tex. 2002)..................................................................................................13

*Manhattan Hosiery Co., Inc. v. Metro-Goldwyn-Mayer Stud. Inc.*,
  No. 1:22-CV-00652 (DLC), 2022 WL 17584024 (S.D.N.Y. Dec. 12, 2022)
  (Cote, J.)..............................................................................................................................9

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014)................................................................................................12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*,
  136 S. Ct. 1562 (2016)........................................................................................................19

*Morgan v. Bash*,
  No. 2:19-CV-00546, 2021 WL 601871 (D. Nev. Feb. 16, 2021).....................................13, 15

*Nat'l Hockey League v. Hockey Cup LLC*,
  No. 1:18-CV-06597 (DLC), 2019 WL 130576 (S.D.N.Y. Jan. 8, 2019)
  (Cote, J.)..............................................................................................................................9

*Nken v. Holder*,
   556 U.S. 418 (2009)...................................................................................................25

*Saccoccio v. Relin, Goldstein & Crane, LLP*,
   No. 1:06-CV-14351 (DLC), 2007 WL 1334970 (S.D.N.Y. May 7, 2007)
   (Cote, J.)........................................................................................................9, 20

*Tarzy v. Dwyer*,
   No. 1:18-CV- 01456 (JFK), 2019 WL 132280 (S.D.N.Y. Jan. 8, 2019)................................22

*Tuxedo Int'l Inc. v. Rosenberg*,
   251 P.3d 690 (Nev. 2011) ..................................................................12, 14, 15, 16

*USA Techs., Inc. v. Tirpak*,
   No. 2:12-CV-02399, 2012 WL 1889157 (E.D. Pa. May 24, 2012)........................................23

*Vanguard Clinic, LLC v. Nat'l Billing Inst., LLC*,
   No. 2:20-CV-11234, 2022 WL 17348189 (C.D. Cal. Oct. 11, 2022), appeal
   dismissed, No. 22-56218, 2023 WL 2733464 (9th Cir. Feb. 17, 2023) ...........................13, 16

*WCN/GAN Partners, Ltd. v. Keys*,
   No. 2:08-CV-00082, 2009 WL 10669008 (D. Wyo. Mar. 9, 2009) ........................................13

*Zagami v. Cellceutix Corp.*,
   No. 1:15-CV-07194 (KPF), 2016 WL 3199531 (S.D.N.Y. June 8, 2016) ..............................19

**Statutes**

15 U.S.C. § 78aa(a)..............................................................................................18

15 U.S.C. § 78n(a) ...............................................................................................15

28 U.S.C. § 1404(a) ...............................................................................................9

Securities Exchange Act of 1934 Section 14(a) ................................................. *passim*

**Other Authorities**

17 C.F.R. § 240.14a–9 ............................................................................................15

Lex Machina Data Team, Lex Machina Securities Litigation Report 11 (2023) ...................18, 20

## INTRODUCTION

It is evident that Defendants[1] do not want to litigate this federal securities case in the Southern District of New York.  In their scramble to exit this District, Defendants have staked out contradictory positions, asserted questionable legal arguments, and disregarded basic geography.  Indeed, the seven Defendants' Motion to Transfer, ECF No. 31-1 (the "Transfer Motion"), deploys the same strategy that two of them have been utilizing for months in a different case in Nevada: confuse, distract, and delay.

The Transfer Motion inundates the Court with irrelevant facts and specious legal theories that have no relevance to the issues to be decided in this case, while blatantly contradicting the positions Dr. Scott Freeman and his alter ego FCM have taken in Nevada.  To *this* Court, Dr. Freeman now contends that there is "no dispute" the Separation Agreement is valid and enforceable.  But in *Nevada*, Dr. Freeman is *currently* arguing that the Separation Agreement is void for lack of consideration and because it was fraudulently induced.  To *this* Court, FCM contends that both the Separation Agreement and the convenience of the parties require transfer to the District of Nevada.  But in *Nevada*, FCM has disclaimed any connection to not only the Separation Agreement, but also the entire state of Nevada.

Defendants' clear objective is to avoid adjudication of the single cause of action asserted in this case:  a claim to hold Defendants accountable for their dissemination of materially false and misleading proxy solicitations in violation of Section 14(a) of the Securities Exchange Act of 1934 ("Section 14(a)").  But Defendants' arguments for transfer are unavailing.  A forum selection clause limited to contract claims in an agreement signed by one Defendant does not extend to a

---

[1] As used herein, "Defendants" refers to Scott Freeman, Jake Freeman, Chad Boulanger, Farzin Farzaneh, Vivek Jain, Alexander Wodka, and FCM MM Holdings, LLC ("FCM").

1

statutory securities claim asserted against seven Defendants.  A Nevada state statute has no bearing on whether Defendants' false and misleading proxy solicitations violated the federal securities laws.  And despite Defendants' protestations to the contrary, New York is, in fact, closer to the United Kingdom, New Jersey, Illinois, and Tennessee than Nevada.

Accordingly, for the reasons discussed below, Mind Medicine (MindMed) Inc. ("MindMed" or the "Company") respectfully requests that the Court deny the Transfer Motion.

## I.    BACKGROUND

### A.    The Parties

***MindMed.***  MindMed is a clinical stage biopharmaceutical company developing product candidates for the treatment of brain health disorders.  First Amended Complaint, ECF No. 27 ("FAC") ¶ 2.  The majority of MindMed's employees work remotely.  Declaration of Robert Barrow ("Barrow Decl.") ¶ 3.  MindMed leases several office spaces for use by its executives, however, with its principal executive office located in New York City.  *Id*. ¶ 4; *see also* FAC ¶ 14. That office is used by the Company's executives who reside in the New York City metropolitan area, including MindMed's Chief Financial Officer, Chief Medical Officer, and Vice President of Investor Relations, as well as executives visiting New York City.  Barrow Decl. ¶¶ 4, 10; *see also* FAC ¶ 14.  MindMed's Chief Legal Officer resides in southern New Jersey.  Barrow Decl. ¶ 5. None of MindMed's executives or directors reside in Nevada, and MindMed leases no office spaces in that state.[2]  *Id*. ¶ 6.

Between April 27, 2021 and September 20, 2023, shares of MindMed traded on the Nasdaq

---

[2] MindMed's Chief Executive Officer and Board member, Robert Barrow, resides in Madison, Wisconsin but travels frequently to New York for business.  Barrow Decl. ¶ 9.  The individuals apart from Mr. Barrow who serve on MindMed's Board reside in New Hampshire, Massachusetts, Germany, North Carolina, and California.  *See id*. ¶ 7.

Capital Market, an exchange located in this District. FAC ¶ 13. Since September 21, 2023, MindMed's shares have traded on the Nasdaq Global Select Market, which is also located in this District. *Id*. A significant number of MindMed's institutional and retail shareholders are located in New York. Barrow Decl. ¶ 8.

*Scott Freeman.* Dr. Freeman served as MindMed's President and Chief Medical Officer from September 2019 through August 2020, when he was removed from those positions. FAC ¶¶ 3, 15. At the time of his removal from the Company, Dr. Freeman worked from and resided in Las Vegas, Nevada. *See* Declaration of Reid Skibell, ECF No. 31-2 ("Skibell Decl."), Ex. A at 1. However, Dr. Freeman left Nevada in 2021 and now resides in the U.S. Virgin Islands. *See* Declaration of Scott Freeman, ECF No. 31-11 ("Freeman Decl."), ¶ 3; FAC Ex. B at 19. Dr. Freeman has submitted a declaration in support of the Transfer Motion stating that he "spend[s] part of the year at the personal residence [he] maintain[s] in Las Vegas, Nevada." Freeman Decl. ¶ 3. Dr. Freeman's declaration does not state how much time he spends in Nevada, on average, in a particular year. *See id*. As discussed in § I.C *infra*, a Nevada property registered to Dr. Freeman appeared to be vacant when a process server attempted to serve him at that address in August 2023.

*Jake Freeman.* Jake Freeman is Dr. Freeman's 21-year-old nephew. Jake Freeman resides in New Jersey, where he is a graduate student at Princeton University. FAC ¶¶ 4, 16; *see also* Declaration of Kaitland Kennelly ("Kennelly Decl.") Ex. D.[3]

*FCM.* FCM is a limited liability company formed by Dr. Freeman and Jake Freeman in 2022 to represent its members' interests adverse to MindMed and to engage in shareholder activism against MindMed. FAC ¶¶ 18, 65. FCM is organized under the laws of Wyoming. *Id.*

---

[3] The Transfer Motion is silent with respect to Jake Freeman's state of residence but does not dispute the FAC's allegations on that point.

¶ 18; *see also* Transfer Motion at 16.

**Chad Boulanger.**  Mr. Boulanger is a member of FCM.  FAC ¶ 17.  Mr. Boulanger resides in Tennessee.  *Id.*; *see also* Skibell Decl. Ex. C at 3.[4]

**Farzin Farzaneh.**  Mr. Farzaneh was nominated to serve on MindMed's Board in connection with the 2023 proxy contest initiated by Defendants (the "2023 Proxy Contest").  FAC ¶ 19.  Mr. Farzaneh resides in the United Kingdom.  *Id.*[5]

**Vivek Jain.**  Mr. Jain was nominated to serve on MindMed's Board in connection with the 2023 Proxy Contest.  FAC ¶ 20.  Mr. Jain resides in Saskatchewan, Canada.  *Id.*; *see also* Transfer Motion at 16.

**Alexander Wodka.**  Mr. Wodka (together with Dr. Freeman, Mr. Farzaneh, and Mr. Jain, the "FCM Nominees") was nominated to serve on MindMed's Board in connection with the 2023 Proxy Contest.  FAC ¶ 21.  Mr. Wodka resides in Illinois.  *Id.*; *see also* Transfer Motion at 16.

### B.    The Instant Action

In April 2023, Defendants commenced the 2023 Proxy Contest to seize control of the Company by electing the four FCM Nominees to MindMed's six-member Board.  FAC ¶ 70.  Defendants engaged Okapi Partners LLC ("Okapi"), a proxy solicitation service provider located in Manhattan, to assist with their proxy campaign.  *Id.* ¶ 78.  Defendants also utilized Troop, Inc. ("Troop"), a proxy advisory and shareholder activism advising service located in Brooklyn, to distribute social media posts and other proxy solicitation materials to MindMed's shareholders.  *See, e.g.*, FAC Exs. H, M; Kennelly Decl. Ex. E.  Through both Okapi and Troop, Defendants

---

[4] The Transfer Motion is silent with respect to Mr. Boulanger's state of residence but does not dispute the FAC's allegations on that point.

[5] The Transfer Motion is silent with respect to Mr. Farzaneh's country of residence but does not dispute the FAC's allegations on that point.

disseminated proxy materials to MindMed's shareholders, including shareholders located in New York, that were replete with material misstatements and omissions.  FAC ¶¶ 77, 78.

On April 20, 2023, Defendants filed a Schedule 14A Preliminary Proxy Statement soliciting shareholder votes to elect the FCM Nominees to MindMed's Board (the "Preliminary Proxy").  *Id*. ¶ 72.[6]  On May 3, 2023, Defendants filed a Schedule 14A Definitive Proxy Statement with the SEC (the "Definitive Proxy," together with the Preliminary Proxy, the "Proxies"), which was largely identical to the Preliminary Proxy.  *Id.* ¶ 73.  All seven Defendants are listed as filers of the Proxies.  *See, e.g.*, *id*. Ex. A at 2; Ex. B at 2.

Defendants filed additional proxy solicitation materials, including public letters, press releases, interviews, and social media posts, between May and June 2023.  FAC ¶ 74.  Defendants' proxy solicitation materials, including both Proxies, directed MindMed shareholders to send proxy cards, requests for Defendants' proxy materials, and inquiries regarding Defendants' proxy campaign to Okapi at its New York address.  *Id.* ¶ 78; *see also* FAC Ex. A at 13, Ex. B at 3-4, 32; Ex. C at 4-5; Ex. M at 4.  Defendants directed shareholders who wished to revoke their proxy cards to contact Okapi or MindMed's corporate secretary at One World Trade Center, Suite 8500, New York, New York 10007.  *See, e.g*., FAC Ex. C at 35.

As detailed in the FAC, Defendants' proxy solicitation materials contained numerous false and misleading statements.  *See, e.g*., FAC ¶¶ 75, 77.  By way of example, Defendants claimed that Dr. Freeman had "brought drugs to market using the accelerated approval process," when in reality he was only involved in successfully bringing one drug, Nexavar, to market.  *Id*. ¶ 90.  Defendants also exaggerated the speed at which Nexavar obtained regulatory approvals

_____

[6] According to a Non-Objecting Beneficial Owner list dated April 20, 2023, more than 3,000 MindMed shareholders provided addresses in counties located within this District at the time Defendants filed the Preliminary Proxy.  Barrow Decl. ¶ 8.

and exaggerated Dr. Freeman's role in the Nexavar trials.  *Id*. ¶ 89.  Defendants failed to disclose Dr. Freeman's overlapping and fleeting periods of employment at, and unexplained departures from, at least four companies.  *Id*. ¶ 88.  And the so-called "irrelevant personal attacks" (*see* Transfer Motion at 1) in the FAC relate directly to Defendants' misrepresentations concerning Dr. Freeman's more recent employment history, including their misleading suggestion that Dr. Freeman voluntarily left MindMed and their failure to provide any description of the consulting work Dr. Freeman has supposedly engaged in since leaving MindMed.  *See id*. ¶¶ 92-93.

Defendants lost the 2023 Proxy Contest.  *Id*. ¶ 8.  But MindMed has suffered, and continues to suffer, significant harm as a result of Defendants' campaign of misinformation.  *Id*.  The Company incurred substantial costs, exceeding $6 million, in responding to Defendants' false and misleading statements, and many MindMed shareholders continue to harbor false and negative impressions of the Company as a result of those statements.  *Id*.  Moreover, Defendants have publicly vowed to keep "fighting" and "pressur[ing]" MindMed.  *Id*. ¶ 9.

On September 5, 2023, MindMed initiated this action by filing a complaint that asserted a claim for violation of Section 14(a) against all seven Defendants.  *See* ECF No. 1 at 35.  MindMed elected to file this securities claim in the Southern District of New York, the preeminent district for securities litigation in the country and the most convenient forum for the parties.  *See* § II.A.2.b *infra*.  On October 16, 2023, MindMed filed the FAC, the operative complaint in this action.  *See* ECF No. 27.  The FAC's amendments related to the propriety of venue in this District (*see* FAC at ¶¶ 13-14, 78) and were made in response to comments made by Defendants' counsel concerning

that issue.  *See* Kennelly Decl. Ex. A.[7]

C.      **The Nevada Action**

In connection with Dr. Freeman's removal from the Company, MindMed and Dr. Freeman executed a separation agreement on August 31, 2020 (the "Separation Agreement").  Skibell Decl. Ex. A.  MindMed and Dr. Freeman are the only parties to the Separation Agreement.  *See id*.  At the time he executed the Separation Agreement, Dr. Freeman worked from and resided in Las Vegas, Nevada.  *See id.* at 1.  Accordingly, the Separation Agreement stated that it would "be construed and enforced in accordance with the Laws of the State of Nevada as applied to contracts made and to be performed entirely within Nevada" and that "[a]ny suit involving this Agreement shall be brought in a federal or state court sitting in Nevada."  *Id.* at § 18.

The Separation Agreement includes a mutual non-disparagement provision, *id*. at § 11, and multiple provisions concerning Dr. Freeman's obligations with respect to MindMed's confidential and proprietary information, *id*. at §§ 8–10.  The Separation Agreement's non-disparagement provision contains no carve out for truthful statements.  *See id*. at § 11.

In August 2022, approximately six months before Defendants initiated the 2023 Proxy Contest, Dr. Freeman began to violate both his non-disparagement and confidentiality obligations under the Separation Agreement.  *See, e.g.*, Skibell Decl. Ex. B at ¶ 108.  Dr. Freeman engaged in this breaching conduct in his personal capacity and through his alter ego FCM.  *Id.* at ¶ 75.

---

[7] An incomplete version of this email exchange was attached as Exhibit E to the Declaration of Reid Skibell.  As reflected in the complete exchange, after Defendants' counsel raised the issue, MindMed filed the FAC in part to correct an inadvertent inconsistency between the original complaint and a declaration filed by MindMed's Chief Legal Officer, Mark Sullivan, in an unrelated litigation.  (The original complaint described New York as the location of MindMed's principal "place of business," whereas Mr. Sullivan's declaration described New York as the location of MindMed's principal "executive office."  The FAC provides the additional detail regarding this point noted above.)  *See* Kennelly Decl. Ex. A; Skibell Decl. Ex. D; FAC ¶ 14.

Through press releases, public letters, and juvenile social media posts, Dr. Freeman and FCM hurled insults at MindMed and its leadership and disclosed confidential MindMed information (while hinting that Dr. Freeman had revealed a "litany" of additional non-public MindMed information to Jake Freeman). *See id.* at ¶¶ 76-91, 108-199.

On July 26, 2023, MindMed initiated an action against Dr. Freeman and FCM in Nevada state court, in accordance with the Separation Agreement's forum selection clause, for breach of contract and breach of the implied covenant of good faith and fair dealing (the "Nevada Action").[8] *See* Skibell Decl. Ex. B; *see also* FAC ¶ 63.  On August 30, 2023, FCM removed that case from state court to the District of Nevada.  *See* Skibell Decl. Ex. C.[9]

Dr. Freeman evaded service of the complaint in the Nevada Action for nearly two months, forcing MindMed to expend considerable resources in attempting to serve him.  *See* Kennelly Decl. Ex. B. at 13 ¶¶ 1-4.  As part of that effort, MindMed hired a process server in Las Vegas.[10]  *See id.* at 22.  The process server unsuccessfully attempted personal service on Dr. Freeman at his Las Vegas property on six occasions in August 2023.  *Id.*  He reported that, on each occasion, Dr. Freeman's Las Vegas property appeared to be vacant, noting that it had "almost no furniture visible inside" and "no cars [in the] driveway."  *Id.*  MindMed also hired an investigator to locate Dr. Freeman's current address by running a skip trace.  *See id.* at 17.  That investigator determined that Dr. Freeman "appears to reside [in] the Virgin Islands . . . and appears to own a property in

---

[8] Citations to "Nevada Action ECF No. ___" are to the docket in *MindMed v. Freeman*, No. 2:23-CV-1354 (D. Nev.).  In the interest of efficiency, MindMed has not provided copies of each docket entry referenced herein but will do so at the Court's direction.

[9] Despite removing the Nevada Action to federal court, both FCM and Dr. Freeman have urged that court to disregard the Federal Rules of Civil Procedure and stay discovery in that case pursuant to Nevada *state* procedure.  *See* Nevada Action ECF No. 64, 92.

[10] MindMed also hired process servers in the U.S. Virgin Islands and New Jersey to attempt service on Dr. Freeman.  *See id.* at 19, 25.

Las Vegas, Nevada as an absentee owner." *Id*.  Ultimately, MindMed was forced to file a motion requesting permission to effect service via email on Dr. Freeman, which the Nevada court granted. *See id.*; *see also* Nevada Action ECF No. 28.

## II.   ARGUMENT

### A.   THIS CASE SHOULD REMAIN IN THIS DISTRICT.

Under 28 U.S.C. § 1404(a)'s "two-step inquiry," the fact that an action *could* have been brought in Defendants' preferred District does not require transfer to that District.  *See Manhattan Hosiery Co., Inc. v. Metro-Goldwyn-Mayer Stud. Inc*., No. 1:22-CV-00652 (DLC), 2022 WL 17584024, at *2 (S.D.N.Y. Dec. 12, 2022) (Cote, J.).  Rather, in determining whether transfer is warranted, the court must consider the "convenience of parties and witnesses" and the "interest of justice."  *Saccoccio v. Relin, Goldstein & Crane, LLP*, No. 1:06-CV-14351 (DLC), 2007 WL 1334970, at *1 (S.D.N.Y. May 7, 2007) (Cote, J.).  In making this determination, the court should take into account the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Id*.  The first factor, the plaintiff's choice of forum, is "given great weight."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006).  Thus, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Nat'l Hockey League v. Hockey Cup LLC*, No. 1:18-CV-06597 (DLC), 2019 WL 130576, at *4 (S.D.N.Y. Jan. 8, 2019) (Cote, J.).

Further, on a motion to transfer, "the movant bears the burden of establishing, by clear and convincing evidence, that transfer is warranted."  *Manhattan Hosiery*, 2022 WL 17584024, at *2.

Only when the non-movant is bound by a valid and enforceable forum selection clause that extends to the claims and parties at issue will the standard § 1404(a) analysis be adjusted, and the burden will shift to the non-movant to establish that transfer is not warranted.  *See ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 251 (S.D.N.Y. 2017); *Car-Freshner Corp. v. Meta Platforms, Inc.*, No. 5:22-CV-01305 (MAD/ML), 2023 WL 7325109, at *17 (N.D.N.Y. Nov. 7, 2023).

Here, the Separation Agreement's forum selection clause plainly does not extend to MindMed's Section 14(a) claim against Defendants.  Moreover, Defendants have failed to meet their burden of showing that either the convenience of parties and witnesses or the interest of justice warrant transfer to the District of Nevada, a jurisdiction to which MindMed has no connection and where no Defendant resides full time.

       1.      **The Separation Agreement Does Not Require Transfer to the District of Nevada.**

            a.      **Defendants' effort to invoke the Separation Agreement is improper because Dr. Freeman is simultaneously pursuing an argument that the entire Separation Agreement is void.**

Defendants argue that "[t]here can be no dispute that [the Separation Agreement's] forum clause is valid and enforceable."  Transfer Motion at 10.  Yet in the Nevada Action, Dr. Freeman is vigorously disputing the validity of the entire Separation Agreement.  In a motion filed just weeks before the Transfer Motion—and relied upon by Defendants in connection with the Transfer Motion—Dr. Freeman has urged the Nevada court to find that the *entire* Separation Agreement is "unenforceable" because it is "void for lack of consideration and voidable because it was induced by fraud."  Skibell Decl. Ex. G at 29; *see also id.* at 35–36.

MindMed strongly disagrees with the position taken by Dr. Freeman in the Nevada Action. However, if the Separation Agreement is void, as Dr. Freeman contends, its forum selection clause

is also void.  *See Chen v. Centro Elec. Grp. Ltd.*, No. 1:22-CV-07760 (VEC), 2023 WL 2752200, at *3 (S.D.N.Y. Mar. 31, 2023); *see also Follmer v. Mutaguchi*, No. 5:19-CV-01824 (FLA), 2023 WL 4317187, at *2 (C.D. Cal. May 12, 2023) ("As Defendant contends and has presented evidence in support of his contention that the agreements containing the forum selection clauses are unenforceable, as illegal sham agreements, Defendant cannot also argue that the forum selection clauses within these agreements are valid and enforceable.").  Defendants make no effort to reconcile these opposing arguments, choosing instead to "play fast and loose with the courts" according to the exigencies of the moment.  *Cf. Apollo Theater Found., Inc. v. W. Int'l Syndication*, No. 1:02-CV-10037 (DLC), 2004 WL 1375557, at *3 (S.D.N.Y. June 21, 2004) (Cote, J.); *see also Centro Elec. Grp. Ltd.*, 2023 WL 2752200, at *4 (a party "cannot have it both ways" with respect to the enforceability of a forum selection clause).

Indeed, if Dr. Freeman had his way, the Court would transfer this case to the District of Nevada pursuant to the Separation Agreement's forum selection clause, where it would be consolidated with the Nevada Action, only for the claims asserted in the Nevada Action to be dismissed on the grounds that the entire Separation Agreement is void and unenforceable.  *See* Transfer Motion at 2; Skibell Decl. Ex. G at 29, 35-36.  But even disregarding Dr. Freeman's self-serving and contradictory positions, for the reasons discussed *infra*, there can be no doubt that the Separation Agreement's forum selection clause has no applicability to this case.

### b.   This Action falls outside the scope of the Separation Agreement's narrow forum selection clause.

Because the Separation Agreement contains a valid choice of law provision requiring that the agreement "be construed and enforced in accordance with the Laws of the State of Nevada as applied to contracts made and to be performed entirely within Nevada," Nevada law governs the question of whether the instant action falls within the scope of the forum selection clause.  *See*

Skibell Decl. Ex. A at § 18; *Gen. Elec. Co. v. Lighting Sci. Grp. Corp.*, No. 1:2019-CV-5365 (DLC), 2019 WL 3451128, at *2 (S.D.N.Y. July 31, 2019) (Cote, J.) ("The interpretation of the scope of a forum selection clause is governed by the body of law selected in an otherwise valid choice-of-law provision"); *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014) (same).

To determine the scope of a forum selection clause, Nevada courts "first focus on 'the intention of the parties reflected in the wording of [the] particular clause[] and the facts of [the] case.'" *Tuxedo Int'l Inc. v. Rosenberg*, 251 P.3d 690, 699 (Nev. 2011). If the parties' intent cannot be discerned from the language of the relevant clause, the court must determine "whether resolution of the tort-based claims pleaded by the plaintiff relates to the interpretation of the contract." *Id*; *see also ESC-Toy Ltd. v. Sony Interactive Ent. LLC*, No. 2:20-CV-00726 (GMN-VCF), 2021 WL 308826, at *3 (D. Nev. Jan. 28, 2021) (narrow forum selection clause applies only "when the resolution of the Plaintiff's claims requires examination of the agreement containing the clause"). If the "application of this rule still does not resolve the issue," the Court must then consider "whether the plaintiff's cause of action directly concerns the formation or enforcement of the contract containing the forum selection clause" or "whether the plaintiff could have brought a parallel breach of contract claim and yet did not." *Rosenberg*, 251 P.3d at 699. Applying this analysis, it is evident that the forum selection clause does not extend to MindMed's Section 14(a) claim against Defendants.

*First*, it is evident from the wording of the Separation Agreement that its forum selection clause does not extend to this action. Section 18 states in relevant part:

> This Agreement will be deemed to have been entered into and will be construed and enforced in accordance with ***the Laws of the State of Nevada as applied to contracts*** made and to be performed entirely within Nevada. ***Any suit involving this Agreement shall be brought in a federal or state court sitting in Nevada***. The parties agree that

venue shall be proper in such courts, and that such courts will have personal jurisdiction over them.

Skibell Decl. Ex. A at § 18 (emphasis added). The forum selection clause clearly and unambiguously states that it applies only to lawsuits "involving" the Separation Agreement. And under Nevada law, when the language of a contractual term is clear and unambiguous, the term will be enforced as written. *See Morgan v. Bash*, No. 2:19-CV-00546 (JAD-BNW), 2021 WL 601871, at *2 (D. Nev. Feb. 16, 2021); *see also Creative Surfaces, Inc. v. Swonger*, No. 2:17-CV-02494 (JCM-VCF), 2018 WL 4279225, at *3 (D. Nev. June 19, 2018) (the mere fact that the parties disagree about how to interpret a contract provision does not render it ambiguous). Thus, because MindMed's Section 14(a) claim does not "involve" the Separation Agreement in any capacity, it falls outside the scope of the forum selection clause.[11]

Notably, the forum selection clause immediately follows a choice of law provision that is expressly limited to "the Laws of the State of Nevada *as applied to contracts made and to be performed entirely within Nevada*." Skibell Decl. Ex. A at § 18 (emphasis added). Based on this wording, it is clear that the parties did not intend for that choice of law provision to encompass securities claims, such as the statutory federal securities claim at issue in this case. *See Morgan*, 2021 WL 601871, at *2 (California securities claim not subject to Nevada choice of law provision that was limited to contract's "validity, construction, performance, and affect"); *Vanguard Clinic,*

---

[11] In contrast, a claim that Dr. Freeman fraudulently induced MindMed to execute the Separation Agreement, or a claim to enforce MindMed's rights under the Separation Agreement, would likely "involve" the Separation Agreement and therefore be subject to the forum selection clause. *See, e.g., In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546, 551 (Tex. 2002) (claim that contract was fraudulently induced "involv[ed]" contract); *In re Bloom Bus. Jets, LLC*, 522 S.W.3d 764, 770 (Tex. App. 2017) (statutory lien claim "involv[ed]" contract where "parties' maintenance contract [was] the purported basis for the statutory lien"); *see also WCN/GAN Partners, Ltd. v. Keys*, No. 2:08-CV-00082, 2009 WL 10669008, at *3 (D. Wyo. Mar. 9, 2009).

*LLC v. Nat'l Billing Inst., LLC*, No. 2:20-CV-11234, 2022 WL 17348189, at *5 (C.D. Cal. Oct.
11, 2022), appeal dismissed, No. 22-56218, 2023 WL 2733464 (9th Cir. Feb. 17, 2023) (under
Nevada law, choice of law provision limited to "'enforceability and interpretation'" of contracts
did "not include related, tortious conduct").

        In addition, the sequence of the Separation Agreement's Nevada contract law provision,
which begins with "This Agreement," and the forum selection clause, which repeats that term,
evidences the parties' intention that the forum selection clause also be limited to claims subject to
"the Laws of the State of Nevada as applied to contracts," *i.e.*, contract claims.[12]  *See, e.g.*,
*Rosenberg*, 251 P.3d at 699; *see also Lighting Sci. Grp.*, 2019 WL 3451128, at *1–2  (noting that
choice of law provision that immediately preceded forum selection clause began with the words
"This Agreement" and finding, "In this context, ***the forum selection clause is most naturally read
to be cabined in the same manner as the choice-of-law provision in the first sentence***: It applies
only to the extent a dispute relates to '[t]his Agreement,' and not to any and all unrelated disputes
that may arise between the parties.") (emphasis added).

        Defendants' reliance on *Roby v. Corporation of Lloyd's* is misplaced.  In that case, which
does not apply Nevada law, the forum selection clause extended to "***any dispute*** and/or controversy
***of whatsoever nature arising out of or relating to*** the [Name's] membership of, and/or
underwriting of ***insurance business*** at, Lloyd's."  996 F.2d 1353, 1359 (2d Cir. 1993) (emphasis
added).  This sweeping language is plainly distinguishable from the Separation Agreement's
narrow forum selection clause, which is limited to contract claims "involving" the agreement—
not disputes of "whatsoever nature" "arising out of or relating to" MindMed's business.  *See, e.g.*,

_____

[12] If New York law governed this analysis, the outcome would be the same because, "[u]nder New
York law, 'a fundamental objective of contract interpretation is to give effect to the expressed
intention of the parties."  *Lighting Sci. Grp.*, 2019 WL 3451128, at *2.

*Morgan*, 2021 WL 601871, at *2 (contrasting narrow choice of law provision limited to contract issues with "relationships that are wholly 'governed by' one state's law").[13]

    *Second*, even if the forum selection clause's wording did not definitively evidence the parties' intent to limit that clause to contract claims involving the Separation Agreement (which it does), Nevada law would still prohibit the application of the forum selection clause to this case. Through this action, MindMed seeks to enforce its right under Section 14(a) to obtain relief from a group of Defendants who have disseminated materially false and misleading statements about the Company in proxy solicitation materials.  *See* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a–9. MindMed's Section 14(a) claim does not require the Court to even consider, let alone interpret, the Separation Agreement, which is silent with respect to the truthfulness of proxy solicitation materials.  Accordingly, this case falls outside the scope of the forum selection clause.  *See Rosenberg*, 251 P.3d at 699; *see also Morgan*, 2021 WL 601871, at *2 ("[Plaintiff's] securities claim doesn't challenge the agreement's validity, it challenges whether the [defendants] made false statements in the process of selling a security").[14]

---

[13] Crediting Defendants' unsupported argument that the Separation Agreement, and by extension its forum selection clause, governs all of Dr. Freeman's "post-employment conduct" (*see* Transfer Motion at 10) would lead to an absurd result—if Dr. Freeman stole a computer from MindMed in New York, MindMed would be bound to bring the resulting conversion claim against Dr. Freeman in Nevada, even though the Separation Agreement is clear that Nevada tort law would not govern that claim.  *See Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, No. 1:14-CV-07134 (VM), 2015 WL 4940126, at *5 (S.D.N.Y. Aug. 10, 2015) ("[A] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties.").

[14] The result would be the same if New York law governed this analysis.  *See, e.g., Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 91 (2d Cir. 2009) (forum selection clause did not extend to claims that could "begin in court without any reference to the contract").  Here, the FAC mentions the Separation Agreement only in the context of providing the Court with factual background concerning MindMed's history with Dr. Freeman. *See* FAC ¶¶ 56-58, 62-63.  Neither the validity nor the terms of the Separation Agreement have any bearing on Defendants' liability under Section 14(a).  *See id.* at ¶¶ 158-167.

*Third*, the forum selection clause does not extend to MindMed's Section 14(a) claim because that claim concerns neither the formation nor the enforcement of the Separation Agreement. *See Rosenberg*, 251 P.3d at 699; *see also Vanguard Clinic*, 2022 WL 17348189, at *5 (under Nevada law, choice of law provision limited to "enforceability and interpretation" of contracts did not extend to claim that did not "challenge the enforceability or interpretation" of the relevant contracts or "seek their rescission").[15]

MindMed could not have asserted its Section 14(a) claim under a "parallel" breach of contract theory—and not only because the Separation Agreement imposes no obligations concerning the truthfulness of proxy solicitation materials. *See Rosenberg*, 251 P.3d at 699. While Defendants contend that the Nevada Action "is based on the same alleged 'smear campaign' and proxy dispute at issue in the New York Action" (*see* Transfer Motion at 11), this is a gross exaggeration—the statements at issue in the two cases are *not* coextensive. The FAC clearly states that the "smear campaign" at issue in the Nevada Action occurred *before* the 2023 Proxy Contest and thus does not serve as the basis for MindMed's Section 14(a) claim. *See* FAC ¶ 6 ("In the spring of 2023, ***after having waged a smear campaign*** for months through more informal channels, ***Defendants commenced a proxy contest*** designed to gain control of MindMed's six-member board of directors" (emphasis added). In addition, the FAC seeks to hold Defendants liable for numerous statements that, while false and misleading, do not constitute violations of Dr. Freeman's non-disparagement obligation (such as misrepresentations concerning Dr. Freeman's

---

[15] Defendants offer no support for their contention that a party's termination of a contract based on a counterparty's unlawful conduct renders any claim arising from that unlawful conduct subject to a related contract's forum selection clause. *See* Transfer Motion at 11. Accepting this proposal would lead to an absurd result and would run afoul of the parties' intent, as evidenced by the Separation Agreement's decidedly narrow choice of law and forum selection provisions. *Capstone Asset Mgmt. Co. v. Dearborn Cap. Grp. LLC*, No. 1:21-CV-00977 (DLC), 2021 WL 4250087, at *5 (S.D.N.Y. Sept. 17, 2021).

own professional qualifications and the parties' discussions prior to the 2023 Proxy Contest).  *See, e.g.*, FAC ¶¶ 79-103.

Further, Defendants concede that "the claims against the [Defendants apart from Dr. Freeman] are not subject to the forum selection clause," but nevertheless urge the Court to transfer the entire case pursuant to that clause.  Transfer Motion at 11.  In making this argument, Defendants rely exclusively on *Androb Jewelry Serv., Inc. v. Malca-Amit USA*.  Transfer Motion at 11.  Yet in *Androb*, which did not apply Nevada law, *all* of the defendants had agreed to the relevant forum selection clause.  *See* No. 1:16-CV-05171 (AJN), 2017 WL 4712422, at *1 (S.D.N.Y. Sept. 25, 2017) (describing forum selection clause in agreement negotiated by "Plaintiffs and Defendants").  In contrast, only *one* of *seven* Defendants in this case has executed the contract containing the forum selection clause.[16]

Indeed, in a vigorous challenge to the Nevada court's personal jurisdiction over it in the Nevada Action, FCM has contended:  "***FCM did not consent to the jurisdiction or laws of Nevada. The only tie to Nevada is Dr. Freeman's Separation Agreement.  But . . . the Separation Agreement does not apply to FCM***."  FCM Reply at 3.[17]  As of the date of this filing, FCM's motion to dismiss the Nevada Action for lack of personal jurisdiction is still pending.  No other Defendant (apart

---

[16] The Separation Agreement states that it is "intended for the benefit of the parties hereto" and explicitly prohibits "any other person" from enforcing *any* of its provisions.  Skibell Decl. Ex. A at § 18.  Defendants make no effort to square this provision with their collective effort to enforce the forum selection clause.  Even if the Separation Agreement did not include this prohibition, it would be inappropriate for all seven Defendants to enforce the forum selection clause because their conduct at issue is not "closely related to the contractual relationship" between Dr. Freeman and MindMed.  *See AMA Multimedia, LLC v. Sagan Ltd.*, 807 F. App'x 677, 679 (9th Cir. 2020).

[17] The complaint in the Nevada Action names FCM as a defendant and extends Dr. Freeman's consent to the jurisdiction of the Nevada courts to FCM on the grounds that FCM is Dr. Freeman's alter ego, such that both Dr. Freeman's contractual obligations and FCM's breaching conduct are imputed to one another.  *See* Skibell Decl. Ex. B at ¶¶ 3, 29, 75, 107; *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1241 (D. Nev. 2008).

from Dr. Freeman and his alter ego FCM) has any conceivable connection to the Separation Agreement.  Given these facts, Defendants cannot credibly contend that all seven Defendants consented to be bound by the Separation Agreement's forum selection clause prior to the initiation of this action, let alone that MindMed "defied the parties' forum-selection clause by filing in a non-chosen forum."  Transfer Motion at 12.[18]

### 2.   MindMed's Choice of Forum Should Not Be Disturbed.

#### a.   Venue is proper in this District.

In challenging MindMed's choice of forum, Defendants' assert that "the pleadings are devoid of any allegations of misconduct taking place in New York except for the location of the proxy solicitation service."  Transfer Motion at n. 7.  This is false.  The FAC clearly states that "certain of the acts and omissions constituting violations of the federal securities laws occurred within this District, *including the dissemination of material misstatements and omissions to MindMed shareholders and other individuals residing within this District*."  FAC ¶ 13 (emphasis added).

Under the Exchange Act, a civil action may be brought in any district where: (1) "any act or transaction constituting *the violation occurred*"; (2) the defendant is "found"; (3) the defendant is an "inhabitant"; or (4) the defendant "transacts business." 15 U.S.C. § 78aa(a) (emphasis added);

---

[18] Because this action falls outside the scope of the forum selection clause, the Court need not conduct a public interest analysis.  Yet even the *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.* factors weigh against transfer here, where court congestion is not an issue, Nevada has no "local interest" in this action, and this District is perhaps the most familiar of all jurisdictions with the federal securities laws.  571 U.S. 49, 63, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013); *see also* Lex Machina Data Team, Lex Machina Securities Litigation Report 11 (2023) at 11 (between 2020 and 2022, there were "over three times as many [securities] cases filed in the Southern District of New York than in the next most active district").  Extending the forum selection clause to this action in contravention of the parties' expectations, however, would violate the public interest.  *Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 1:16-CV-03103 (KPF), 2017 WL 280818, at *15 (S.D.N.Y. Jan. 20, 2017).

*see also Avalon Holdings Corp. v. Gentile*, No. 1:18-CV-07291 (VSB), 2019 WL 4640206, at *3

(S.D.N.Y. Sept. 24, 2019).  A "violation consists of a defendant's fraudulent representations," and

"[m]isrepresentations 'occur' not only in the district in which they are made, but also the district

or districts in which they are received."  *Zagami v. Cellceutix Corp.*, No. 1:15-CV-07194 (KPF),

2016 WL 3199531, at *4 (S.D.N.Y. June 8, 2016).  Thus, because Defendants disseminated their

material misstatements and omissions to shareholders and other individuals located within the

Southern District of New York, MindMed was entitled to bring this case in this District.  *See id.*

> b.  **MindMed's choice of forum was reasonable and legitimate.**

Defendants' baseless accusation that MindMed "file[d] its suit in this forum [as] a ploy to

drive up Defendants' legal fees and to shop for the most advantageous forum" is also false.  *See*

Transfer Motion at 3.  MindMed's decision to bring two sets of different claims against two sets

of differently situated Defendants in separate forums was reasonable and legitimate.  Because the

contract claims asserted against Dr. Freeman and FCM in the Nevada Action are subject to the

Separation Agreement's forum selection clause, MindMed could not have brought those claims in

this District.  *See* § II.A.1.b *supra*.  And because federal courts have exclusive subject matter

jurisdiction over Exchange Act claims, MindMed could not have brought its Section 14(a) claim

in the Nevada state court where it initiated the Nevada Action.  *See Merrill Lynch, Pierce, Fenner*

*& Smith, Inc. v. Manning*, 136 S. Ct. 1562, 1572-73 (2016).

Defendants make no effort to explain how a proposal from Defendants' New York counsel

to waive jurisdictional defenses in Nevada, made more than a month *after* this action was initiated,

demonstrates that MindMed "should have brought this action in the District of Nevada."  Transfer

Motion at 12.  And as discussed *supra* in § II.A.1.b, Defendants' contention that the Separation

Agreement's forum selection clause required this case to be filed in the District of Nevada is

entirely lacking in factual or legal support, as is the notion that all seven Defendants consented to

be bound by that forum selection clause prior to this action.  *See* Transfer Motion at 12.

Rather, MindMed was free to file this case in the forum of its choosing, and its decision to file a securities claim in the District where "the highest number of securities cases [are] filed" in the country is in no way indicative of "forum shopping."  *See* Lex Machina Securities Litigation Report at 3, 11; *Saccoccio*, 2007 WL 1334970, at *1 (in deciding motion to transfer, the court may consider "the forum's familiarity with the governing law").

Defendants' conjecture that MindMed "strategically filed this action" in New York to avoid Defendants bringing an "anti-SLAPP suit defense" under Nevada law (Transfer Motion at 3) makes no sense, as Nevada's anti-SLAPP statute does not extend to federal claims.  *See Diamond Resorts Int'l, Inc. v. Reed Hein & Assocs., LLC*, No. 2:2017-CV-03007, 2021 WL 2017294, at *2 (D. Nev. Mar. 1, 2021).  The case relied upon by Defendants, *CoreCivic, Inc. v. Candide Grp., LLC*, involved the application of California's anti-SLAPP statute to a *state law* defamation claim in a federal diversity action.  46 F.4th 1136, 1138 (9th Cir. 2022).

### c.  Defendants have failed to show by clear and convincing evidence that the convenience of parties and witnesses warrants transfer.

According to Defendants, the "convenience of the parties" supports transfer because "the individuals central to the claims in this action either reside in Nevada or reside in states where traveling to Nevada would be much more convenient than New York."  Transfer Motion at 15. But the only party with even a remote connection to Nevada is Dr. Freeman, who claims to spend "part" of the year in that state.  Freeman Decl. at ¶ 3.  Contrary to Defendants' assertion, Dr. Freeman left Nevada in 2021 and was not "resident. . . in Nevada" at any point during the 2023 Proxy Contest.  *See id*.; Transfer Motion at 17.  Regardless, any occasional presence Dr. Freeman may currently have in Nevada is insufficient to warrant transfer to that state, especially in light of the assertion by Dr. Freeman's alter ego FCM that it has no connection whatsoever to Nevada.

In its effort to dismiss the Nevada Action for lack of personal jurisdiction, FCM—which New Jersey resident Jake Freeman claims to "sole[ly] manage" (Kennelly Decl. Ex. D)—has proclaimed:

> As applied to FCM, **Nevada is a complete stranger** to this case. . . no plaintiffs or defendants are citizens of Nevada, there were no contacts in Nevada, FCM did not consent to the jurisdiction or laws of Nevada, and no companies were incorporated in Nevada. The only tie to Nevada is Dr. Freeman's Separation Agreement. But as explained herein, the Separation Agreement does not apply to FCM.

*Id*. Ex. C (emphasis added).  And while Defendants contend that it would be "more convenient and less expensive for the bulk of the remaining defendants to travel to Nevada than across the country to New York," Transfer Motion at 15, this is plainly not true.  The individual Defendants apart from Dr. Freeman reside not in Nevada, or even a state bordering Nevada, but rather in Saskatchewan, Tennessee, Illinois, New Jersey, and the United Kingdom.  *See* § I.A *supra*.  Put simply, Defendants' convenience argument flouts basic geography and is demonstrably false.  *See Hubbell-Petang v. Hotel Rsrv. Serv., Inc*., No. 1:20-CV-10988 (GBD), 2022 WL 602900, at *5 (S.D.N.Y. Mar. 1, 2022) (finding that Defendants "fail[ed] to address how NY is inconvenient for them as they are required to show" and noting "[i]n fact, one Defendant resides closer to this venue" than Defendants' requested venue).

Defendants' effort to characterize MindMed's connection to New York as "razor thin" similarly falls flat.  *See* Transfer Motion at 19.  As discussed *supra*, three of MindMed's executives with direct knowledge of the events at issue in this action reside in the New York metropolitan area, and MindMed's Chief Legal Officer, who is actively overseeing this litigation, resides in New Jersey.  *See* Barrow Decl. ¶¶ 4-5.  Indeed, taking into account all of the executives and directors at MindMed who are likely to be involved in this case, the New York region contains the highest concentration of such individuals, and only one individual (a director who lives in

California) resides in a location that is geographically closer to Nevada than New York. *See id.*[19]

The convenience of the parties therefore dictates that this case stay in this District, especially in light of Defendants' actual "razor thin" connection to Nevada. *See Tarzy v. Dwyer*, No. 1:18-CV-01456 (JFK), 2019 WL 132280, at *4 (S.D.N.Y. Jan. 8, 2019); *Chanel, Inc. v. Shiver & Duke LLC*, No. 1:21-CV-01277 (MKV), 2022 WL 3868113, at *5 (S.D.N.Y. Aug. 30, 2022).

Defendants' convenience argument fares no better when it comes to potential non-party witnesses. In their attempt to identify *anyone* with a connection to Nevada, Defendants have landed on an individual, Stephen Hurst, who is, at best, tangentially related to this case. *See* Transfer Motion at 15-16. But Mr. Hurst stepped down as MindMed's co-CEO two years before the 2023 Proxy Contest occurred, and Defendants' inclusion of statements concerning Mr. Hurst in their proxy materials does not put those statements at issue in this case. *See id.* Those statements appear nowhere in the FAC and do not serve as the basis for MindMed's Section 14(a) claim. Indeed, the FAC does not even reference the topics relating to Mr. Hurst described in the Transfer Motion. *See id.* at 16 (describing Mr. Hurst's involvement in "the Company's transactions with Ceruvia" and "potential conflicts of interests"). Rather, the FAC mentions Mr. Hurst exactly twice—in the context of describing Defendants' incomplete disclosure regarding Dr. Freeman's litigation track record. *See* FAC ¶¶ 84, 94.

Setting aside the fact that Dr. Freeman's personal vendetta against Mr. Hurst has nothing to do with Defendants' potential liability under Section 14(a), Defendants have failed to show that

---

[19] Defendants' reliance on Mark Sullivan's declaration in an unrelated litigation is misplaced. The *function* of MindMed's principal executive office (which is not a "mail drop") is irrelevant to the *residences* of the "key players" in this case. *See* Transfer Motion at 3, 16; Barrow Decl. ¶ 4. Further, the events at issue in that case pre-date the events at issue in this case, and few individuals currently affiliated with MindMed possess direct knowledge of both sets of events. *Compare* Skibell Decl. Ex. D at ¶¶ 10-16 *with* Barrow Decl. ¶ 4.

the location of a single potential witness who is unlikely to provide material testimony warrants transfer out of MindMed's chosen forum.  *See, e.g.*, *Hubbell-Petang*, 2022 WL 602900, at *4; *Chanel*, 2022 WL 3868113, at *4.  In any event, some of the most critical non-party witnesses in this case will likely be individuals affiliated with Okapi and Troop, the New York entities that advised Defendants in the 2023 Proxy Contest and disseminated their misleading proxy solicitations.[20]  The convenience of non-party witnesses thus weighs strongly against transfer.

### d.    Defendants have failed to show by clear and convincing evidence that the interest of justice warrants transfer.

To be clear, the separate cases brought by MindMed are not "overlapping lawsuits."  *See* Transfer Motion at 1.  As discussed *supra* in § II.A.1.b, this Court does not need to consider, let alone interpret or enforce, the Separation Agreement to adjudicate MindMed's Section 14(a) claim.  And because the Separation Agreement's non-disparagement provision contains no carve out for truthful statements, the Nevada court does not need to consider the truth or falsity of any statement made by Dr. Freeman to adjudicate MindMed's contract claims.  *See* Skibell Decl. Ex. A at § 11; *see also Harper v. Nev. Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1050 n.20 (D. Nev. 2021); *USA Techs., Inc. v. Tirpak*, No. 2:12-CV-02399, 2012 WL 1889157, at *3 (E.D. Pa. May 24, 2012). Further, contrary to Defendants' assertions, the two actions implicate different time periods, and the statements at issue in the two cases are not coextensive.  *See* § II.A.1.b *supra*.

In an effort to muddy the issues in the two cases, Defendants raise factual and legal arguments that have no bearing on MindMed's Section 14(a) claim.  This strategy is a continuation of a pattern established by Dr. Freeman and FCM in the Nevada Action.  Thus far, Dr. Freeman and FCM have filed four dispositive motions, a motion to stay discovery, three "joinder" motions,

---

[20] These entities are also likely to possess documents relevant to this action, including draft versions of Defendants' proxy materials and Defendants' directions with respect to those materials.

and a motion consolidate the Nevada Action with Dr. Freeman's unrelated litigation against Mr. Hurst.[21]   *See* Nevada Action ECF Nos. 16, 50, 67-68, 75, 86, 88, 92.   Among the dubious arguments asserted in Dr. Freeman and FCM's cascade of briefs is the contention that MindMed's contract claims violate Nevada's prohibition on strategic lawsuits against public participation ("SLAPP")—notwithstanding the fact that Dr. Freeman executed a valid agreement (as he concedes in this action) containing a non-disparagement provision.  *See* Skibell Decl. Ex. G; *see also* Nevada Action ECF Nos. 16, 50, 75.

Defendants attempt to invoke that argument here because Nevada's anti-SLAPP statute does not protect false statements made in bad faith.  *See* Transfer Motion at 21.  It is on this basis alone that Defendants contend that the Nevada court will determine "whether statements in the proxy statements were false."  *Id*. at 15.  But "bad faith" is not the standard to establish liability under Section 14(a), which requires only negligence.  *See Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 1:20-CV-09992 (PAC), 2021 WL 4443258, at *8 (S.D.N.Y. Sept. 27, 2021).  And Defendants' unilateral insertion of an ill-conceived anti-SLAPP argument into the Nevada Action is insufficient to merge the actual dispositive facts in the two cases.  This is particularly true given that the Nevada court has provided no indication that Dr. Freeman and FCM's anti-SLAPP motions are even viable, let alone that it is willing to consider them at the pre-discovery stage.

---

[21] Dr. Freeman is seeking to consolidate the Nevada Action with the entirely unrelated civil RICO case he has brought to settle a personal score against Mr. Hurst and others who he views to be part of a coordinated conspiracy against him.  *Freeman v. Hurst*, No. 2:22-cv-01433 (D. Nev), ECF No. 40.  Dr. Freeman initiated that case more a year before any of the conduct at issue in the Nevada Action occurred.  *See Freeman v. Hurst* ECF No. 1 at 2.  The issues and defendants in that case have nothing to do with either Dr. Freeman's repeated breaches of the Separation Agreement or Defendants' dissemination of materially false and/or misleading proxy solicitations.

24

**B.    THIS CASE SHOULD NOT BE STAYED PENDING THE RESOLUTION OF THE NEVADA ACTION**

"A stay is an intrusion into the ordinary processes of administration and judicial review," to be granted only in "rare circumstances."  *GOJO Indus., Inc. v. Innovative Biodefense, Inc*., 407 F. Supp. 3d 356, 361–62 (S.D.N.Y. 2019).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion."  *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

Defendants have failed to meet this burden.  Pointing out that the complaints in both actions use the term "smear campaign" does not establish that the cases implicate the same factual or legal issues.  Indeed, they do not:  as discussed *supra* in § II.A.1.b, the two cases involve different time periods and different sets of actionable statements, the Separation Agreement has no relevance to this action, and the falsity of Defendants' proxy solicitation materials has no relevance to the Nevada Action.  Moreover, even assuming, *arguendo*, that Defendants' anti-SLAPP motions were not meritless, Defendants overstate the purported "critical overlapping elements" raised by those motions.  *See* Transfer Motion at 21; § II.A.1.b *supra*.

Although no legitimate interest of Defendants would be advanced by a stay, MindMed and its shareholders would undoubtedly be prejudiced.  Because MindMed is seeking an injunction and order that Defendants correct their false and misleading proxy solicitations, *see* FAC at ¶ 37, MindMed's shareholders will be deprived of the ability to make fully informed decisions based on accurate information until this action is resolved.  And neither the Court nor the public are served by allowing Defendants to postpone an adjudication of their wrongdoing.

## CONCLUSION

For the foregoing reasons, MindMed respectfully requests that the Court deny the Transfer Motion.

Dated:  New York, New York
       December 1, 2023

Respectfully submitted,

COOLEY LLP

By:  *s/Sarah Lightdale*
     Sarah Lightdale
     Aric Wu
     Kaitland Kennelly
     Amanda Liverzani

55 Hudson Yards
New York, New York 10001
Phone:  (212) 479-6000
Facsimile:  (212) 479-6275
Email:  slightdale@cooley.com
      awu@cooley.com
      kkennelly@cooley.com
      aliverzani@cooley.com

and

Alexandra Rex Mayhugh (*pro hac vice*)
Wells Fargo Center, South Tower
355 South Grand Avenue, Suite 900
Los Angeles, California  90071
Phone:  (213) 561-3250
Facsimile:  (213) 561-3244
Email:  amayhugh@cooley.com

*Attorneys for Plaintiff*
*Mind Medicine (MindMed) Inc.*