# EXHIBIT C

Robert J. Cassity
Nevada Bar No. 9779
Erica C. Medley
Nevada Bar No. 13959
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
bcassity@hollandhart.com
ecmedley@hollandhart.com

*Attorneys for FCM MM Holdings, LLC*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MIND MEDICINE (MINDMED) INC., a British Columbia Corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>SCOTT FREEMAN, an individual, and FCM MM HOLDINGS, LLC, a Wyoming Limited Liability Company,<br><br>                              Defendants. | Case No.: 2:23-cv-01354-MMD-EJY<br><br>**DEFENDANT FCM MM HOLDINGS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

Defendant FCM MM Holdings, LLC ("FCM" or "Defendant"), by and through its counsel of record, Holland & Hart LLP, respectfully submits this Reply memorandum in support of its Motion to Dismiss ("Motion") (ECF No. 13, filed September 6, 2023) (ECF No. 16, public version). Plaintiff Mind Medicine (MindMed) Inc. ("MindMed" or "Plaintiff") filed its Opposition to the Motion on September 27, 2023. *See* ECF No. 33.

## **Table of Contents**

TABLE OF AUTHORITIES ...................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

   I.    INTRODUCTION .......................................................................................................... 1

   II.   ARGUMENT ................................................................................................................ 2

      A.   No Alter Ego Relationship Exists Between FCM and Dr. Freeman ......................... 2

          1.   The Laws of the State of Incorporation—Wyoming—Should Apply ................... 2

          2.   FCM Is Not Dr. Freeman's Alter Ego .................................................................. 3

      B.   Personal Jurisdiction Did Not Exist at the Time the Action Was Brought ................. 7

          1.   MindMed Has Not Demonstrated a Basis for Jurisdictional Discovery ................. 9

      C.   MindMed Fails to State a Claim Because It Failed to Allege Alter Ego Liability .... 10

      D.   FCM's Communications Are Protected by Nevada's Anti-SLAPP Statutes ............. 11

          1.   FCM's Statements Are Protected by Nevada's Anti-SLAPP Statutes ................. 11

          2.   FCM's Communications Were Made in Good Faith ............................................. 14

          3.   MindMed Has Failed to Make a Showing that Discovery Is Necessary ............... 16

   III.   CONCLUSION ........................................................................................................... 17

CERTIFICATE OF SERVICE ................................................................................................ 19

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Steinberg*,
    107 Cal. App. 4th 568 (2003) ..................................................................17

*360 Accounting Sols., LLC v. TaxAssociates, Inc.*,
    2022 U.S. Dist. LEXIS 54456 (C.D. Cal. Jan. 7, 2022) .......................10

*89908, Inc. v. E-Z Load Gate, Inc.*,
    2009 U.S. Dist. LEXIS 140787 (D. Nev. June 8, 2009).........................7

*Allen v. Russian Fed'n*,
    522 F. Supp. 2d 167 (D.D.C. 2007) .......................................................7

*Anahuac Mgmt. v. Mazer*,
    2011 U.S. Dist. LEXIS 33876 (D. Nev. Mar. 24, 2011)...................3, 7

*Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC*,
    2022 U.S. Dist. LEXIS 58737 (S.D.N.Y. Mar. 30, 2022) ...................11

*Baral v. Schnitt*,
    1 Cal. 5th 376 (2016) ...........................................................................13

*Barrett v. Rosenthal*,
    40 Cal. 4th 33, 51 Cal. Rptr. 3d 55, 146 P.3d 510 (2006) ...................12

*Bighorn Dev., Inc. v. Trumpower*,
    2008 U.S. Dist. LEXIS 24673 (D. Nev. Mar. 27, 2008)........................3

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ................................................................4

*Coker v. Sassone*,
    135 Nev. 8, 432 P.3d 746 (2019) ..........................................................13

*In re Digimarc Corp. Derivative Litig.*,
    549 F.3d 1223 (9th Cir. 2008) ................................................................7

*Evanston Ins. Co. v. W. Cmty. Ins. Co.*,
    13 F. Supp. 3d 1064 (D. Nev. 2014)........................................................4

*Fox Searchlight Pictures, Inc. v. Paladino*,
    89 Cal. App. 4th 294 (2001) .................................................................16

*Gardner v. Eighth Jud. Dist. Ct.*,
    133 Nev. 730, 405 P.3d 651 (2017).................................................5, 8, 9

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

*Getz v. Boeing Co.*,
　　654 F.3d 852 (9th Cir. 2011) ..............................................................................9

*GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*,
　　337 P.3d 454 (Wyo. 2014) ...................................................................................6

*Keene Corp. v. United States*,
　　508 U.S. 200 (1993) .............................................................................................7

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc.*,
　　937 F.2d 44 (2d Cir. 1991) ...................................................................................7

*Kosor v. Olympia Cos., LLC*,
　　478 P.3d 390 (Nev. 2020) ...................................................................................12

*Lauter v. Anoufrieva*,
　　642 F. Supp. 2d 1060 (C.D. Cal. 2008) ..............................................................13

*LFC Mktg. Grp., Inc. v. Loomis*,
　　116 Nev. 896, 8 P.3d 841 (2000) ..............................................................1, 3, 5, 6

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
　　22 F.4th 852 (9th Cir. 2022) .................................................................................9

*Local Joint Executive Bd. of Las Vegas v. N.L.R.B.*,
　　540 F.3d 1072 (9th Cir. 2008) ............................................................................12

*MacQueen v. Union Carbide Corp.*,
　　2014 U.S. Dist. LEXIS 167609 (D. Del. Dec. 3, 2014) ........................................8

*Morgan Stanley High Yield Sec., Inc. v. Jecklin*,
　　2018 U.S. Dist. LEXIS 73159 (D. Nev. Apr. 30, 2018) .........................................2

*Nev. Corp. Headquarters, Inc. v. Sellers Playbook, Inc.*,
　　2019 U.S. Dist. LEXIS 119476 (D. Nev. July 16, 2019) ........................................8

*New Lifecare Hospitals of N. Nev., LLC v. Wright*,
　　No. CV14-01664, 2015 Nev. Dist. LEXIS 2751 (Sep. 18, 2015) .........................12

*Oumere LLC v. Zarpas*,
　　2021 U.S. Dist. LEXIS 129717 (C.D. Cal. June 29, 2021) ..................................12

*Pebble Beach Co. v. Caddy*,
　　453 F.3d 1151 (9th Cir. 2006) ..............................................................................9

*Pegasus v. Reno Newspapers*,
　　118 Nev. 706, 57 P.3d 82 (2002) ........................................................................14

*Pell v. Kill*,
　　135 A.3d 764 (Del. Ch. 2016) .............................................................................11

iv

*Pixior Glob. Logistics, LLC v. Walmart, Inc.*,
    2022 U.S. Dist. LEXIS 236404 (C.D. Cal. Nov. 1, 2022) .......................................9

*Rosen v. Tarkanian*,
    135 Nev. 436, 453 P.3d 1220 (2019) ..........................................................14, 16

*Schenker v. Assicurazioni Generali S.p.A., Consol.*,
    2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 11, 2002) ....................................8

*Shepard v. Shinseki*,
    2014 U.S. Dist. LEXIS 20562 (D. Nev. Feb. 19, 2014) ......................................6

*Stark v. Lackey*,
    136 Nev. 38, 458 P.3d 342 (2020) ...........................................................12, 13

*Sugarman*, 73 Cal. App. 5th at 1 ....................................................................13

*Towe Antique Ford Found. v. IRS*,
    999 F.2d 1387 (9th Cir. 1993) ......................................................................2

*Travelers Cas. & Sur. Co. v. Telstar Constr. Co.*,
    252 F. Supp. 3d 917 (D. Ariz. 2003) ............................................................7

*Wilson Logistics Nev., Inc. v. Lincoln Gen. Ins. Co.*,
    2011 U.S. Dist. LEXIS 124128, at *6-7 (D. Nev. Oct. 26, 201 ...................10

**Statutes**

Cal. Code Civ. Pro. 425.16 ...............................................................................16

NRS § 41.637 ...................................................................................................12

NRS § 41.650 ......................................................................................1, 12, 16

NRS § 41.660 ...................................................................................................16

NRS § 41.660(4) .........................................................................................16, 17

NRS § 78.747 ...................................................................................................10

NRS § 86.371 .....................................................................................................5

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

MindMed's blunderbuss Opposition fails to salvage its meritless claims against FCM, much less demonstrate personal jurisdiction over FCM. The only foundation for MindMed's claims against FCM is its alter ego theory of liability, which is as sturdy as a house of cards. Indeed, without establishing FCM is Dr. Freeman's alter ego, MindMed cannot demonstrate that this Court has personal jurisdiction over FCM, MindMed cannot state a claim to bind FCM to Dr. Freeman's contracts (upon which MindMed's two claims are premised), and MindMed cannot survive FCM's special motion to dismiss under Nevada's anti-SLAPP statutes because the alleged conduct falls within Nevada's grant of immunity from suit under Nevada Revised Statutes ("NRS") 41.650. MindMed identifies in its Opposition brief every example it can muster regarding Dr. Freeman's participation in FCM, but MindMed still falls decidedly short of establishing any alter ego relationship. That's because neither Wyoming nor Nevada law allows piercing of the corporate veil simply by virtue of participating in the control of an LLC or by managing an LLC.[1] The Nevada Supreme Court has explained time and again that the "corporate cloak is not lightly thrown aside." *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 903, 8 P.3d 841, 846 (2000). Yet, MindMed attempts to do just that with conclusory allegations of an alter ego relationship that are untethered to the actual legal standard for alter ego liability.

MindMed's true objective for this lawsuit against FCM is clear: MindMed seeks to chill FCM's free speech—to silence its loudest dissident group of shareholders and bind FCM to an agreement that was executed two years before FCM even existed.[2] This Court cannot allow this litigation to go any further. FCM's First Amendment rights must be upheld and FCM should not

---

[1] If mere participation were the standard, limited liability companies would not, in fact, offer any limited liability to managers, allowing creditors free reign to the assets of millions of small business owners—upending the United States economy.

[2] Indeed, MindMed seeks injunctive relief against FCM (and has threatened to move for a preliminary injunction) which would substantially chill FCM's free speech—highlighting that this is quintessentially and undisputedly a strategic lawsuit against FCM's public participation with respect to MindMed, as MindMed considers even critiquing the "compensation structure for Board members" to be subject to the non-disparagement clause. *See* ECF No. 2-1, at 27 (Compl. ¶ 110).

be forced to incur significant expenses from defending an action in which this Court lacks personal jurisdiction over FCM. MindMed's claims are predicated on grossly deficient allegations of alter ego. Accordingly, FCM respectfully requests that this Court grant the Motion to Dismiss.

## II.    ARGUMENT

### A.    No Alter Ego Relationship Exists Between FCM and Dr. Freeman

#### 1.    *The Laws of the State of Incorporation—Wyoming—Should Apply*

MindMed argues that the laws of Nevada should apply to determine whether an alter ego relationship exists between Dr. Freeman and FCM. *See* ECF No. 33, at 6. MindMed claims the "naked fact of incorporation" in Wyoming is outweighed by the reasons for applying Nevada law. *See id.* But those reasons cited by MindMed only relate to Dr. Freeman and the agreement he signed two years before FCM existed in which Dr. Freeman consented to jurisdiction in Nevada. *See id.* MindMed relies on *Morgan Stanley High Yield Sec., Inc.* to support its argument, but MindMed neglected to mention that its argument is the *exception* to the general rule. In *Morgan Stanley*, the court recognized the "general rule" provided by the Restatement that "[t]he local law of the state of incorporation will be applied" for an alter ego analysis. *Morgan Stanley High Yield Sec., Inc. v. Jecklin*, 2018 U.S. Dist. LEXIS 73159, at *54-55 (D. Nev. Apr. 30, 2018). The court observed that the Restatement provided an exception: "A state may impose liability upon a shareholder of a foreign corporation for an act done by the corporation in the state, if the state's relationship to the shareholder is sufficient to make reasonable the imposition of such liability upon him." *Id.* (quoting Restatement (Second) of Conflict of Law § 307, Reporter's Note (1971)).[3]

---

[3] The court in *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387 (9th Cir. 1993) applied the law of the forum state in determining whether a corporation is an alter ego of the taxpayer." But *Towe* is easily distinguishable from this case because the court applied Montana law to a Montana corporate entity. *See id.* Also, *Towe* relied upon *Wolfe v. United States*, which was debating "whether to apply state or federal alter ego doctrine" based on whether the case "implicates federal interests." 798 F.3d 1241, 1244 n.3 (9th Cir. 1986). The Ninth Circuit ultimately determined that state law—rather than federal law—"governs the determination of whether there exists an alter ego from whom the government may satisfy the obligation of a taxpayer." *Id.* Thus, the Ninth Circuit did not analyze competing choice of law issues among different states, and *Towe* is therefore inapposite.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Here, because MindMed is seeking "reverse piercing"[4] to bind FCM to Dr. Freeman's Separation Agreement, the focus is on *FCM's* contacts with the state—*not* Dr. Freeman's contacts. Thus, the analysis then becomes whether Nevada's relationship to FCM is sufficient to make reasonable the imposition of such liability upon it. In this case, MindMed has not alleged that FCM has any relationship with the State of Nevada such that Nevada has an interest in applying its laws. As applied to FCM, Nevada is a complete stranger to this case—no injuries occurred in Nevada, no plaintiffs or defendants are citizens of Nevada, there were no contacts in Nevada, FCM did not consent to the jurisdiction or laws of Nevada, and no companies were incorporated in Nevada. The only tie to Nevada is Dr. Freeman's Separation Agreement. But as explained herein, the Separation Agreement does not apply to FCM. Nevertheless, regardless of whether this Court applies Nevada or Wyoming law, the outcome is the same—no alter ego relationship exists.

### 2. FCM Is Not Dr. Freeman's Alter Ego

In an attempt to circumvent Dr. Freeman's resignation letter from serving as a manager for FCM's first month of corporate existence, MindMed erroneously claims that Dr. Freeman acted as FCM's alter ego from its inception on August 4, 2022, to his resignation on September 27, 2022

---

[4] Curiously, MindMed argues that "this is not a case of reverse piercing." ECF No. 33, at 7 n.5. But that is exactly what MindMed alleges (and it is unclear how standard alter ego under Nevada law would apply in this context absent "reverse piercing"), yet MindMed cites no Wyoming authority recognizing such relief. *See, e.g.*, ECF No. 2-1, at 13 (Compl. ¶ 29) ("This Court has personal jurisdiction over FCM because Dr. Freeman directs and manages FCM, and FCM is an alter ego of Dr. Freeman. As a result, Dr. Freeman's consent to this Court's personal jurisdiction, as well as Dr. Freeman's contacts with and conduct targeting the state of Nevada, may be imputed to FCM for the purpose of establishing personal jurisdiction."); *id.* at 26-27 (Compl. ¶ 107) ("Because FCM is Dr. Freeman's corporate alter ego . . . FCM is a party to the Separation Agreement and should therefore by liable for its repeated and egregious material breaches of that agreement's non-disparagement provision."). This Court has repeatedly made clear that this type of situation is considered "reverse piercing." *See, e.g.*, *Anahuac Mgmt. v. Mazer*, 2011 U.S. Dist. LEXIS 33876, at *7-8 (D. Nev. Mar. 24, 2011) ("Reverse piercing allows a party to seek damages against a corporate entity where 'the corporation is acting as the alter ego of a controlling individual.'" (quoting *LFC Mktg. Grp., Inc.*, 116 Nev. 896, 8 P.3d at 845)); *Bighorn Dev., Inc. v. Trumpower*, 2008 U.S. Dist. LEXIS 24673, at *19 (D. Nev. Mar. 27, 2008) ("Defendant attempts to use a theory of reverse veil piercing—reaching the corporate entity through the individual, as opposed to reaching the individual through the corporate form . . . .").

in order to defeat the motion to dismiss.[5] *See* ECF No. 33, at 7-8. MindMed argues that because Dr. Freeman was a manager during this timeframe (albeit only a co-manager, with Jake Freeman serving as the other co-manager[6]), an alter ego relationship was established and therefore MindMed has indefinite jurisdiction over FCM, FCM will always be bound by Dr. Freeman's agreements, and FCM will always be liable for Dr. Freeman's actions that may violate the Separation Agreement.[7] Even taking MindMed's arguments at face value, MindMed seems to suggest that the temporary existence of an alter ego relationship for less than two months in 2022 is sufficient to currently establish personal jurisdiction over FCM, is sufficient to indefinitely bind FCM to Dr. Freeman's non-disparagement clause, and is sufficient to hold FCM liable for supposed violations of Dr. Freeman's Separation Agreement *even* after the supposed alter ego two-month relationship ended. MindMed cites no support for this proposition that a finding of alter ego lasts indefinitely, despite any changes in the corporate structure or behavior.

Nevertheless, this Court need not address MindMed's attempt to stretch alter ego liability beyond any rational limits because *no alter ego relationship ever existed*. The Nevada Supreme Court has made clear that an alter ego does not exist simply because members participate "in

---

[5] MindMed also suggests that FCM "conceded" an alter ego relationship exists and "offers no evidence to refute it." ECF No. 33, at 8, 10. That is wildly false. FCM has not conceded an alter ego relationship existed at any point. Also, MindMed seems to misapprehend that it bears the burden of proof to establish jurisdiction through its alter ego theory. *See Evanston Ins. Co. v. W. Cmty. Ins. Co.*, 13 F. Supp. 3d 1064, 1068 (D. Nev. 2014) ("[T]he plaintiff bears the burden of establishing that jurisdiction is proper." (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008))).

[6] During the period Dr. Freeman was co-manager, MindMed alleges FCM's activities consisted of Reddit posts, the August 11, 2022, letter, a website, and attending meetings with MindMed. *See* ECF No. 33, at 9-10. But MindMed's own allegations state that Jake Freeman was integral to the Reddit posts (with "Yes, Jake Freeman exists" appearing prominently in the screenshots). *Id.* at 182. Moreover, Jake Freeman was a signer of the August 11, 2022, letter, and the third-person-nature of the Reddit posts discussing Dr. Freeman's involvement with the website creation evidence that Jake Freeman was involved in the website as well. *See* ECF No. 2-1, at 60. As for MindMed's preposterous argument that Dr. Freeman attended meetings of FCM and MindMed, all meetings were attended by Jake Freeman and Jake Freeman was the *sole* contact point with MindMed for setting up these meetings. *See* ECF No. 33-2, at 47.

[7] *See* ECF No. 33, at 5 ("FCM has not proffered any evidence to dispute these allegations with respect to the period between FCM's formation and Dr. Freeman's purported resignation as a managing member of FCM. Because the Complaint alleges that FCM breached the Separation Agreement during this period, this alone is sufficient to defeat FCM's motion.").

control of the business." *Gardner v. Eighth Jud. Dist. Ct.*, 133 Nev. 730, 733, 405 P.3d 651, 654 (2017) ("However, unlike limited partners, LLC members do not lose their limited liability for participating in control of the business." (internal quotations and alterations omitted)). Moreover, an alter ego does not exist "solely by virtue of being a manager." *Id.* at 734, 405 P.3d at 655 ("Pursuant to NRS 86.371, a manager cannot be personally responsible in a negligence-based tort action against the LLC solely by virtue of being a manager."); *id.* ("[T]he act of managing an LLC in and of itself cannot result in personal culpability because this notion would be in conflict with the manager's limited liability.").

Despite Nevada's clear limitations of liability and general policy "that the corporate cloak is not lightly thrown aside," *LFC Mktg. Grp., Inc.*, 116 Nev. at 903, 8 P.3d at 846, MindMed employs the kitchen sink approach by listing every circumstance it can fathom to show that Dr. Freeman actively participated in FCM. *See* ECF No. 33, at 8-12. But MindMed misses the mark.[8] The simple fact that Dr. Freeman was a co-manager in August and September 2022 is not the standard for establishing alter ego liability. And Dr. Freeman's mere participation in the control of the business is also not the standard for establishing alter ego liability. The Nevada Supreme Court makes both of those points clear in *Gardner*. Accordingly, the allegations that Dr. Freeman helped design FCM's website, signed letters, or attended meetings with MindMed do not establish an alter ego relationship. Of course, Dr. Freeman was publicized by FCM because he was FCM's nominee for the board in the proxy campaign and, after his resignation letter, consented to being named as a nominee. So, it should come as no surprise that FCM's presentation during its proxy

---

[8] To bolster its specious argument, MindMed points to certain of FCM's communications occurring after Dr. Freeman's resignation which use his name. *See* ECF No. 33, at 11. Notably, almost all of the examples MindMed points to occurred after April 18, 2023 (the day Dr. Freeman entered in the Joint Filing and Solicitation Agreement ["JFSA"] with FCM, among others). The JFSA, which MindMed received from FCM on May 8, 2023, clearly states "[Dr. Freeman] agrees that . . . any press release or communication proposed to be made or issued by the Group or any member of the Group … ***shall be as directed by FCM***." *See* **Exhibit B** (JFSA) (emphasis added); JFreeman Suppl. Decl. ¶ 5. This fatally undercuts any inference MindMed is attempting to draw from the purportedly binding nature of Dr. Freeman's desire (as stated in his resignation letter) for his name not to be used by FCM.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

5

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

campaign mentioned Dr. Freeman "25 times" and only "mentioned Jake Freeman twice."[9] ECF No. 33, at 12. Jake Freeman was not the person FCM was promoting to serve on MindMed's board of directors—shareholders were voting for Dr. Freeman, not Jake Freeman. *See, e.g.*, *id.* at 13 (stating FCM's goal was to install Dr. Freeman to a position at MindMed).

MindMed's alter ego argument is a failed attempt at misdirection. MindMed's apparent theory is that by throwing out enough allegations about Dr. Freeman's involvement in FCM, this Court will be distracted by those allegations and forget to analyze the required elements to establish alter ego liability under Nevada or Wyoming law. While MindMed has alleged a litany of facts that Dr. Freeman participated in FCM, the threadbare allegations in MindMed's Complaint, even considering the new allegations in the Opposition brief, do not establish the elements for reverse piercing alter ego liability. MindMed does not even attempt to address the factors for alter ego liability established by the Nevada and Wyoming Supreme Courts, such as commingling of funds, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities. *See LFC Mktg. Grp., Inc.*, 116 Nev. at 904, 8 P.3d at 847; *GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 337 P.3d 454, 465 (Wyo. 2014). MindMed fails to plead even the most basic elements of alter ego liability in its Complaint, such as the corporation being influenced and governed by Dr. Freeman, the unity of interest such that they are inseparable,[10] or the fraud or injustice that would occur without an alter ego finding. *See id.* This

---

[9] The two times that Jake Freeman was mentioned in the presentation were solely in reference to Jake Freeman not selling his shares should FCM be successful—further illustrating the presentation's focus on FCM's director candidates, *not* Jake Freeman.

[10] MindMed's Opposition also ignores the fact that FCM offered MindMed a deal which would have allowed MindMed to exclude Dr. Freeman from the board. *See* ECF No. 16-1, ¶ 12 (JFreeman Decl.). This fatally undercuts MindMed's never ending insistence that FCM's primary objective was to install Dr. Freeman on the board. Instead of addressing this fact on the merits, MindMed simply objects to Jake Freeman's declaration, claiming his belief that Dr. Freeman opposed this proposal is inadmissible evidence. *See* ECF No. 33, at 13 n.11. To the contrary, this Court can consider Jake Freeman's declaration. *See, e.g.*, *Shepard v. Shinseki*, 2014 U.S. Dist. LEXIS 20562, at *8-9 (D. Nev. Feb. 19, 2014) ("It is important to note that while only admissible evidence may be considered when deciding a motion to dismiss, we do not focus on the evidence's form. We instead focus on the admissibility of its contents. The court looks not at whether the evidence is currently presented in an admissible form, but instead whether it could be presented in an admissible form at trial. Evidence presented at the motion to dismiss stage can contain hearsay,

1  Court has rejected claims of alter ego liability based on conclusory recitation of the elements. *See*

2  *Anahuac Mgmt.*, 2011 U.S. Dist. LEXIS 33876, at *7-8 ("Mazer's complaint merely alleges that

3  Anahuac is Hand's alter ego, repeating the elements necessary for alter ego liability, without the

4  necessary facts to support the allegation. The mere recitation of elements of a cause of action are

5  insufficient to make a claim facially plausible."). But, here, MindMed failed to do even that.

6  Moreover, FCM fully contradicted the existence of any of these factors in the Motion, which have

7  not been refuted in the Opposition. *See* ECF No. 33, at 8. Accordingly, MindMed has failed to

8  show or even properly allege that FCM is Dr. Freeman's alter ego.

9  **B. Personal Jurisdiction Did Not Exist at the Time the Action Was Brought**

10  MindMed's personal jurisdiction analysis is likewise flawed. "Personal jurisdiction is

11  determined at the time the cause of action is brought." *Travelers Cas. & Sur. Co. v. Telstar Constr.*

12  *Co.*, 252 F. Supp. 3d 917, 935 n.9 (D. Ariz. 2003); *see also Keene Corp. v. United States*, 508 U.S.

13  200, 207 (1993) (referring to "the longstanding principle that 'the jurisdiction of the Court depends

14  upon the state of things at the time of the action brought" (quoting another source)); *In re Digimarc*

15  *Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("It is well established that 'the

16  jurisdiction of the court depends upon the state of things at the time of the action brought.");

17  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc.*, 937 F.2d 44, 52 (2d Cir. 1991)

18  ("[P]ersonal jurisdiction depends on the defendant's contacts with the forum state at the time the

19  lawsuit was filed . . . ."); *89908, Inc. v. E-Z Load Gate, Inc.*, 2009 U.S. Dist. LEXIS 140787, at *2

20  (D. Nev. June 8, 2009) (recognizing Section 1391(c) evaluates "personal jurisdiction at the time

21  the action is commenced" and stating "the only issue before this court is whether it had personal

22  jurisdiction over E-Z load when Amp Research *commenced this action*" (emphasis added)); *Allen*

23  *v. Russian Fed'n*, 522 F. Supp. 2d 167, 193-94 (D.D.C. 2007) ("[T]he filing of a 'lawsuit' (not a

24  complaint) determines the time in which personal jurisdiction contacts are considered.").

25

26  for example, yet still be appropriately considered by the court if it can be presented at trial in an
    admissible format (for example, with testimony)." (internal quotations and citations omitted)).

27  Here, MindMed failed to refute that it received a proposed settlement from FCM where it could
    have chosen nominees that did not include Dr. Freeman. Moreover, MindMed had a call solely

28  with Jake Freeman discussing the proposed settlement. *See* JFreeman Suppl. Decl. ¶ 3.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

7

An alter ego relationship can be a basis for exercising jurisdiction over another person or entity. *See, e.g.*, *Nev. Corp. Headquarters, Inc. v. Sellers Playbook, Inc.*, 2019 U.S. Dist. LEXIS 119476, at *11-13 (D. Nev. July 16, 2019). However, the timeline of such relationship must be consistent with the temporal limitations of determining personal jurisdiction. Because personal jurisdiction must exist at the time the action is commenced, the alter ego relationship must also exist at that time. *See, e.g.*, *MacQueen v. Union Carbide Corp.*, 2014 U.S. Dist. LEXIS 167609, at *25 (D. Del. Dec. 3, 2014) ("Plaintiff does not explain how utilization of the alter ego theory is appropriate here to satisfy the personal jurisdiction inquiry, where it is undisputed that Newport News Shipbuilding-2 has not been HII's parent for nearly a decade prior to the filing date of this suit."); *Schenker v. Assicurazioni Generali S.p.A., Consol.*, 2002 U.S. Dist. LEXIS 12845, at *13-15 (S.D.N.Y. July 11, 2002) ("The only relevant inquiry is whether Basler or its parent Baloise-Holding had an "agency" or "mere department" relationship with PWG when the complaint was filed, such that any of PWG's past or present New York contacts could be attributed to Basler.").

MindMed argues that Dr. Freeman and FCM were alter egos for portions of August and September 2022, and therefore, jurisdiction is proper. *See* ECF No. 33, at 5. MindMed suggests that this two-month timeframe establishes jurisdiction because some of its allegations in the Complaint occurred during this time. *See generally id.* But Dr. Freeman's mere role as a co-manager does not support a finding of alter ego liability, as the Nevada Supreme Court has made clear. *See Gardner*, 133 Nev. at 734, 405 P.3d at 655. And even if this Court were to accept that an alter ego relationship existed for those two months, it is not sufficient to establish personal jurisdiction over FCM because the alter ego relationship must exist at the time the action is commenced. Moreover, the argument that an alter ego relationship existed thereafter is likewise unavailing as explained in the Motion and herein. Dr. Freeman only served as a co-manager with Jake Freeman before he resigned from his role on September 27, 2022. *See* ECF No. 16, at 4. Thereafter, Jake Freeman is and has been the sole Manager of FCM. *See id.* While Dr. Freeman

participated in certain limited activities of FCM,[11] Jake Freeman exercised the ultimate control and authority to approve of FCM's actions and communications. *See id.* (citing JFreeman Decl.). MindMed's conclusory alter ego allegations are insufficient to establish personal jurisdiction over FCM.

### 1. *MindMed Has Not Demonstrated a Basis for Jurisdictional Discovery*

MindMed's request for jurisdictional discovery should be rejected because MindMed has failed to identify specific discovery and only offers a mere hunch that discovery may be relevant to proving its alter ego claim. *See Pixior Glob. Logistics, LLC v. Walmart, Inc.*, 2022 U.S. Dist. LEXIS 236404, at *17-18 (C.D. Cal. Nov. 1, 2022) (rejecting jurisdictional discovery for alter ego theory of liability and stating "a court is not required to allow discovery based on 'a mere hunch that discovery might yield jurisdictionally relevant facts' or based on 'bare allegations in the face of specific denials'" (quoting *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864-65 (9th Cir. 2022))).

Here, MindMed makes the type of conclusory request for jurisdictional discovery that was rejected in *Pixior* as a "mere hunch." Specifically, MindMed claims, without any detail, that "jurisdictional discovery is particularly likely to reveal additional facts confirming the Court has personal jurisdiction over FCM." ECF No. 33, at 14. The Ninth Circuit has found that unsupported requests for discovery are properly denied when plaintiffs "fail to identify any specific facts, transactions, or conduct that would give rise to personal jurisdiction" and offer only "purely speculative allegations of attenuated jurisdictional contacts." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006))).

---

[11] Peculiarly, MindMed asserts that Dr. Freeman's participation in FCM's activities (primarily in his context as FCM's nominee) somehow means that Dr. Freeman maintained control. But none of the examples of Dr. Freeman's participation undermines Jake Freeman's ultimate control and authority.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

MindMed's only basis for jurisdiction is its alter ego theory of liability to bind FCM to Dr. Freeman's consent to jurisdiction in his Separation Agreement. *See* ECF No. 2-1, at 13 (Compl. ¶ 29). As demonstrated herein, its claim of personal jurisdiction via its alter ego theory is attenuated and based on bare allegations that have been specifically refuted by Jake Freeman—the sole manager of FCM. MindMed's request to conduct broad discovery to support its alter ego theory would have the same effect as permitting discovery on the merits. MindMed has failed to allege any specific facts, transactions, or conduct that would give rise to personal jurisdiction, and this Court should not allow MindMed to go on a burdensome, costly fishing expedition to the detriment of FCM based on MindMed's conclusory allegations that discovery may be helpful.

## C. MindMed Fails to State a Claim Because It Failed to Allege Alter Ego Liability

MindMed argues that it properly alleged the elements of its Breach of Contract and Breach of the Implied Covenant claims, and therefore, the Motion should be denied under Rule 12(b)(6). *See* ECF No. 33, at 15. Again, MindMed misses the mark. MindMed must establish that a contract exists between the parties as part of its claims. *See id.* at 15-16. But MindMed's only basis of holding FCM liable under both of those claims is its alter ego theory of liability. *See, e.g.*, ECF No. 2-1, at 26 (Compl. ¶ 107) (stating, in light of an alter ego relationship, "FCM is a party to the Separation Agreement and should therefore be held liable for its repeated and egregious material breaches of that agreement's non-disparagement provision").

But a plain review of the Separation Agreement attached to the Complaint unequivocally confirms that FCM is not a party (and FCM did not even exist at the time it was consummated). To properly state a claim against FCM, MindMed must show that it has contractual privity with FCM through alter ego liability. *See, e.g., Wilson Logistics Nev., Inc. v. Lincoln Gen. Ins. Co.*, 2011 U.S. Dist. LEXIS 124128, at *6-7 (D. Nev. Oct. 26, 2011) ("Plaintiffs aver in their Complaint that Kingsway was the alter ego of Walshire Assurance. In order for the breach of the implied covenant to survive the Motion to Dismiss through veil piercing, Plaintiffs must plead specific facts showing that the three elements of NRS 78.747 are present."); *see also 360 Accounting Sols., LLC v. TaxAssociates, Inc.*, 2022 U.S. Dist. LEXIS 54456, at *21 (C.D. Cal. Jan. 7, 2022) ("Because TaxAssociates does not contend in the Opposition that it seeks to impose liability on

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1    JTH other than as an alter ego, the Court finds that Counts Nine through Eleven state a claim only

2    if TaxAssociates alleges alter ego liability.").

3         MindMed cannot circumvent Rule 12(b)(6) by pleading the elements of its claims against

4    Dr. Freeman but relying on incomplete and conclusory allegations of alter ego liability to hold

5    FCM accountable for those same claims. While MindMed points to examples of Dr. Freeman's

6    participation in FCM, that is not the standard required for alter ego liability.[12] MindMed's failure

7    to plead even the basic elements and/or factors of alter ego liability is fatal to its claims against

8    FCM. Accordingly, this Court should dismiss FCM's claims pursuant to Rule 12(b)(6).

9    **D. FCM's Communications Are Protected by Nevada's Anti-SLAPP Statutes**

10        MindMed makes two substantive challenges to FCM's anti-SLAPP arguments. First,

11   MindMed claims that FCM's communications are not protected, not based on a public interest,

12   and not in a public forum. Second, MindMed argues that FCM's communications were not made

13   in good faith. *See* ECF No. 33, at 19. Both of MindMed's arguments are meritless.

14        ***1. FCM's Statements Are Protected by Nevada's Anti-SLAPP Statutes***

15        MindMed first claims that FCM's communications are not protected by the anti-SLAPP

16   statutes because the communications violate Dr. Freeman's Separation Agreement. *See id.* But this

17   reasoning requires the Court to accept MindMed's conclusory alter ego theory of liability, which

18   is contradicted by the evidence. Further, MindMed's waiver claims are unpersuasive, given the

19   plain language of the Separation Agreement protects Dr. Freeman's rights related to equity

20   ownership in the Company, which would include a proxy contest.[13] Moreover, there is no basis for

21

22   _____

[12] If the standard was mere participation, nearly every employee and manager would be alter egos of their respective businesses, including MindMed's CEO Robert Barrow.

23   [13] Ironically, MindMed argues "there is no right to engage in a proxy campaign that trumps a
24   specifically negotiated agreement." ECF No. 33, at 17. But, MindMed conveniently ignores that, in fact, Dr. Freeman's Separation Agreement specifically allows for such actions. *See* ECF No. 4,
25   at 466, ¶ 13 (stating Separation Agreement does not abrogate existing rights related to equity ownership in the Company). Participating in a proxy campaign is perhaps one of the most
26   fundamental rights of equity ownership. *See, e.g.*, *Applied Energetics, Inc. v. Gusrae Kaplan Nusbaum PLLC*, 2022 U.S. Dist. LEXIS 58737, at *43 (S.D.N.Y. Mar. 30, 2022) ("Of course, the
27   ownership of Company shares would have afforded Defendants the right to take a position in the proxy contest."); *Pell v. Kill*, 135 A.3d 764, 794 (Del. Ch. 2016) ("Shareholder voting rights are

28

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

finding waiver given NRS 41.650's broad immunity[14]; the Ninth Circuit has found that "[t]he standard for waiving statutory rights . . . is high," and such a waiver must be "explicitly stated, clear and unmistakable." *Local Joint Executive Bd. of Las Vegas v. N.L.R.B.*, 540 F.3d 1072, 1079 (9th Cir. 2008) (quotation omitted). There has been no showing of such a waiver here.

MindMed makes a feeble attempt to claim that FCM's communications were not in a public forum, despite Nevada's broad definition of what constitutes a public forum. *See* ECF No. 33, at 19.[15] To support its claim, MindMed provides a single example of a private letter regarding Carol Vallone. *See id.* at 19-20. Curiously, without any legal support, MindMed suggests that this single letter thereby removes all of the other public communications from protection under

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

---

sacrosanct. The fundamental governance right possessed by shareholders is the ability to vote for the directors the shareholder wants to oversee the firm. The harm threatened here is to the corporate electoral process, a process which carries with it the right of shareholders to a meaningful exercise of their voting franchise and to a fair proxy contest with an informed electorate." (internal quotations and citations omitted)).

[14] *See, e.g.*, *New Lifecare Hospitals of N. Nev., LLC v. Wright*, No. CV14-01664, 2015 Nev. Dist. LEXIS 2751, *6 (Sep. 18, 2015) (granting anti-SLAPP motion to dismiss despite claims for breach of contract and breach of fiduciary duty where a former employee provided "patient information, contracts with defibrillator companies, and 'End of the Day Status Reports'" as part of good-faith disclosures to Nevada Department of Health and Human Services and the Reno Gazette Journal regarding a matter of public concern).

[15] MindMed ridiculously argues that Reddit.com is not a public forum, ignoring legions of case law to the contrary. Reddit reports that "millions of people around the world post, vote, and comment in communities organized around their interests." *See* www.redditinc.com. Further, the Reddit forum in which FCM's statements were posted is open to the public and has approximately 24,000 members. *See* r/MindMedInvestorsClub, REDDIT, *available at* https://www.reddit.com/r/MindMedInvestorsClub/?rdt=46916 (last visited Oct. 9, 2023). Thus, FCM's statements on Reddit clearly were made "in a place open to the public or in a public forum." NRS 41.637; *Oumere LLC v. Zarpas*, 2021 U.S. Dist. LEXIS 129717, at *4 (C.D. Cal. June 29, 2021) ("Reddit is a public forum because it is a discussion board where people from all over the world can communicate with one another. [] Therefore, ***Defendant's Reddit post is 'in a public forum.'***") (citations omitted) (emphasis added); *Kosor v. Olympia Cos., LLC*, 478 P.3d 390, 397 (Nev. 2020) (holding that a "Nextdoor.com post qualifies as a public forum for the purposes of anti-SLAPP protections"); *Stark v. Lackey*, 136 Nev. 38, 41 n.2, 458 P.3d 342, 345 n.2 (2020) (holding that a government watch group's Facebook page qualifies as a public forum under anti-SLAPP laws). *Cf. Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4, 51 Cal. Rptr. 3d 55, 59, 146 P.3d 510, 514 (2006) ("Web sites accessible to the public, like the 'newsgroups' where Rosenthal posted Bolen's statement, are 'public forums' for purposes of the anti-SLAPP statute." (collecting cases)).

12

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Nevada's anti-SLAPP statutes.[16] *See id.* But that unsupported argument is entirely without merit as all of the other communications at issue were unquestionably made in a public forum. Moreover, when a claim for conduct falls both within and outside the scope of anti-SLAPP laws, courts have generally described this as a "mixed cause of action" and afforded protection nonetheless. *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1109 (C.D. Cal. 2008) ("A mixed cause of action is subject to the Anti-SLAPP statute if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity."); *see also Baral v. Schnitt*, 1 Cal. 5th 376, 392-93 (2016) ("It is arbitrary to hold that the same claim, supported by allegations of protected and unprotected activity in a single cause of action, escapes review if the plaintiff shows a probability of prevailing on the allegations that are *not* covered by the anti-SLAPP statute.").

Finally, MindMed claims that FCM's campaign against MindMed was not about an interest of public concern. But this can hardly be the case under Nevada law, where the Nevada Supreme Court likewise "define[s] an issue of public interest broadly," *Coker v. Sassone*, 135 Nev. 8, 14, 432 P.3d 746, 751 (2019), and has found social media comments about the bear population in Nevada to be an issue of public concern. *See Stark*, 136 Nev. Adv. Rep. 4, 458 P.3d at 346 ("[W]e conclude that the treatment of Nevada wildlife, and specifically bears in the Tahoe Basin, surpasses mere curiosity and is a concern to many people throughout the state."). Here, MindMed touts itself as a "Global Leader in Brain Health" and has over 300,000 individual shareholders with 39.7 million shares outstanding. *See* ECF No. 16, at 16. MindMed's argument that the statements included an effort to elect Dr. Freeman as a director does not change the public purpose analysis—the leadership and operation of a public company is a public concern, especially in the context of a proxy campaign to change the control of the board. *Sugarman*, 73 Cal. App. 5th at 177 (observing that "[t]he financial projections of a large, publicly traded company like Banc are of great interest to a significant community of investors.")

---

[16] Notably, it is questionable whether such a "private letter" violates the non-disparagement agreement, assuming it applied to FCM at all. *See* ECF No. 13, at 3.

Despite MindMed's claims, FCM's communications are protected by Nevada's anti-SLAPP statutes because they involve a matter of public issue and concern, they were made in a public forum, and they are not prohibited by Dr. Freeman's Separation Agreement.

### 2. FCM's Communications Were Made in Good Faith

MindMed attempts to refute Jake Freeman's declaration that FCM's statements were made in good faith by dissecting each word in a statement and looking for technical falsehoods without considering the totality of the communications. *See* ECF No. 33, at 22. The Nevada Supreme Court has rejected arguments like this, and this Court should do the same. The Nevada Supreme Court has specifically rejected arguments that "ignore[] the gist of the statements and instead attempt[] to parse each individual word in the statements to assess it for its truthfulness." *Rosen v. Tarkanian*, 135 Nev. 436, 440, 453 P.3d 1220, 1224 (2019). Rather, the Nevada Supreme Court has maintained that "the relevant inquiry in prong one of the anti-SLAPP analysis is whether a preponderance of the evidence demonstrates that 'the gist of the story, or the portion of the story that carries 'the sting' of the [statement] is true.'" *Id.* (quoting *Pegasus v. Reno Newspapers*, 118 Nev. 706, 715 n.17, 57 P.3d 82, 88 n.17 (2002)).

Here, FCM has demonstrated that the gist of its statements was true and/or constituted opinions, and MindMed's cherry-picked examples of alleged falsehoods does not defeat the totality of FCM's good faith communications. For instance, MindMed spends much of its arguments focused on a supposed falsehood that Jake Freeman made when he said MindMed's CEO lacks "an advanced degree." ECF No. 33, at 22. As an initial matter, MindMed takes Jake Freeman's quote completely out of context in a feeble attempt to demonstrate a falsehood. Jake Freeman referred to "advanced degree" to mean a Ph.D. or M.D., given that MindMed deals with pharmaceuticals. *See* ECF No. 33-2, at 9. The next sentence from Jake Freeman's interview makes that clear: "I think the real issue here is that Barrow doesn't have an advanced degree. And the question is, you know, ***most people in the field have Ph.Ds. and M.D.s*** and the question is, ***Barrow doesn't have that***." *See id.* (emphasis added). Jake Freeman thus *explicitly defined* what he meant

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

by "advanced degree," and MindMed's attempt to inject falsity (much less bad faith) into the statement is meritless.[17]

But even if the Court accepts MindMed's cited examples in its brief as falsehoods (it

---

[17] MindMed also argues that statements in FCM's November 14, 2022, statement, were false. *See* ECF No. 33-1, at 4 (Barrow Decl., ¶ 6) ("On November 14, 2022, Dr. Freeman and FCM published a letter accusing MindMed of . . . 'misstating its related party transactions' . . . . MindMed did not misstate its related party transactions in any SEC filings."). However, Mr. Barrow's declaration is easily shown to be false because MindMed did, in fact, misstate its related party transactions in its SEC filings. On November 10, 2022, MindMed filed a Form 10-Q stating, "the Company incurred nominal legal fees and $0.4 million in legal fees to companies controlled by a former director of the Company during the three and nine months ended September 30, 2021, respectively." MindMed, Quarterly Report (Form 10-Q), ¶ 12 (Nov. 10, 2022), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1813814/000095017022024192/mnmd-20220930.htm. However, this directly contradicts MindMed's SEC filing on November 12, 2021, which states "the Company incurred legal fees of $1,936[,000] to companies controlled by a director of the Company during the nine months ended September 30, 2021." MindMed, Report of Foreign Private Issuer, ¶ 14 (Nov. 12, 2021), *available at* https://www.sec.gov/Archives/edgar/data/1813814/000110465921137909/tm2132761d1_ex99-1.htm.

Stated differently, MindMed made two different representations about the costs of legal fees for its related party transactions—one filing claimed $1.936 million, while another claimed only $400,000 for the same period. Given that MindMed's filings on November 12, 2021 and November 10, 2022 were never restated or corrected, MindMed misstated its related party transactions in its SEC filing either on November 12, 2021 or on November 10, 2022. Aggravating the falsity of Mr. Barrow's declaration was that this was the exact example provided in FCM's November 12, 2022, letter coupled with the fact Mr. Barrow signed off on the applicable SEC filings.

Unfortunately, this was not the only example of Mr. Barrow averring false statements in hopes of injecting falsity into FCM's statements. In support of its arguments of the supposed falsity of FCM's letter to McLean Hospital, Mr. Barrow declares that "there were no financial incentives for Ms. Vallone or anyone else at the company based on the continuance of [the MM-110] study (or any study for that matter)." *Id.* at 4 (Barrow Decl., ¶ 8). However, this again is easily shown to be false by MindMed's own securities filings. MindMed's proxy materials describing its 2022 compensation schema state that "the annual performance-based bonus that each named executive officer is eligible to receive is generally based on the extent to which we achieve the corporate goals the Board or our Compensation Committee establishes each year." MindMed, Proxy Statement (Schedule 14A) (May 1, 2023), *available at* https://www.sec.gov/Archives/edgar/data/1813814/000119312523130573/d453901ddefc14a.htm. MindMed's filing goes on to state that corporate goals include, inter alia, "advanc[ing] clinical development programs of MM-120 in GAD and ADHD to position for Phase 2 data readouts in 2023," "advanc[ing] preclinical development program for MM-402 to enable initiation of clinical trials in 2023," and "execut[ing] R&D program and regulatory filings to position for initiation of Phase 2 study of MM-110." *Id.* Thus, in fact, MindMed executives had financial incentives to start and complete studies.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

should not),[18] it does little to tip the scales against the totality of over a year's worth of communications from an adversarial proxy campaign. *See* ECF No. 2-1, at 11 (Compl. ¶ 18) ("In August 2022, Defendants initiated an activist shareholder campaign through social media, press releases, shareholder letters, and other sources . . . ."); *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 308 (2001) ("[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'"). Accordingly, FCM's communications are protected under Nevada's anti-SLAPP statutes because they directly relate to a matter of public issue, they were made in a public forum, and they were made in good faith. Thus, the burden shifts to MindMed to demonstrate the probability of prevailing on its claims. But it cannot do so. First, MindMed has not demonstrated a probability of showing that the supposed falsehoods were not made in good faith and therefore subject to immunity under NRS 41.650.[19] Moreover, its claims are premised on its unsupported alter ego theory of liability, which as discussed above has no merit.

### 3. MindMed Has Failed to Make a Showing that Discovery Is Necessary

As a Hail Mary effort to save its meritless claims against FCM, MindMed asks this Court to grant it discovery to test FCM's "good faith" beliefs regarding its statements as well as obtain discovery to support its "alter ego" theory. ECF No. 33, at 25. Yet, MindMed failed to make the requisite showing "that information necessary to meet or oppose the burden . . . is in the possession of another party." NRS 41.660(4). Instead, like its threadbare jurisdictional discovery request, MindMed essentially is asking this Court for a blank check to conduct merits discovery because the nature of its "alter ego" discovery would be endless in scope. MindMed has failed to articulate

---

[18] FCM refutes the specific allegations of falsehoods made in the Opposition brief and reserves its right to challenge those allegations. However, this Court need not engage in the determination of falsehoods for MindMed's isolated and nominal examples because the Nevada Supreme Court has clearly articulated that the "gist or sting" standard applies to Nevada's anti-SLAPP statutes. *Rosen*, 135 Nev. at 440, 453 P.3d at 1224. MindMed's "gotcha" examples from isolated and immaterial communications do not outweigh the totality of FCM's communications that were made in good faith.

[19] Arguably, Nevada's anti-SLAPP statutes provide even more protection than California's given the language in NRS 41.650, which broadly grants immunity from "any civil action" for claims qualifying under NRS 41.660. There is no counterpart in California's anti-SLAPP statutes. *See* Cal. Code Civ. Pro. 425.16.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

what discovery it would request from FCM or how that information is not reasonably available to it. Further, MindMed's desire to "test" Jake Freeman's declaration of his "good faith" is not a basis for obtaining discovery. *See 1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 593 (2003) ("Discovery may not be obtained merely to 'test' the opponent's declaration."). Rather, the plaintiff must make a showing with "some explanation of what additional facts plaintiff expects to uncover." *Id.* (quoting another source). Here, MindMed's conclusory request for discovery should be rejected because it does not meet the standard required under NRS 41.660(4).

## III.     CONCLUSION

For the reasons stated above and in the Motion, the Motion should be granted, and the Court should dismiss MindMed's Complaint against FCM.

DATED this 13th day of October 2023.

**HOLLAND & HART LLP**

*/s/ Robert J. Cassity*
Robert J. Cassity (9779)
Erica C. Medley (13959)
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

*Attorneys for FCM MM Holdings, LLC*

**INDEX OF EXHIBITS**

| Exhibit | Description | Page Numbers |
|---------|-------------|--------------|
| A | Declaration of Jake Freeman in Support of Defendant FCM MM Holdings, LLC's Reply in Support of Motion to Dismiss | 001-003 |
| B | Joint Filing and Solicitation Agreement | 004-007 |

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of October, 2023, a true and correct copy of the foregoing **DEFENDANT FCM MM HOLDINGS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS** was served by the following method(s):

☒    <u>Electronic</u>:  by submitting electronically for filing and/or service with the United States District Court, District of Nevada's e-filing system and served on counsel electronically in accordance with the E-service list to the following email addresses:

Justin J. Bustos
**DICKINSON WRIGHT PLLC**
100 West Liberty Street, Suite 940
Reno, NV 89501
Email: jbustos@dickinson-wright.com

*Attorneys for Plaintiff*

Sarah Lightdale
Kaitland Kennelly
Amanda Liverzani
**COOLEY LLP**
55 Hudson Yards
New York, NY 10001
Email: slightdale@cooley.com
kkennelly@cooley.com
aliverzani@cooley.com

*Attorneys for Plaintiff*

Alexandra Rex Mayhugh
**COOLEY LLP**
Wells Fargo Center, South Tower
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071
Email: amayhugh@cooley.com

*Attorneys for Plaintiff*

/s/ Valerie Larsen
An Employee of Holland & Hart LLP

30620178

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134