UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIND MEDICINE (MINDMED) INC., <br><br> Plaintiff, <br><br> v. <br><br> SCOTT FREEMAN, JAKE FREEMAN, CHAD BOULANGER, FARZIN FARZANEH, VIVEK JAIN, ALEXANDER WODKA, and FCM MM HOLDINGS, LLC, <br><br> Defendants. | Case No. 1:23-cv-07875 (DLC) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

GLENN AGRE BERGMAN & FUENTES LLP

1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
T: 212-970-1600
rskibell@glennagre.com

*Attorneys for Defendants*

**Table of Contents**

Table of Authorities ................................................................................................................ ii

ARGUMENT .............................................................................................................................. 1

    I.    MINDMED'S SECTION 14 MONETARY CLAIM FAILS TO ALLEGE THAT DEFENDANTS CAUSED A WRONGFUL TRANSACTION TO OCCUR ............................................................................................................. 1

    II.   MINDMED LACKS STANDING TO BRING ITS SECTION 14(A) CLAIM BECAUSE MINDMED FAILS TO ALLEGE ANY SHAREHOLDER INJURY ................................................................................................................ 6

    III.  MINDMED'S CLAIM FOR INJUNCTIVE RELIEF MUST FAIL BECAUSE THERE IS NO PROPOSED WRONGFUL TRANSACTION .................... 7

    IV.  RULE 9(B) APPLIES TO THE CLAIM, AND MINDMED FAILS TO SATISFY 9(B)'S HEIGHTENED PLEADING REQUIREMENTS ........................ 8

CONCLUSION ........................................................................................................................ 10

## Table of Authorities

Page(s)

**Cases**

*Brayton v. Ostrau*,
  561 F. Supp. 156 (S.D.N.Y. 1983) ................................................................. 5

*Britton v. Parker*,
  2009 WL 3158133 (D. Colo. Sept. 23, 2009) ................................................ 2

*City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011) ........................................................... 10

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) .................................................................... 4

*DCML LLC v. Danka Bus. Sys. PLC*
  2008 WL 5069528 (S.D.N.Y. Nov. 26, 2008) ................................................ 3

*Delcath Sys., Inc. v. Ladd*,
  2006 WL 2708459 (S.D.N.Y. Sept. 20, 2006) ............................................... 8

*Diceon Elecs., Inc. v. Calvary Partners, L.P.*,
  772 F. Supp. 859 (D. Del. 1991) .................................................................... 6

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
  2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) ............................................ 6, 9

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*
  2021 WL 5854075 (S.D.N.Y. Dec. 9, 2021) ................................................... 4

*Firemen's Ins. Co. of Newark, New Jersey v. Keating*,
  753 F. Supp. 1146 (S.D.N.Y. 1990) ............................................................... 7

*Gen. Elec. Co. by Levit v. Cathcart*
  980 F.2d 927 (3d Cir. 1992) ........................................................................... 3

*Hastey on behalf of YRC Worldwide, Inc. v. Welch*,
  449 F. Supp. 3d 1053 (D. Kan. 2020) ............................................................ 3

*Heil v. Lebow*
  1993 WL 15032 (S.D.N.Y. Jan. 13, 1993) ..................................................... 3

*In re AGNC Inv. Corp.*,
  2018 WL 3239476 (D. Md. July 3, 2018) .............................................................................. 1, 2

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017) ..................................................................................... 10

*In re CMS Energy Sec. Litig.*,
  403 F. Supp. 2d 625 (E.D. Mich. 2005) ................................................................................... 4

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012) ....................................................................................... 9

*Jaroslawicz v. M&T Bank Corp.*,
  2023 WL 5528723 (D. Del. Aug. 28, 2023) .......................................................................... 2, 3

*Kaufman v. Cooper Companies, Inc.*,
  719 F. Supp. 174 (S.D.N.Y. 1989) ............................................................................................ 8

*Lichtenberg v. Besicorp Grp. Inc.*,
  43 F. Supp. 2d 376 (S.D.N.Y. 1999) ......................................................................................... 7

*Limmer v. Gen. Tel. & Elecs. Corp.*,
  1977 WL 1029 (S.D.N.Y. Mar. 21, 1977) ................................................................................. 2

*McIntosh v. Katapult Holdings, Inc.*,
  2023 WL 5049044 (S.D.N.Y. Aug. 8, 2023) ............................................................................ 9

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) .................................................................................................................. 2

*MONY Grp., Inc. v. Highfields Cap. Mgmt., L.P.*,
  368 F.3d 138 (2d Cir. 2004) ..................................................................................................... 8

*Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*,
  2023 WL 3569068 (S.D.N.Y. May 19, 2023) .......................................................................... 9

*Poughkeepsie Sav. Bank, F.S.B. v. Morash*,
  1989 WL 40008 (S.D.N.Y. Apr. 14, 1989) ............................................................................... 8

*Rubenstein on Behalf of Jefferies Fin. Grp. Inc. v. Adamany*,
  2023 WL 6119810 (2d Cir. Sept. 19, 2023) ............................................................................. 2

*Salomon Bros. Mun. Partners Fund, Inc. v. Thornton*,
  410 F. Supp. 2d 330 (S.D.N.Y. 2006) ....................................................................................... 7

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977) ........................................................................................................... 1

*Sisters of the Precious Blood, Inc. v. Bristol-Myers Co.*,
   431 F. Supp. 385 (S.D.N.Y. 1977) ..................................................................................... 5

*Szulik v. Tagliaferri*,
   966 F. Supp. 2d 339 (S.D.N.Y. 2013) ................................................................................ 4

*Tenet Healthcare Corp. v. Cmty. Health Sys., Inc.*,
   839 F. Supp. 2d 869 (N.D. Tex. 2012) ............................................................................... 6

*Thomas v. City of New York*,
   143 F.3d 31 (2d Cir. 1998) ................................................................................................. 8

*Trombetta v. Novocin*,
   414 F. Supp. 3d 625 (S.D.N.Y. 2019) .............................................................................. 10

*Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
   866 F. Supp. 2d 223 (S.D.N.Y. 2012) ................................................................................ 4

*Vaughn v. Consumer Home Mortg., Inc.*,
   293 F. Supp. 2d 206 (E.D.N.Y. 2003) ................................................................................ 7

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ..................................................................................................... 3, 5

Defendants by and through their counsel, submit this reply memorandum of law in further support of their Motion to Dismiss MindMed's First Amended Complaint (the "FAC").[1]

## ARGUMENT

### I. MINDMED'S SECTION 14 MONETARY CLAIM FAILS TO ALLEGE THAT DEFENDANTS CAUSED A WRONGFUL TRANSACTION TO OCCUR

Simply put, MindMed's claim must be dismissed because the theory of its case cannot be reconciled with the law of transaction causation. Here, the alleged damage inducing transaction—the election of FCM's directors—did not come to fruition; none of them were elected. Even though the Securities Act of 1934 is one of the most heavily scrutinized pieces of legislation in existence, and federal courts have had approximately 90 years to interpret Section 14(a), MindMed cannot identify a single case where a plaintiff stated a cognizable claim in the context of an unsuccessful proxy contest. As explained below, MindMed's lone authority is carefully limited dicta in a footnote in a case where the court ultimately concluded the theory of transaction causation was unavailing. Respectfully, the Court should decline MindMed's invitation to make new law here.[2]

A Section 14(a) claim requires a private plaintiff to challenge a successful transaction that was the subject of the relevant proxy materials and allege facts to show that but for the misleading proxy materials shareholders would not have approved the transaction. The Second Circuit recently held as much: "To state a claim under Section 14(a), and Rule 14a-9 promulgated thereunder, a plaintiff must plausibly allege that (1) a proxy statement contained a material 'misstatement or omission,' which (2) caused the plaintiff injury, and (3) 'the proxy solicitation

---

[1] All undefined, capitalized terms used herein have the same meaning ascribed to them in Defendants' Motion to Dismiss. ECF No. 41.

[2] Such a rule is consistent with the Supreme Court's caution that, when interpreting federal securities law, we must refrain from "federaliz[ing] the substantial portion of the law of corporations that deals with transactions in securities." *In re AGNC Inv. Corp.*, 2018 WL 3239476, at *6 (D. Md. July 3, 2018) (quoting *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977)).

itself, rather than the particular defect in the solicitation materials, was an essential link ***in the accomplishment of the transaction***.'" *Rubenstein on Behalf of Jefferies Fin. Grp. Inc. v. Adamany*, 2023 WL 6119810, at *2 (2d Cir. Sept. 19, 2023) (emphasis added) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 384–85 (1970)). Numerous courts have held the same.[3] Indeed, "the United States Courts of Appeals have consistently held that successfully pleading 'transaction causation' in a Section 14(a) suit requires a showing that the challenged proxy statement ***induced shareholders to directly authorize the specific transaction*** that resulted in the economic loss." *In re AGNC Inv. Corp.*, 2018 WL 3239476, at *3 (emphasis added) (explaining that "[t]ransaction causation mandates that the challenged conduct that caused the economic loss be an action authorized by shareholder vote").

Consistent with this established law, courts that have considered Section 14(a) claims in the context of an unsuccessful transaction have dismissed such claims because the proxy materials plainly did not cause shareholders to authorize a damage inducing transaction. Accordingly, there was no transaction causation. (Memorandum of Law, "Mem.," ECF No. 41 at 16). Although MindMed gamely attempts to distinguish these authorities, technical factual distinctions are not a basis to disregard the holdings of legal authorities.[4] Moreover, courts have dismissed Section 14(a)

---

[3] *E.g.*, *Jaroslawicz v. M&T Bank Corp.*, 2023 WL 5528723, at *21 (D. Del. Aug. 28, 2023) ("*Mills* counsels that . . . the operative transaction must be the transaction that such a shareholder vote *authorizes*.") (emphasis added); *Britton v. Parker*, 2009 WL 3158133, at *11 (D. Colo. Sept. 23, 2009) ("This element essentially examines . . . whether the transaction described in the allegedly misleading [p]roxy [s]tatement was one that, once *approved by shareholders*, resulted in a loss to the [p]laintiff.") (emphasis added); *Limmer v. Gen. Tel. & Elecs. Corp.*, 1977 WL 1029, at *1 (S.D.N.Y. Mar. 21, 1977) ("Section 14(a), after all, contemplates the prevention, or redress, of such injury as would be, or is, directly traceable to a *transaction authorized by a corporate electorate* in the partial light of a misleading proxy solicitation.") (emphasis added).

[4] In *DCML LLC v. Danka Bus. Sys. PLC*, the court dismissed the Section 14(a) claim because the "transaction . . was not approved by [] shareholders." 2008 WL 5069528, at *3 (S.D.N.Y. Nov. 26, 2008). It is immaterial that the court *also* rejected the argument that an impact on market

2

claims related to non-binding advisory votes on the basis that the proxy materials did not "provide an 'essential link' to a corporate action." *Hastey on behalf of YRC Worldwide, Inc. v. Welch*, 449 F. Supp. 3d 1053, 1067 (D. Kan. 2020). The same logic should apply in circumstances, as here, where the proxy materials did not cause any corporate action.

Against this backdrop, MindMed's proposes an entirely new standard for transaction causation, which amounts to a contention that causation will lie where a "significant number" of shareholders relied on misleading proxy materials in voting in favor of a transaction, albeit too small a number to approve the transaction. (Opposition, "Opp." ECF No. 54 at 21). MindMed's standard would enable access to federal courts for the purpose of recouping funds any time management expended money fighting shareholder proxy solicitations. This attempt to dramatically expand Section 14(a) liability should be rejected for two reasons.[5]

*First*, MindMed does not identify any court that has applied its definition of transaction causation. Most of the authorities it relies upon for the proposition that transaction causation is synonymous with reliance are 10(b)(5) cases, and, notably, in each one a misrepresentation or omission allegedly caused the plaintiffs to "enter[] into the detrimental securities transaction." *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 366 (S.D.N.Y. 2013); *see also Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 128 -31 (S.D.N.Y. 2001); *In re CMS Energy Sec. Litig.*, 403 F. Supp. 2d

---

participants was insufficient to sustain a claim. In *Heil v. Lebow*, the court held that "[i]f no action was taken pursuant to the challenged proxy solicitation, then no section 14(a) claim can be stated because no injury could exist." 1993 WL 15032, at *3 (S.D.N.Y. Jan. 13, 1993). MindMed's bald assertion that it has suffered damages is not a substantive distinction. The same is true for *Gen. Elec. Co. by Levit v. Cathcart*, where the court dismissed the Section 14(a) claim because "shareholders' votes did not authorize the transactions that caused the losses." 980 F.2d 927, 933 (3d Cir. 1992).

[5] Even though MindMed also offers that a court should look to the "substantial and meaningful effect" of Defendants' proxy materials on the shareholder vote as relevant information (Opp. at 21), no court has ever found that an impact on a shareholder vote can serve as the basis for a Section 14(a) transaction claim. *E.g., Jaroslawicz*, 2023 WL 5528723, at *21.

625, 628-29 (E.D. Mich. 2005). By contrast, neither MindMed nor any of its shareholders were caused to enter into a damaging transaction because they detrimentally relied on a misstatement. The other case MindMed cites does not help it because, like the authorities above, the court found that a successful transaction was an element of a Section 14(a) claim. *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 238 (S.D.N.Y. 2012) (stating that proxy materials must be "an essential link in the accomplishment of the transaction").

The closest MindMed comes to legal support is a footnote in *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, where the court noted that while it was not deciding the issue, it would "not foreclose the argument that transaction causation might be satisfied where the proxy solicitations at issue caused a claimant to incur pre-transaction expenses in order to nullify or mitigate the impact of those proxy solicitations on the transaction that would have occurred but for that intervention." 2021 WL 5854075, at *6 (S.D.N.Y. Dec. 9, 2021). This tepid comment is not even an endorsement, although it underscores the novel nature of MindMed's argument, which is at odds with the abundance of legal authorities that have held Section 14(a) liability requires the accomplishment of a transaction.

In any event, even if the aside in *Enzo* had merit, it would still not assist MindMed. In the next sentence of the decision, which MindMed neglects to reference, the court reasoned that the plaintiff's claim should be dismissed anyway because the complaint "falls well short" of alleging the transaction would have gone through "**but for** [plaintiff's] intervention." *Id.* (emphasis added). As in that case, MindMed utterly fails to allege that FCM's directors would have been elected "but for" MindMed's proxy campaign.

*Second*, MindMed's argument "would vitiate the requirement that transaction causation be shown." *Sisters of the Precious Blood, Inc. v. Bristol-Myers Co.*, 431 F. Supp. 385, 387 (S.D.N.Y.

4

1977). Under such a rule, all that would be required was an allegation that a minority group of shareholders was influenced to vote in a particular way by misstatements in the proxy materials. That cannot be an accurate statement of the law of transaction causation.

In *Virginia Bankshares, Inc. v. Sandberg*, the Supreme Court explicitly ruled that minority shareholders whose approval of a freeze-out merger was not required for it to proceed could not bring a Section 14(a) claim. 501 U.S. 1083, 1099 (1991). It reasoned that expanding the scope of Section 14(a) to include plaintiffs who were powerless to halt a transaction went beyond congressional intent to provide a private right of action, and it would invite litigation that "would turn on 'hazy' issues inviting self-serving testimony, strike suits, and protracted discovery, with little chance of reasonable resolution by pretrial process." *Id.* at 1105. The same would be true if MindMed could allege transaction causation based on money it spent attempting to convince its own minority group of shareholders—*i.e.*, the "significant number" who were supposedly influenced by Defendants' proxy materials—to vote against FCM's directors. *Virginia Banckshares*' minority group analysis is thus directly at odds with MindMed's argument.

At bottom, MindMed seeks to widen the scope of Section 14(a) liability to cover any situation where an issuer chooses to spend funds fighting a proxy solicitation merely because the proxy materials may have influenced a minority group of shareholders. Such a dramatic expansion is unjustified. *Brayton v. Ostrau*, 561 F. Supp. 156, 163 (S.D.N.Y. 1983) (rejecting attempt to expand Section 14(a) liability such that "alleged violations of state fiduciary law . . . subsequent to a deceptive proxy solicitation could nearly always be characterized as a violation of the federal securities law"). If issuers are harmed by misleading proxy materials that have no impact on a corporate transaction, then they should pursue remedies already available under state law, such as the defamation-based claims MindMed is advancing in the Nevada Action.

5

## II. MINDMED LACKS STANDING TO BRING ITS SECTION 14(A) CLAIM BECAUSE MINDMED FAILS TO ALLEGE ANY SHAREHOLDER INJURY

MindMed does not dispute that it did not plead a shareholder voting injury under Section 14(a) because FCM's directors were not elected. Likewise, MindMed acknowledges that the only instances where an issuer has been found to have standing involved situations where the issuer alleged a separate shareholder injury as the result of a completed transaction. Opp. at 11 (conceding the fact and calling it a "red herring"). Those concessions are fatal to MindMed's standing because the lack of a shareholder injury fundamentally alters the nature of this lawsuit.

To preserve the distinction between discretionary management expenditures and shareholder injuries, most cases have held that issuers lack standing to sue for damages under Section 14(a). *E.g.*, *Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 869 (D. Del. 1991) (*Borak* actions are "limited to suits brought by shareholders"). While certain decisions have found issuers have such standing, it has only been in situations where there was an independent shareholder injury. *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 4443258, at *6 (S.D.N.Y. Sept. 27, 2021).

It would go too far to permit MindMed to pursue a claim solely to recover its own business expenses. *Virginia Bankshares* dictates that the implied private right of action under Section 14(a) should be narrowly construed, and following that decision, courts have resisted attempts to extend the rights of corporations to sue under Section 14(a) to factual situations, as here, where the corporation is pursuing an agenda apart from a harm to shareholders. *E.g.*, *Tenet Healthcare Corp. v. Cmty. Health Sys., Inc.*, 839 F. Supp. 2d 869, 872 (N.D. Tex. 2012) (distinguishing *Studebaker Corp. v. Gittlin* because it was pre-*Bankshares* and involved a "suit[] for injunctive relief or for corrective disclosures, not damages"); *Salomon Bros. Mun. Partners Fund, Inc. v. Thornton*, 410 F. Supp. 2d 330, 334 (S.D.N.Y. 2006) (declining to extend *Gittlin* to proxy rules "clearly designed

6

to protect shareholders"). Consistent with those decisions, MindMed lacks standing to pursue a claim that relates solely to discretionary business expenses.

### III. MINDMED'S CLAIM FOR INJUNCTIVE RELIEF MUST FAIL BECAUSE THERE IS NO PROPOSED WRONGFUL TRANSACTION

MindMed cannot make the requisite showing for a mandatory, permanent injunction, which is "even greater" than the demanding showing required for a preliminary injunction. *Vaughn v. Consumer Home Mortg., Inc.*, 293 F. Supp. 2d 206, 214 (E.D.N.Y. 2003) (the difference between a preliminary and permanent injunction is with the latter "the plaintiff must show actual success on the merits").

The injunctive relief claim as to corrective disclosures is facially unavailing. MindMed contends that it spent millions of dollars rebutting Defendants' proxy statements, presumably through disclosures and proxy re-solicitations. Opp. at 18, 24; FAC ¶¶ 8, 153, 163. Yet MindMed asks this Court to order Defendants to issue disclosures. In so doing, MindMed admits that it either did not issue proper corrective disclosures or such disclosures are valueless.

Further, the claim is either unripe or moot because it is entirely speculative. A claim for injunctive relief based on irreparable harm must be based on actual and imminent events, not past events. *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1150 (S.D.N.Y. 1990). In this context, such a claim would only be viable if shareholders' voting rights were actually and imminently threatened by an impending transaction. *Lichtenberg v. Besicorp Grp. Inc.*, 43 F. Supp. 2d 376, 390 (S.D.N.Y. 1999) (injury threatened by an impending merger was irreparable); *Poughkeepsie Sav. Bank, F.S.B. v. Morash*, 1989 WL 40008, at *10 (S.D.N.Y. Apr. 14, 1989); (denying injunction because no impending transaction related to a proxy); *see also Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) ("[W]hen resolution of an issue turns

on whether there are nebulous future events so contingent in nature that there is no certainty they will ever occur, the case is not ripe for adjudication.").

The FAC states that "MindMed will be irreparably injured if Defendants continue to make materially false and misleading statements to MindMed's shareholders." FAC ¶ 166. However, nowhere in the FAC does MindMed allege that Defendants are continuing to make public statements or that there is a proposed or impending wrongful transaction; instead MindMed references past events and speculates about the meaning of a press release where Defendants allegedly stated they would continue to "pressure" it. Opp. at 22-24. Not only is that type of speculation insufficient to warrant the extraordinary remedy MindMed seeks, but it is also inappropriate because the lead Defendants have expressed their intention, under oath, not to participate in next year's proxy contest.

Within the framework of Section 14(a) for injunctive relief, the cases MindMed relies upon are at odds with its argument. They relate to situations where injunctive relief was sought related to a proposed transaction, *see Delcath Sys., Inc. v. Ladd*, 2006 WL 2708459, at *1-*6 (S.D.N.Y. Sept. 20, 2006); *MONY Grp., Inc. v. Highfields Cap. Mgmt., L.P.*, 368 F.3d 138, 147 (2d Cir. 2004); or where there was a clear expression of an intent to solicit proxies. *Kaufman v. Cooper Companies, Inc.*, 719 F. Supp. 174, 185 (S.D.N.Y. 1989). Neither circumstance is present here. Thus, MindMed's claim for injunctive relief should be dismissed.

### IV.    RULE 9(B) APPLIES TO THE CLAIM, AND MINDMED FAILS TO SATISFY 9(B)'S HEIGHTENED PLEADING REQUIREMENTS

MindMed does not deny that its claim sounds in fraud, as it must. FAC ¶¶ 104, 121, 160 ("Defendants also falsely claimed that the MindMed's development for the MM-120 program was not supported by the views of independent consultants"; "Defendants' accusations regarding the UHB Study are false"). While MindMed states that its claim could theoretically be based on

negligence, that does not change the fact that it is grounded in fraud. Therefore, MindMed's claim is subject to Rule 9(b)'s heightened requirements. *McIntosh v. Katapult Holdings, Inc.*, 2023 WL 5049044, at *5 (S.D.N.Y. Aug. 8, 2023) (applying heightened pleading even though negligence was also alleged); *Enzo Biochem, Inc.*, 2021 WL 4443258, at *8-*9.

Dismissal is warranted because MindMed has not pleaded fraud with particularity, including identifying the speaker of each alleged fraudulent statement. *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, 2023 WL 3569068, at *8 (S.D.N.Y. May 19, 2023). The FAC defines "FCM Holdings, LLC" as "FCM" and states that FCM's proxy solicitation materials violated Section 14(a), in juxtaposition with statements elsewhere in the FAC on "Defendants' false and misleading proxy solicitation materials." FAC ¶¶ 5, 75, 163. The Opposition further assumes that there is no distinction between any of the Defendants and refers the Court to proxy solicitation materials to clarify the issue. Opp. at 30. But the proxy solicitation materials define FCM differently than the FAC, making it unclear which Defendant supposedly engaged in any alleged misconduct.

Further, the proxy materials do not assist MindMed because they differentiate between "FCM MM Holdings, LLC" and "other participants." (ECF No. 1-1). Neither that entity nor the other participants are identified as the speaker of any statement. This is significant because, with respect to SEC filings, only persons "whose signatures appear on misleading statements may be liable as 'makers' of those statements." *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012). Since the FAC does not parse who is the actual speaker of any statement within the proxy materials, there is no indication of to whom each statement in the proxy materials should be attributed and why the statements should be so attributed.

Instead of addressing these pleading deficiencies, MindMed asserts that all of the Defendants are equally liable because they were filers of the proxy materials. Opp. at 31. That is

incorrect; it is well established that without more, participants and filers are not considered makers or speakers of statements in securities filings. *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 640 (S.D.N.Y. 2017) (for attribution it is insufficient "for a defendant to have been involved in creating the challenged statement by participating in the drafting of the statement or by preparing or publishing a statement on behalf of another"). The authority MindMed relies upon, *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395 (S.D.N.Y. 2011), relates to *signers* of securities filings and has no relevance for proxy materials that were unsigned. If anything, the case supports Defendants' position as it indicates that consenting to being listed on securities filings is inadequate for liability to attach. *Id.*, at 417 ("There is no indication anywhere within the November 2007 Registration Statement that Roriston or Winder had any authority over its contents, aside from consenting to being listed as director-nominees."). Because MindMed has not alleged with specificity how the statements in the proxy materials should be attributed to any of the Defendants, the FAC fails to state a claim with particularity.[6]

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court dismiss the FAC with prejudice in its entirety.

Dated: New York, New York  
        January 12, 2024

GLENN AGRE BERGMAN & FUENTES LLP

By:   /s/ L. Reid Skibell

---

[6] MindMed's requested leave to amend its FAC should be denied because the problems with MindMed's cause of action, as shown above, are incurable and amendment would be futile. *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019).

           L. Reid Skibell
           George L. Santiago
           Jason Rotstein

           1185 Avenue of the Americas, 22nd Floor
           New York, New York 10036
           T: 212-970-1600
           rskibell@glennagre.com
           gsantiago@glennagre.com
           jrotstein@glennagre.com

           *Attorneys for Defendants*