```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
                                     :
 MIND MEDICINE (MINDMED) INC.,       :        23cv7875 (DLC)
                                     :
                        Plaintiff,   :            OPINION
               -v-                   :          AND ORDER
                                     :
 SCOTT FREEMAN, et al.,              :
                                     :
                        Defendants. :
                                     :
----------------------------------- X
```

APPEARANCES:

For the plaintiff, Mind Medicine Inc.:
Sarah Lightdale
Aric Wu
Kaitland Kennelly
Amanda Liverzani
Cooley LLP
55 Hudson Yards
New York, NY 10001

Alexandra Rex Mayhugh
Cooley LLP
355 South Grand Ave., Suite 900
Los Angeles, CA 90071

For the defendants Scott Freeman, Jake Freeman, Chad Boulanger,
Farzin Farzaneh, Vivek Jain, Alexander Wodka, and FCM MM
Holdings, LLC:
L. Reid Skibell
George L. Santiago
Jason Rotstein
Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036

DENISE COTE, District Judge:

Mind Medicine, Inc. ("MindMed" or the "Company"), a biopharmaceutical company, has brought this action to recover damages from and obtain a permanent injunction against Dr. Scott Freeman ("Dr. Freeman"), his nephew, Jake Freeman, and five other defendants for making materially false and misleading statements in proxy solicitations to MindMed shareholders.  The plaintiff asserts that it was forced to spend millions of dollars to oppose these false statements and faces the risk of opposing them again in future proxy contests.  The defendants have moved to dismiss the amended complaint ("FAC").  For the following reasons, the motion is denied.

## Background

The following facts are taken from the FAC and documents on which the FAC relies.  For the purposes of deciding this motion, the FAC's factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor.  The plaintiff's claim against the defendants arises out of several statements included in proxy materials filed by the defendants in advance of MindMed's annual meeting of shareholders in June of 2023.

I.   MindMed

MindMed is a publicly traded biopharmaceutical company that develops products using psychedelic compounds for the treatment

2

of brain health disorders.  The Company is organized under the laws of British Columbia, with its principal executive office in New York.  In July 2019, MindMed acquired the rights to develop a drug from Savant HWP Inc. ("Savant"), where Dr. Freeman was Chief Medical Officer ("CMO").  This drug formulation, subsequently named "MM-110"[1], was a product of Dr. Freeman's work at Savant.

In connection with MindMed's acquisition of MM-110, Dr. Freeman served as the President and CMO of MindMed from September 2019 to August 31, 2020.  In June 2020, MindMed received a complaint regarding Dr. Freeman's workplace behavior and Dr. Freeman was placed on paid administrative leave.  On August 31, MindMed and Dr. Freeman executed an agreement to govern Dr. Freeman's separation from the Company.

II.   The Proxy Contest

On July 23, 2022, Dr. Freeman and his nephew Jake Freeman ("J. Freeman") created a Reddit account with the username "FreemanCapitalMngmt".  On August 4, Dr. Freeman and J. Freeman formed FCM MM Holdings, LLC ("FCM"), a special purpose vehicle, to represent the interests of nine investors in MindMed.  FCM and its members claim to own 3.5% of MindMed's total shares

---

[1] MM-110 is a formulation of 18-Methoxycoronaridine that has undergone research as a treatment for drug addiction.

outstanding.[2]   On August 10, FCM registered the website domain

name https.mindmed.zone/.   FCM also uses a Twitter (or "X")

account named "Freeman Capital Management LLC", registered

@capital_freeman.

On April 18, 2023, the defendants entered into a joint

filing and solicitation agreement to seek representation on the

MindMed Board.   On April 20, the defendants filed a Schedule 14A

Preliminary Proxy Statement with the SEC.   The individuals

listed as "Person[s] Filing Proxy Statement" include FCM, Dr.

Freeman, J. Freeman, Chad Boulanger ("Boulanger"), Farzin

Farzaneh ("Farzaneh"), Vivek Jain ("Jain"), and Alexander Wodka

("Wodka").   On May 3, the defendants filed a Schedule 14A

Definitive Proxy Statement with the SEC.   Both of these filings

include, in relevant part, a chronology of material events

leading up to the defendants' proxy solicitation, the

defendants' reasons for the solicitation, their nominations of

Dr. Freeman, Farzaneh, Jain, and Wodka (the "FCM Nominees") for

the Company's Board of Directors, and a description of the

background of each nominee.

To support their proxy statement, the defendants filed

several Schedule 14A Definitive Additional Materials between May

and June 2023.   These materials include six press releases

---

[2] The defendants have also claimed that they own 5.6% of the
Company's total shares outstanding.

issued by FCM, two Investor PowerPoint Presentations issued by FCM, and FCM's posts on social media platforms, such as Facebook, Instagram, TikTok, and YouTube.  Each of these filings list Dr. Freeman, J. Freeman, FCM, Boulanger, and the FCM Nominees as "Person[s] Filing Proxy Statement".

III. Statements Made in the Proxy Solicitation Materials

The FAC alleges that the defendants disseminated material misstatements and omissions in its proxy solicitations. Examples of the alleged false statements are described below.

The defendants' proxy materials summarize Dr. Freeman's experience in the field of psychedelic medicine.  The materials falsely assert that Dr. Freeman has provided consulting services to MindMed since his separation from the Company.

The materials assert that the defendants "attempted to engage constructively with the Board on [their] ideas for adding value for the benefit of all MindMed shareholders, including [their] Value Enhancement Plan that [they] presented to the Board and management in August 2022."  They omit that the defendants declined to participate in the process of selecting new directors and rejected MindMed's offers to select a mutually agreed upon independent director.

The defendants' proxy materials also discuss the Company's development of MM-110 and MM-120[3].  The defendants question the expertise of MindMed's current CEO and CMO, claiming that their lack of expertise likely led to the deterioration of the Company's relationship with the FDA and failures in the Company's MM-110 and MM-120 programs.  The criticisms of the Company are alleged to rely on an incomplete and misleading description of events.  The defendants also mischaracterize the experience of MindMed executives.

The defendants discuss the performance of the Company in their proxy materials.  These statements are misleading because the defendants omit that the drop in MindMed's share price was in line with trends in the sector and shareholder return on the Company's shares has far exceeded that of the Company's peers.

IV.  Outcome of the Proxy Vote

On June 21, the defendants lost their proxy battle. MindMed's shareholders elected MindMed's director nominees and none of the FCM Nominees.

On June 22, FCM issued a press release in which it wrote "FCM Intends to Continue its Fight for Shareholder Value, and to Hold the Board and Management Accountable for MindMed's

---

[3] MM-120 is the Company's "proprietary, pharmaceutically optimized formulation of LSD D-tartrate" for the treatment of generalized anxiety disorder and attention deficit hyperactivity disorder.

Performance."  FCM also wrote that it "will continue to place

pressure on MindMed."  Over the course of the proxy solicitation

period, the Company spent over $6 million responding to the

statements made by the defendants in their proxy solicitation

materials.

    V.    Procedural History

This action was filed on September 5, 2023.  The plaintiff

filed the FAC on October 16.  At a conference on November 9, a

schedule for discovery and any summary judgment motion was set.

On November 7, the defendants filed a motion to transfer

this action to the District of Nevada, where Dr. Freeman has

been sued for breach of a contractual non-disparagement clause.

The defendants' motion to transfer was denied on January 5,

2024.

The defendants filed this motion to dismiss the FAC on

December 1, 2023.  The motion became fully submitted on January

12, 2024.

## Discussion

The plaintiff asserts one claim against the defendants

pursuant to § 14(a) of the Securities Exchange Act ("Exchange

Act") and Rule 14a-9 thereunder.  Section 14(a) of the Exchange

Act prohibits the solicitation of proxies "in contravention of

such rules and regulations as the Commission may prescribe as

necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78n(a).

Section 14(a) reflects the congressional judgment that, "when defendants choose to issue a proxy[,] plaintiffs have a right to a truthful one."  Wilson v. Great American Indus., Inc., 979 F.2d 924, 931 (2d Cir. 1992).  In passing the Exchange Act, "Congress sought to promote fair corporate suffrage with respect to every equity security by requiring an explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought."  Id. (citation omitted). The Senate Report on the bill that included § 14(a) explained:

> It is contemplated that the rules and regulations promulgated by the Commission will protect investors from promiscuous solicitation of their proxies, on the one hand, by irresponsible outsiders seeking to wrest control of a corporation away from honest and conscientious corporation officials, and, on the other hand, by unscrupulous corporate officials seeking to retain control of the management by concealing and distorting facts.

Loss, et al., Securities Regulation 446 (5th Ed. 2018) (citing S. Rep. No. 1455 (1934)).

Rule 14a-9 bars material false statements and omissions in proxy statements.  It provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a-9(a).  In the context of a proxy statement, a fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."  Resnick v. Swartz, 303 F.3d 147, 151 (2d Cir. 2002) (citation omitted).

The SEC "promulgated Rule 14a-9 with the goal of preserving for all shareholders who are entitled to vote, not just for those who sponsor proposals, the right to make decisions based on information that is not false or misleading."  United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d 1190, 1198 (2d Cir. 1993).  There is an implied private right of action under Rule 14a-9.  Grace v. Rosenstock, 228 F.3d 40, 47 (2d Cir. 2000).

I.   Standing

The defendants argue that the FAC should be dismissed under Rule 12(b)(1) because the plaintiff lacks Article III standing to sue for damages under § 14(a) and Rule 14a-9.  In order to establish standing, a plaintiff must show "(1) that [it] suffered an injury in fact, (2) that the injury is fairly traceable to [d]efendants' challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial decision."  Soule v. Connecticut Assoc. of Schools, Inc., 90 F.4th 34, 45 (2d Cir. 2023) (citation omitted).

As the Second Circuit has held, "an issuer has standing to assert violation[s] of section 14(a), governing proxy contests." GAF Corp. v. Milstein, 453 F.2d 709, 719 (2d Cir. 1971).  The Supreme Court has explained that

> The injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder.  The damage suffered results not from the deceit practiced on him alone but rather from the deceit practiced on the stockholders as a group.

J. I. Case Co. v. Borak, 377 U.S. 426, 432 (1964).  Thus, the Supreme Court has held that "federal courts have the power to grant all necessary remedial relief" in the context of § 14(a) claims.  Id. at 435.  "[T]he possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of the proxy requirements."  Id. at 432.

The FAC sufficiently pleads that MindMed has standing to bring its claim pursuant to § 14(a) and Rule 14a-9.  First, the plaintiff is an issuer of shares.  As an issuer of shares, it may bring a cause of action under § 14(a) and Rule 14a-9. Furthermore, the FAC adequately pleads that MindMed sustained an injury as a result of the defendants' actions -- namely, that it had to spend millions of dollars to combat the defendants' misstatements and omissions in their proxy solicitation materials.  It thus adequately pleads that the Company's injuries are redressable in the form of monetary damages.

10

II.  Failure to State a Claim

The defendants argue that the FAC should be dismissed because the plaintiff has failed to plead causation as required by § 14(a) of the Exchange Act and Rule 14a-9 thereunder.  Under Rule 12(b)(6), a party "must plead enough facts to state a claim to relief that is plausible on its face."  Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs."  Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).

To state a claim under § 14(a) and Rule 14a-9, plaintiffs must plead that a proxy statement contained a material misrepresentation or omission.  Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 384 (1970).  There is no requirement that a plaintiff plead that the material misrepresentation also altered the outcome in the vote.  Id.

11

> This requirement that the defect have a significant
> propensity to affect the voting process is found in the
> express terms of Rule 14a—9, and it adequately serves the
> purpose of ensuring that a cause of action cannot be
> established by proof of a defect so trivial, or so
> unrelated to the transaction for which approval is sought,
> that correction of the defect or imposition of liability
> would not further the interests protected by § 14(a).
> There is no need to supplement this requirement . . . with
> a requirement of proof of whether the defect actually had a
> decisive effect on the voting.  Where there has been a
> finding of materiality, a shareholder has made a sufficient
> showing of causal relationship between the violation and
> the injury for which he seeks redress if, as here, he
> proves that the proxy solicitation itself, rather than the
> particular defect in the solicitation materials, was an
> essential link in the accomplishment of the transaction.

Id. at 384-85 (emphasis added).

The FAC adequately pleads that the defendants' proxy

materials contained misrepresentations that were material to the

proxy contest.  This is all that is required to state a claim.[4]

### III. Permanent Injunction

The defendants argue that the plaintiff is not entitled to

equitable relief because shareholder rights are not threatened

by an impending transaction.  To obtain a permanent injunction,

"a plaintiff must both succeed on the merits and demonstrate the

absence of an adequate remedy at law and irreparable harm if the

relief is not granted."  Davis v. Shah, 821 F.3d 231, 243 (2d

---

[4] While the defendants also argue that the FAC should be assessed
under the more rigorous pleading standards contained in Rule
9(b), that argument fails.  A § 14(a) claim can be pleaded under
Rule 8's standards.  In any event, the FAC contained detailed
allegations that satisfy Rule 9(b)'s requirements.

Cir. 2016) (citation omitted).  In evaluating the need for an injunction, "[t]he necessary determination is that there exists some cognizable danger of recurrent violation."  E.E.O.C. v. KarenKim, Inc., 698 F.3d 92, 100 (2d Cir. 2012) (citation omitted).  "In determining whether to impose an injunction where a defendant has ceased the offending conduct, courts may consider the bona fides of the defendant's expressed intent to comply with the law, the effectiveness of the discontinuance, and the character of the past violations."  Id. (citation omitted).

The FAC adequately pleads the grounds on which MindMed may obtain equitable relief.  The defendants have expressed their intent to continue their proxy battle against the Company.  The Company's Board is elected on an annual basis; therefore, the defendants may soon engage in another proxy battle and repeat the alleged material misstatements or omissions in connection with that future proxy solicitation.  The FAC asserts that the defendants' material misstatements and omissions in their proxy materials will deprive the Company's shareholders of the ability to make informed decisions, based on full and accurate information, about the Company.  The FAC also alleges that the plaintiff does not have an adequate remedy at law to address the defendants' potential future misstatements and therefore seeks equitable relief.

## Conclusion

The defendants' December 1, 2023 motion to dismiss the plaintiff's claim under § 14(a) of the Exchange Act and Rule 14a-9 is denied.

Dated:    New York, New York
          February 22, 2024

                                      DENISE COTE
                 United States District Judge

14